**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————     x
Wesley Vincent, individually on behalf of himself         :
and all others similarly situated and John Does (1-100)    :
on behalf of themselves and all others similarly situated,  :     Case No.
                                                           :
                        Plaintiffs,                        :
v.                                                         :
                                                           :
                                                           :     **CLASS ACTION**
People Against Dirty, PBC,                                 :       **COMPLAINT**
                                                           :
                        Defendant.                         :     **JURY TRIAL DEMANDED**
                                                           :
                                                           :
———————————————————————     x

Plaintiff, Wesley Vincent (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated in the State of New York, along with John Does from each state, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1.      People Against Dirty, PBC markets and sells laundry supplies, cleaning supplies, and personal cleaning supplies throughout the State of New York and the country. Its marketing is focused on using natural, clean, safe, non-toxic, hypoallergenic, and naturally derived ingredients.

2.      People Against Dirty, PBC ("Defendant") deceives consumers throughout the State of New York and the country because their products contain synthetic ingredients and are, therefore, neither natural nor naturally derived.  Moreover, as set forth below, many of the synthetic ingredients are hazardous and are neither non-toxic nor are they clean, safe, and hypoallergenic.

1

3.      This action seeks to remedy defendant's fraudulent, deceptive and misleading business practices with respect to the marketing and sales of various products throughout the State of New York and the country. These products (hereinafter the "Products") include all of the products in defendant's product portfolio that purport(ed) to be "natural," "naturally derived," "hypoallergenic," and/or "non-toxic," but which contain(ed) synthetic ingredients and ingredients that are synthetic, hazardous or toxic, and have the potential to cause an allergic reaction or irritation.  The products include, but are not limited to, the following:

Method Home Cleaning Products:

Natural Bathroom Tub + Tile Cleaner



Method All-Purpose Surface Cleaner



Method Daily Shower Cleaner Ylang Ylang



Hand Wash Products[1]:

Method Foaming Hand Wash



---

Method Foaming Hand Wash Refill



Method Gel Hand Wash



Method Gel Hand Wash Refill



Method Laundry Products[2]:

Method Fabric Softener



---

Method 4x Concentrated Laundry Detergent



Method Dish/Kitchen Cleaners[3]:

Method Dish + Hand Soap



## dish + hand soap – ocean plastic

**let's get plastic out of our oceans**

not only does the naturally derived, biodegradable formula in our odor-eliminating 2-in-1 dish + hand soap pull double duty getting your digits and dishes clean, it's also packaged in the world's first bottles made with a blend of recovered ocean plastic and post-consumer recycled plastic. even cooler than that, the ocean plastic used to make these bottles was collected by method employees. true story. learn more about ocean plastic

   

$5.08

---

[3] Within this category there are several scents.

Method Dish Soap Refill



Method Smarty Dish Dishwasher Tabs



Method Smarty Dish, Dish Plus Dishwasher Tabs



Ecover Dish Products:

Ecover Automatic Dishwasher Tablets (25 and 45 count)



Ecover Liquid Dish Soap [4]



4.      Notwithstanding defendant's representations that the products they manufacture, sell, and distribute are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic," the Products contain various artificial and synthetic ingredients, some of which are hazardous, toxic, and synthetic, and have the potential to cause an allergic reaction or irritation.  Defendant's advertising and marketing is thus false, deceptive, and misleading.

5.      Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products are "Natural," "Naturally Derived," "Non-Toxic," and "Hypoallergenic" when purchasing the Products.  Plaintiff and Class Members paid a premium for the Products over and above comparable products that did not purport to be "Natural," "Naturally Derived," "Non-Toxic," and "Hypoallergenic." Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations that they are "Natural," "Naturally Derived," "Non-Toxic" and "Hypoallergenic," Plaintiff and Class Members suffered an injury in the amount of the premium paid.

6.      Defendant's conduct violated and continues to violate New York General Business Law §§ 349 and 350, the consumer protection statutes of all 50 states, and the Magnuson-Moss Warranty Act.  Defendant breached and continues to breach express and implied warranties regarding the Products.  Defendant has been and continues to be unjustly enriched.  Accordingly, Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Products between August 1, 2010 and the present (the "Class Period").

## JURISDICTION AND VENUE

7.      Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).  Plaintiff is a citizen of the State of New York and resides in Dutchess County, New York.  Defendant is a corporation

with its principal place of business in San Francisco, California, and is organized and existing under the laws of the State of Delaware.  Upon information and belief, the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

8.      This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

9.      Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the State of New York.

**PARTIES**

**Plaintiff**

10.     Plaintiff is an individual consumer who, at all times material hereto, was a citizen of Dutchess County, New York.  On or about May 2016 Plaintiff purchased the Products from his local Target store.

11.     Plaintiff purchased the Products because he saw the labeling, advertising, the Defendant's website, and read the packaging, which represented that the Products are "Natural," "Naturally Derived," "Non-Toxic," and "Hypoallergenic."  Plaintiff relied on Defendant's false, misleading, and deceptive representations that the Products are "Natural," "Naturally Derived," "Non-Toxic," and "Hypoallergenic."  Had Plaintiff known the truth—that the representations he relied upon in making his purchases were false, misleading, and deceptive—he would not have purchased the Products at a premium price.

**Defendant**

12.     Defendant is a corporation organized and existing under the laws of the State of Delaware with its principal places of business in San Francisco, California.  Defendant

manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Products.

## FACTUAL BACKGROUND

13.     Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products and everyday household products.  Defendant has capitalized on consumers' desire for purportedly "natural products."  Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients.  In 2010, sales of natural products grew 6% to $117 billion.[5]  Reasonable consumers, including Plaintiff and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

14.     Despite the Products containing a number of synthetic ingredients, Defendant markets the Products as being "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

15.     As is depicted below, many of the Products' contain the following synthetic ingredients and state that they are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic":

---

[5] *About the Natural Products Association,* NATURAL PRODUCTS ASSOCIATION (last accessed July 3, 2015), http://www.npainfo.org/NPA/About_NPA/NPA/AboutNPA/AbouttheNaturalProductsAssociation.aspx?hkey=8d3a1 5ab-f44f-4473-aa6e-ba27ccebcbb8; *Chemical Blessings What Rousseau Got Wrong*, THE ECONOMIST, Feb. 4, 2008, available at http://www.economist.com/node/10633398; *see also* Hunger Oatman-Standford, *What Were We Thinking? The Top 10 Most Dangerous Ads*, COLLECTORS WEEKLY (Aug. 22, 2012), http://www.collectorsweekly.com/articles/the-top-10-most-dangerous-ads/ (featuring advertisements for dangerous synthetic chemicals that were once marketed as safe).

| Synthetic Ingredients | Products |
|---|---|
| • Calcium Chloride | • Method Foaming Hand Wash<br>• Method 4x Concentrated Laundry Detergent |
| • Propylene Glycol | • Method Fabric Softener |
| • Decyl Glucoside | • Method All-Purpose Surface Cleaner<br>• Method Natural Tub and Tile Bathroom Cleaner<br>• Method Daily Shower Cleaner<br>• Method Gel Hand Wash<br>• Method Dish and Hand Soap |
| • Glycerin | • Method Foaming Hand Wash<br>• Method Gel Hand Wash<br>• Method 4x Concentrated Laundry Detergent<br>• Method Dish and Hand Soap<br>• Ecover Dish Soap |
| • Laureth – 7 | • Method All-Purpose Surface Cleaner<br>• Method Natural Tub and Tile Bathroom Cleaner<br>• Method Daily Shower Cleaner |
| • Phenoxyethanol | • Method Fabric Softener<br>• Method 4x Concentrated Laundry Detergent |
| • Sodium Citrate | • Method Foaming Hand Wash<br>• Method Gel Hand Wash<br>• Method Fabric Softener<br>• Method 4x Concentrated Laundry Detergent<br>• Method Smarty Dish Dishwasher Tabs<br>• Method Smarty Dish, Dish Plus Dishwasher Tabs<br>• Ecover Dish Soap<br>• Ecover Automatic Dishwasher Tablets |
| • Tocopheryl Acetate | • Method Foaming Hand Wash<br>• Method Gel Hand Wash |

| | |
|---|---|
| • Potassium Citrate | • Method Natural Tub and Tile Bathroom Cleaner<br>• Method Daily Shower Cleaner |
| • Citric Acid | • Ecover Dish Soap |
| • Sodium Chloride | • Ecover Dish Soap |
| • Sodium Lauryl Sulfate | • Ecover Dish Soap |
| • Sodium Bicarbonate | • Ecover Automatic Dishwasher Tablets |

16.    Defendant's representations that the Products are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic," are false, misleading, and deceptive because the Products contain multiple ingredients that are, as explained below, synthetic and artificial. Below are some of the synthetic ingredients the Products contain.

a.    **Phenoxyethanol** is a synthetic substance and adjuvant. *See* 21 C.F.R. §172.515. [6]

b.    **Tocopheryl Acetate** is a synthetic, inert ingredient used pre and post-harvest as an ingredient in pesticide formulations applied to growing crops or to raw agricultural commodities after harvest. *See* 40 C.F.R. §180.910.

c.    **Decyl Glucoside** is a synthetic ingredient obtained by the condensation of decyl alcohol and glucose. [7]

d.    **Sodium Bicarbonate** is a synthetic that is prepared by treating a sodium carbonate or a sodium carbonate and sodium bicarbonate solution with carbon dioxide. As carbon dioxide is absorbed, a suspension of sodium bicarbonate

---

[6] The Federal Trade Commission, recognizing that many of these same ingredients are unquestionably synthetic, has filed complaints against companies that have used these ingredients in products promoted as natural. **Attachment A**
[7] http://www.newdirections.com.au/articles/images/Decyl-Glucoside-and-Other-Alkyl-Glucosides-as-Used-in-Cosmetics.pdf

forms. The slurry is filtered, forming a cake which is washed and dried. *See* 21 C.F.R. §184.1736.

**e. Potassium Citrate** is the potassium salt of citric acid. It is a synthetic ingredient prepared by neutralizing citric acid with potassium hydroxide or potassium carbonate. *See* 21 C.F.R. §184.1625.

**f. Sodium Chloride** is a synthetic and hazardous chemical substance. [8]

**g. Citric Acid** is (2-hydroxy-propane-1, 2,3-tricarboxylic acid) is a synthetic substance. While the chemical's name has the word "citric" in it, citric acid is no longer extracted from the citrus fruit but industrially manufactured by fermenting certain genetically mutant strains of the black mold fungus, *Aspergillus niger*. A technical evaluation report for the substance citric acid compiled by the United States Department of Agriculture, Agricultural Marketing Service ("USDA AMS") for the National Organic Program classified citric acid as "Synthetic Allowed". *See* Page 4, *available*

at http://www.ams.usda.gov/AMSv1.0/getfile?dDocName=STELPRDC5067876. As one of the USDA AMS reviewers commented,

> "[Citric acid] is a natural[ly] occurring substance that commercially goes through numerous chemical processes to get to [its] final usable form. This processing would suggest that it be classified as synthetic." *Id.* at 3.

The report further explains, under the "How Made" question, that citric acid is made –

> "Traditionally by extraction from citrus juice, no longer commercially available. It is now extracted by fermentation of a carbohydrate substrate (often molasses) by citric acid bacteria, *Aspergillus niger* (a mold) or *Candida guilliermondii* (a    yeast). Citric acid is recovered from the fermentation broth by a lime and sulfuric acid process in which the citric acid is first precipitated as a calcium salt and then reacidulated with

---

[8] https://whatsinproducts.com/files/brands_pdf/1391295214.pdf

sulfuric acid." *Id.* at 4.

h. **Sodium Lauryl Sulfate** is a chemical and food additive as stated in C.F.R. 172.822. It is an active ingredient prepared by sulfation of lauryl alcohol, followed by neutralization with sodium carbonate. [9]

i. **Calcium Chloride/Calcium Carbonate** is produced from calcium hydroxide, calcium chloride, or as a byproduct in the lime soda process. Federal regulations recognize calcium hydroxide as a synthetic compound (and the FDA has declared that calcium chloride renders a food no longer "natural.")[10] The lime soda process employs hazardous and synthetic substances and requires processing techniques so excessive so as to render the finished product unnatural. In fact, the EPA has promulgated regulations specifically addressing the environmental impact of calcium carbonate produced through the lime process and by recovery from the Solvay waste products. Additionally, when used in drugs, calcium carbonate is listed as a synthetic compound by federal regulation.

j. **Propylene Glycol** is known as 1,2-propanediol. It does not occur in nature. Propylene Glycol is manufactured by treating propylene with chlorinated water to form the chlorohydrin which is converted to the glycol by treatment with sodium carbonate solution. It is also prepared by heating glycerol with sodium hydroxide. *See* 21 C.F.R. §184.1666.

k. **Laureth-7** is a polyethylene glycol-based surfactant and synthetic that may contain potentially toxic impurities such as 1, 4-dioxane. [11] Laureth-7 is

---

[9] http://www3.epa.gov/pesticides/chem_search/reg_actions/reregistration/red_G-52_1-Sep-93.pdf
[10] *See* FDA Warning Letter to Karl A. Hirzel, Hirzel Canning Co., (Aug. 29, 2001).
[11] http://www.ewg.org/skindeep/ingredient/703425/LAURETH-7/

synonymous with Ethoxylated Alcohol *See* 40 C.F.R. §721.643 and **Attachment A.**

l.  **Sodium Citrate** is the sodium salt of citric acid synthesized by reacting sodium carbonate with citric acid.  It is a recognized synthetic chemical under federal regulations.  *See* 7 C.F.R. §205.605(b).

m.  **Glycerin** is a factory-produced texturizer that is created by complex processing. It is recognized by federal regulations as synthetic.  *See* 7 C.F.R. § 205.605(b).  It is commonly used as a filler and thickening agent.  It requires multiple processing steps in an industrial environment to create Glycerin.  Therefore, it cannot be described as "natural."  A technical evaluation report compiled by the USDA AMS Agricultural Analytics Division for the USDA National Organic Program explains that Glycerin is "produced by a hydrolysis of fats and oils" and is listed in the USDA Organic Program's National List as a "synthetic nonagricultural (nonorganic) substance."  The same report lists several methods of producing Glycerin, each of which involve numerous steps that include the use of high temperatures and pressure and purification to get an end product.

| Table 2 Processes for producing glycerin by hydrolysis of fats and oils[12] | |
| --- | --- |
| Lemmens Fryer's Process | Oil or fat is subjected in an autoclave to the conjoint action of heat and pressure (about 100 PSI) in the presence of an emulsifying and accelerating agent, e.g. zinc oxide or hydroxide (sodium hydroxide can be substituted) for about eight hours. The strong solution of glycerin formed is withdrawn and replaced by a quantity of hot, clean and preferably distilled water equal to about one third to one fourth of the weight of the original charge of oil or fat and treatment continued for an additional four hours. The dilute glycerin obtained from the latter part of the process is drawn off and used for the initial treatment of the further charge of oil or fat. |

---

[12] https://www.ams.usda.gov/sites/default/files/media/Glycerin%20Petition%20to%20remove%20TR%202013.pdf

| | |
|---|---|
| Budde and Robertson's Process | The oils or fats are heated and mechanically agitated with water and sulphuric acid gas, under pressure in a closed vessel or autoclave. The advantage claimed for the process are that the contents of the vessel are free from foreign matter introduced by reagents and need no purification; that the liberated glycerin is in the form of a pure and concentrated solution; that no permanent emulsion is formed and that the fatty acids are not discolored. |
| Ittner's Process | Coconut oil is kept in an autoclave in the presence of water at 70 atmospheres pressure and 225-245oC temperature and split into fatty acids and glycerin, both being soluble under these conditions in water. The glycerin solution separates in the bottom of the autoclave. The aqueous solution contains at the end of the splitting process more than 30 percent glycerin. |
| Continuous High Pressure Hydrolysis | In this process a constant flow of fat is maintained flowing upward through an autoclave column tower against a downward counterflow of water at a pressure of 600 PSI maintained at temperature of 480-495oF. Under these conditions, the fat is almost completely miscible in water and the hydrolysis take place in a very short time. The liberated fatty acids, washed free of glycerin by the downward percolating water, leave the top of the column and pass through a flash tank while the liberated glycerin dissolves in the downward flow of water and is discharged from the bottom of the tower into the sweet-water storage tank. |

17.     Given the presence of these synthetic and artificial ingredients in the Products, Defendant's representations that they are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic," are deceptive and misleading.

18.     The term "synthetic" is also defined by federal statute as "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes."  7 U.S.C. § 6502(21).

19.     Surveys and other market research, including expert testimony Plaintiff intends to introduce, will demonstrate that the term "natural" is misleading to a reasonable consumer

because the reasonable consumer believes that the term "natural," when used to describe a good such as the Products, means that it is free of synthetic ingredients.

20.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

21.     Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.  That is why, even though all of the ingredients listed above are identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor is he expected to understand - that these ingredients are synthetic.

22.     Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendant's prominent claims, representations, and warranties that the Products are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

23.     Defendant did not disclose that any of the ingredients listed above are synthetic ingredients.  A reasonable consumer understands Defendant's "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic" claims to mean that the Products are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic," and do not contain synthetic ingredients.

24.     Defendant's representations that the Products are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic" induced consumers, including Plaintiff and Class Members, to pay a premium to purchase the Products.  Plaintiff and Class Members relied on Defendant's false and misleading misrepresentations in purchasing the Products at a premium

27

price above comparable alternatives that are not represented to be "Natural," "Naturally

Derived," "Non-Toxic," and/or "Hypoallergenic."  If not for Defendant's misrepresentations,

Plaintiff and Class Members would not have been willing to purchase the Products at a premium

price.  Accordingly, they have suffered an injury as a result of Defendant's misrepresentations.

<u>**CLASS ALLEGATIONS**</u>

25.     Plaintiff brings this matter on behalf of himself and those similarly situated.  As

detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling

practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct.

Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive

relief.

26.     The Class is defined as all consumers who purchased the Products anywhere in

the United States during the Class Period (the "Class").

27.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a

subclass of individuals who purchased the Products in the State of New York at any time during

the Class Period (the "New York Subclass").

28.     The Class and New York Subclass shall be referred to collectively throughout the

Complaint as the Class.

29.     The Class is properly brought and should be maintained as a class action under

Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and

adequacy because:

30.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is

impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members

described above who have been damaged by Defendant's deceptive and misleading practices.

31.    <u>Commonality</u>: The questions of law and fact common to the Class Members

which predominate over any questions which may affect individual Class Members include, but

are not limited to:

     a.  Whether Defendant is responsible for the conduct alleged herein which was

         uniformly directed at all consumers who purchased the Products;

     b.  Whether Defendant's misconduct set forth in this Complaint demonstrates that

         Defendant has engaged in unfair, fraudulent, or unlawful business practices

         with respect to the advertising, marketing, and sale of their Products;

     c.  Whether Defendant made false and/or misleading statements to the Class and

         the public concerning the content and safety of its Products;

     d.  Whether Defendant's false and misleading statements concerning their

         Products were likely to deceive the public;

     e.  Whether Plaintiff and the Class are entitled to injunctive relief;

     f.  Whether Plaintiff and the Class are entitled to money damages under the same

         causes of action as the other Class Members.

32.    <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the

claims of each Class Member in that every member of the Class was susceptible to the same

deceptive, misleading conduct and purchased the Defendant's Products.  Plaintiff is entitled to

relief under the same causes of action as the other Class Members.

33.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because his interests do

not conflict with the interests of the Class Members he seeks to represent; his consumer fraud

claims are common to all members of the Class and he has a strong interest in vindicating his

rights; he has retained counsel competent and experienced in complex class action litigation and

they intend to vigorously prosecute this action.  Plaintiff has no interests which conflict with those of the Class.  The Class Members' interests will be fairly and adequately protected by Plaintiff and his counsel.  Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

34.     The Class is properly brought and should be maintained as a class action under Rule 23(b) because a class action is superior to traditional litigation of this controversy.  Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any other questions affecting only individual members of the Class.  The Class issues are fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.  In addition, this Class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*:

35.     Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a.  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising to purchase its products as being ""Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

36.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## INJUNCTIVE CLASS RELIEF

37.     Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here, Defendant has engaged in conduct resulting in misleading consumers about ingredients in their Products.  Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct. Plaintiff would purchase the Products again if the ingredients were changed so that they indeed were "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

38.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

 a.  Numerosity: Individual joinder of the injunctive Class Members would be wholly impracticable.  Defendant's Products have been purchased by thousands of people throughout the United States;

 b.  Commonality: Questions of law and fact are common to members of the Class.  Defendant's misconduct was uniformly directed at all consumers.  Thus, all members of the Class have a common cause against Defendant to stop its misleading conduct through an injunction.  Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire Class.  Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

 i.  Resolution of the issues presented in the 23(b)(3) class;

32

ii. Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive product marketing and labeling; and

iii. Whether, on equitable grounds, Defendant should be prevented from continuing to deceptively mislabel their Products as being "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

c. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class because his claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading marketing, labeling, and advertising practices). Plaintiff is a typical representative of the Class because, like all members of the injunctive Class, he purchased Defendant's Products which were sold unfairly and deceptively to consumers throughout the United States.

d. <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class. His consumer protection claims are common to all members of the injunctive Class and he has a strong interest in vindicating his rights. In addition, Plaintiff and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

39. The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class. Certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendant has marketed their Products using the same misleading and deceptive labeling to all of the Class Members). Any final injunctive relief or

declaratory relief would benefit the entire injunctive Class as Defendant would be prevented from continuing its misleading and deceptive marketing practices and would be required to honestly disclose to consumers the nature of the contents of their Products. Plaintiff would purchase the Products again if the ingredients were changed so that they indeed were "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and All Class and/or New York Subclass Members)**

40.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

41.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

42.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the Class and/or New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

43.     There is no adequate remedy at law.

44.     Defendant misleadingly, inaccurately, and deceptively presents their Products to consumers.

45.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as being "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic" —is misleading in a material way in that it, *inter alia*, induced Plaintiff and

Class and/or New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

46.     Plaintiff and the Class and/or New York Subclass Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendant's representations— not "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic." Accordingly, Plaintiff and the Class and/or New York Subclass Members received less than what they bargained and/or paid for.

47.     Defendant's advertising and Products' packaging and labeling induced the Plaintiff and Class and/or New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

48.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the Class have been damaged thereby.

49.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and Class and/or New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
**(On Behalf of Plaintiff New York Subclass Members)**

50.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

51.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or
> commerce or in the furnishing of any service in this state is hereby
> declared unlawful.

52.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or
> of the kind, character, terms or conditions of any employment
> opportunity if such advertising is misleading in a material respect.
> In determining whether any advertising is misleading, there shall
> be taken into account (among other things) not only
> representations made by statement, word, design, device, sound or
> any combination thereof, but also the extent to which the
> advertising fails to reveal facts material in the light of such
> representations with respect to the commodity or employment to
> which the advertising relates under the conditions proscribed in
> said advertisement, or under such conditions as are customary or
> usual . . .

53.    Defendant's labeling and advertisements contain untrue and materially misleading

statements concerning Defendant's Products inasmuch as they misrepresent that the Products are

"Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

54.    Plaintiff and the Class and/or New York Subclass Members have been injured

inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the

Products which were—contrary to Defendant's representations—not "Natural," "Naturally

36

Derived," "Non-Toxic," and/or "Hypoallergenic."  Accordingly, Plaintiff and the Class and/or New York Subclass Members received less than what they bargained and/or paid for.

55.    Defendant's advertising, packaging and products' labeling induced the Plaintiff and Class and/or New York Subclass Members to buy Defendant's Products.

56.    Defendant made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

57.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

58.    Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the Products' packaging and labeling.

59.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

60.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### VIOLATION OF STATE CONSUMER PROTECTION STATUTES
#### (On Behalf of Plaintiff and All Class Members)

61.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

62.    Plaintiff and Class Members have been injured as a result of Defendant's violations of the following state consumer protection statutes, which also provide a basis for

redress to Plaintiff and Class Members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

63.     Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the following jurisdictions:

a.   **Alaska:** Defendant's practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b.   **Arizona:**  Defendant's practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq*.

c.   **Arkansas:**  Defendant's practices were and are in violation of Arkansas Code Ann. § 4-88-101, *et seq.*

d.   **California:**  Defendant's practices were and are in violation of California Consumer Legal Remedies Act, Civil Code § 1750, *et seq*., and California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq*., and California's False Advertising Law, California Business and Professions Code § 17500, *et seq*.

e.   **Colorado**:  Defendant's practices were and are in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

f.   **Connecticut:**  Defendant's practices were and are in violation of Connecticut's Gen. Stat. § 42-110a, *et seq.*

g.   **Delaware:**  Defendant's practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

h. **District of Columbia:**  Defendant's practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

i. **Florida:**  Defendant's practices were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

j. **Hawaii:**  Defendant's practices were and are in violation of the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

k. **Idaho:**  Defendant's practices were and are in violation of Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*

l. **Illinois:**  Defendant's acts and practices were and are in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

m. **Indiana:**  Defendant's practices were and are in violation of Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

n. **Kansas:**  Defendant's practices were and are in violation of Kansas's Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq.*

o. **Kentucky:**  Defendant's practices were and are in violation of Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

p. **Maine:**  Defendant's practices were and are in violation of the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq.* and 10 Me. Rev. Stat. Ann. § 1101, *et seq.*

q. **Maryland:**  Defendant's practices were and are in violation of Maryland's Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.*

r.   **Massachusetts:**  Defendant's practices were unfair and deceptive acts and practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2.

s.   **Michigan:**  Defendant's practices were and are in violation of Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*

t.   **Minnesota:**  Defendant's practices were and are in violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

u.   **Missouri:**  Defendant's practices were and are in violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

v.   **Nebraska:**  Defendant's practices were and are in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade

Practices Act, § 87-302, *et seq.*

w.   **Nevada:**  Defendant's practices were and are in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

x.   **New Hampshire:**  Defendant's practices were and are in violation of New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

y.   **New Jersey:**  Defendant's practices were and are in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

z.   **New Mexico:**  Defendant's practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

aa.  **New York:**  Defendant's practices were in and are in violation of New York's Gen. Bus. Law §§ 349, *et seq.*

bb.  **North Carolina:**  Defendant's practices were and are in violation of North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et seq.*

cc.  **North Dakota:**  Defendant's practices were and are in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq.*

dd.  **Ohio:**  Defendant's practices were and are in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

ee.  **Oklahoma:**  Defendant's practices were and are in violation of Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

ff.  **Oregon:**  Defendant's practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

gg.  **Pennsylvania:**  Defendant's practices were and are in violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.*

hh.  **Rhode Island:**  Defendant's practices were and are in violation of Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

ii. **South Dakota:** Defendant's practices were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

jj. **Texas:** Defendant's practices were and are in violation of Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*

kk. **Utah:** Defendant's practices were and are in violation of Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

ll. **Vermont:** Defendant's practices were and are in violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

mm. **Washington:** Defendant's practices were and are in violation of Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

nn. **West Virginia:** Defendant's practices were and are in violation of West Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et seq.*

*oo.* **Wisconsin:** Defendant's practices were and are in violation of Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq.*

pp. **Wyoming:** Defendant's practices were and are in violation of Wyoming's Consumer Protection Act, Wyo. Stat. Ann. §40-12-101, *et seq.*

64. Defendant violated the aforementioned states' unfair and deceptive acts and practices laws by representing that the Products are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

65.     Contrary to Defendant's representations, the Products are not "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

66.     Defendant's misrepresentations were material to Plaintiff's and Class Members' decision to pay a premium for the Products.

67.     Defendant made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

68.     As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members paid a premium for the Products.

69.     As a result of Defendant's violations, Defendant has been unjustly enriched.

70.     Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**FOURTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

71.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

72.     Defendant provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

73.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

74.     These affirmations of fact became part of the basis for the bargain and were material to the Plaintiff's and Class Members' transactions.

75.     Plaintiff and Class Members reasonably relied upon the Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

76.     Within a reasonable time after they knew or should have known of Defendant's breach, Plaintiff, on behalf of himself and Class Members, placed Defendant on notice of the breach, giving Defendant an opportunity to cure its breach, which they refused to do.

77.     Defendant breached the express warranty because the Products are not "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

78.     Defendant thereby breached the following state warranty laws:

    a.      Code of Ala. § 7-2-313;

    b.      Alaska Stat. § 45.02.313;

    c.      A.R.S. § 47-2313;

    d.      A.C.A. § 4-2-313;

    e.      Cal. Comm. Code § 2313;

    f.      Colo. Rev. Stat. § 4-2-313;

    g.      Conn. Gen. Stat. § 42a-2-313;

    h.      6 Del. C. § 2-313;

    i.      D.C. Code § 28:2-313;

    j.      Fla. Stat. § 672.313;

    k.      O.C.G.A. § 11-2-313;

    l.      H.R.S. § 490:2-313;

m.      Idaho Code § 28-2-313;

n.      810 I.L.C.S. 5/2-313;

o.      Ind. Code § 26-1-2-313;

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     II. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

mm.     R.I. Gen. Laws § 6A-2-313;

nn.     S.C. Code Ann. § 36-2-313;

oo.     S.D. Codified Laws, § 57A-2-313;

pp.     Tenn. Code Ann. § 47-2-313;

qq.     Tex. Bus. & Com. Code § 2.313;

rr.     Utah Code Ann. § 70A-2-313;

ss.     9A V.S.A. § 2-313;

tt.     Va. Code Ann. § 59.1-504.2;

uu.     Wash. Rev. Code Ann. § 6A.2-313;

vv.     W. Va. Code § 46-2-313;

ww.     Wis. Stat. § 402.313;

xx.     Wyo. Stat. § 34.1-2-313.

79.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-MOSS**
**WARRANTY ACT, 15 U.S.C. § 2301 *et seq*.**
**(On Behalf of Plaintiff and All Class Members)**

80.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

46

81.     Plaintiff brings this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 named Plaintiffs.

82.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

83.     The Product is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

84.     Plaintiff and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

85.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

86.     Defendant represented in writing that the Products are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

87.     These statements were made in connection with the sale of the Products and relate to the nature of the Products and affirm and promise that the Products are as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

88.     As alleged herein, Defendant breached the written warranty by selling consumers Products that are not "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

89.     The Products do not conform to the Defendant's written warranty and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*  Consequently, Plaintiff and

the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY
### (On Behalf of Plaintiff and All Class Members)

90.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

91.     Defendant is in the business of manufacturing, distributing, marketing and advertising the above listed products.

92.     Under the Uniform Commercial Code's implied warranty of merchantability, the Defendant warranted to Plaintiff and Class Members that the Products are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

93.     Defendant breached the implied warranty of merchantability in that Defendant's Products' ingredients deviate from the label and product description, and reasonable consumers expecting a product that conforms to its label would not accept the Defendant's Product if they knew that they actually contained synthetic ingredients, that are not "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

94.     Within a reasonable amount of time after the Plaintiff discovered that the Products contain synthetic ingredients, Plaintiff notified the Defendant of such breach.

95.     The inability of the Defendant's Products to meet the label description was wholly due to the Defendant's fault and without Plaintiff's or Class Members' fault or neglect, and was solely due to the Defendant's manufacture and distribution of the Products to the public.

96.     As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for the Defendant's Products, together with interest thereon from the date of purchase.

## SEVENTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
### (On Behalf of Plaintiff and All Class Members)

97.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

98.     Defendant knew or had reason to know that the Plaintiff and other Class Members were buying their Products with the specific purpose of buying products that contained exclusively natural ingredients.

99.     Plaintiff and the other Class Members, intending to use wholly natural products, relied on the Defendant in selecting its Products to fit their specific intended use.

100.    Defendant held themselves out as having particular knowledge of the Defendant's Products' ingredients.

101.    Plaintiff's and Class Members' reliance on Defendant in selecting Defendant's Products to fit their particular purpose was reasonable given Defendant's claims and representations in their advertising, packaging and labeling concerning the Products' ingredients.

102.     Plaintiff and the other Class Members' reliance on Defendant in selecting Defendant's Products to fit their particular use was reasonable given Defendant's particular knowledge of the Products they manufacture and distribute.

103.     As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for the Defendant's Products, together with interest thereon from the date of purchase.

## EIGHTH CAUSE OF ACTION
## COMMON LAW UNJUST ENRICHMENT
### (On Behalf of Plaintiff and All Class Members in the Alternative)

104.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

105.     Plaintiff, on behalf of himself and consumers nationwide, brings a common law claim for unjust enrichment.

106.     Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling their Products while misrepresenting and omitting material facts.

107.     Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling their Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendant's benefit and enrichment.  Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

108.     Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Products, which were not as Defendant represented them to be.

109.     Under New York's common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiffs' and Class Members' overpayments.

110.     Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## NINTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION
### (On Behalf of Plaintiff and All Class Members)

111.　　Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

112.　　Defendant, directly, or through its agents and employees, made false representations, concealments, and non-disclosures to Plaintiff and Class Members about its Products' ingredients.

113.　　In making these false, misleading, and deceptive representations and omissions, Defendant knew and intended that consumers would pay a premium for natural labeled products over comparable products that are not labeled as being natural, furthering Defendant's interest in increasing sales for its products and decreasing sales of products that are truthfully offered as "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic" by Defendant's competitors.

114.　　As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive statements and representations, Defendant injured Plaintiff and Class Members in that they paid a premium price for the Products which were not as represented.

115.　　In making the representations of fact to Plaintiff and Class Members described herein, Defendant has failed to fulfill their duties to disclose material facts about the Products. The failure to disclose the true nature of the Products' ingredients was caused by Defendant's negligence and carelessness.

116.　　Defendant, in making these misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the misrepresentations were not

true.  Defendant made and intended the misrepresentations to induce the reliance of Plaintiff and Class Members.

117.    The Plaintiff and Class Members relied on these false representations and non-disclosures by Defendant when purchasing the Products, upon which reliance was justified and reasonably foreseeable.

118.    As a result of Defendant's wrongful conduct, Plaintiff and Class Members have suffered and continue to suffer economic losses and other general and specific damages, including amounts paid for the Products and any interest that would have been accrued on these monies, all in the amount to be determined at trial.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct their practices and to comply with consumer protection statutes nationwide, including New York consumer protection laws;

(c) Awarding monetary damages, including treble damages;

(d) Awarding punitive damages;

(e) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(f) Granting such other and further relief as the Court may deem just and proper.

Dated:  August 26, 2016

**THE SULTZER LAW GROUP P.C.**

Jason P. Sultzer /s/

By: _____

Jason P. Sultzer, Esq.
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

*Counsel for Plaintiff and the Class*