**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x

Wesley Vincent, Noelle Morgante,                    :
Daniel Richman, and Ashley Peluchette               :
individually on behalf of  themselves               :    Case No.: 16-cv-6936
and all others similarly situated and               :
John Does (1-100)on behalf of themselves            :
and all others similarly situated,                  :
                                                    :
              Plaintiffs,                           :
v.                                                  :      **SECOND AMENDED**
                                                    :       **CLASS ACTION**
                                                    :         **COMPLAINT**
People Against Dirty, PBC and                       :
Method Products, PBC,                               :    <u>**JURY TRIAL DEMANDED**</u>

              Defendants.                           :

———————————————————————— x

Plaintiffs, Wesley Vincent, Noelle Morgante, Daniel Richman, and Ashley Paluchette (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated in the State of New York, State of Florida, and State of California, along with John Does from each state, by their attorneys, allege the following upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on personal knowledge:

<u>**NATURE OF THE ACTION**</u>

1.      People Against Dirty, PBC markets and sells laundry supplies, cleaning supplies, and personal cleaning supplies throughout the State of New York and the country. Its marketing is focused on using natural, clean, safe, non-toxic, hypoallergenic, and naturally derived ingredients.

2.      People Against Dirty, PBC ("People Against Dirty") and Method Products, PBC ("Method") (collectively Defendants") deceive consumers throughout the State of New York and the country because their products contain synthetic ingredients and are, therefore, neither natural

nor naturally derived.  Moreover, as set forth below, many of the synthetic ingredients are hazardous and are neither non-toxic, nor are they clean, safe, and hypoallergenic.

3.      According to its website, Method is one of the fastest growing privately held companies in the country. It distributes laundry supplies, cleaning supplies, and personal cleaning supplies throughout the State of New York and the country. Its marketing is focused on using natural, clean, safe, and naturally derived ingredients.

4.      Method deceives consumers throughout the State of New York and the country because none of its products are natural or naturally derived.

5.      This action seeks to remedy Defendants' fraudulent, deceptive and misleading business practices with respect to the marketing and sales of various products throughout the State of New York, State of Florida, State of California, and the United States. These products (hereinafter the "Products") include all of the products in defendants' product portfolio that purport(ed) to be "natural," "naturally derived," "hypoallergenic," and/or "non-toxic," but which contain(ed) synthetic ingredients and ingredients that are synthetic, hazardous or toxic, and have the potential to cause an allergic reaction or irritation.  The products include, but are not limited to, the following[1]:

---

1.      The varieties of the Products listed below is a not exhaustive list. The putative Class includes purchasers of all Product varieties and scents, including those that may not be specifically identified in this Second Amended Complaint.

Method Home Cleaning Products:

Natural Bathroom Tub + Tile Cleaner



Method All-Purpose Surface Cleaner



Method Daily Shower Cleaner Ylang Ylang



Hand Wash Products[2]:

Method Foaming Hand Wash



---

2.        Within this category there are several scents.

Method Foaming Hand Wash Refill



Method Gel Hand Wash



Method Gel Hand Wash Refill



Method Laundry Products[3]:

Method Fabric Softener



---

Method 4x Concentrated Laundry Detergent

Method Dish/Kitchen Cleaners[4]:

Method Dish + Hand Soap



### dish + hand soap – ocean plastic

**let's get plastic out of our oceans**

not only does the naturally derived, biodegradable formula in our odor-eliminating 2-in-1 dish + hand soap pull double duty getting your digits and dishes clean, it's also packaged in the world's first bottles made with a blend of recovered ocean plastic and post-consumer recycled plastic. even cooler than that, the ocean plastic used to make these bottles was collected by method employees. true story. learn more about ocean plastic.

  

$5.08

---

4.      Within this category there are several scents.

Method Dish Soap Refill



Method Smarty Dish Dishwasher Tabs



Method Smarty Dish, Dish Plus Dishwasher Tabs



Ecover Dish Products:

Ecover Automatic Dishwasher Tablets (25 and 45 count)



Ecover Liquid Dish Soap [5]



---

5.      Within this category there are multiple scents

6.      Notwithstanding Defendants' representations that the products they manufacture, sell, and distribute are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic," the Products contain various artificial and synthetic ingredients, some of which are hazardous, toxic, and synthetic, and have the potential to cause an allergic reaction or irritation.  Defendants' advertising and marketing is thus false, deceptive, and misleading.

7.      Plaintiffs and those similarly situated ("Class Members") relied on Defendants' misrepresentations that the Products are "Natural," "Naturally Derived," "Non-Toxic," and "Hypoallergenic" when purchasing the Products.  Plaintiffs and Class Members paid a premium for the Products over and above comparable products that did not purport to be "Natural," "Naturally Derived," "Non-Toxic," and "Hypoallergenic." Given that Plaintiffs and Class Members paid a premium for the Products based on Defendants' misrepresentations that they are "Natural," "Naturally Derived," "Non-Toxic" and "Hypoallergenic," Plaintiffs and Class Members suffered an injury in the amount of the premium paid.

8.      Defendants' conduct violated and continues to violate New York General Business Law §§ 349 and 350, the consumer protection statutes of all 50 states, and the Magnuson-Moss Warranty Act.  Defendants breached and continue to breach express and implied warranties regarding the Products.  Defendants have been and continue to be unjustly enriched.  Accordingly, Plaintiffs bring this action against Defendants on behalf of themselves and Class Members who purchased the Products between August 1, 2010 and the present (the "Class Period").

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter presented by this Class Action Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), and jurisdiction is proper pursuant to 28 U.S.C.

§ 1332(d)(2).  Plaintiff Wesley Vincent is a citizen of the State of New York and resides in Dutchess County, New York. Plaintiff Noelle Morgante is a citizen of the State of New York and resides in Nassau County, New York. Plaintiff Daniel Richman is a citizen of California. Plaintiff Ashley Peluchette is a citizen of Florida. Defendant People Against Dirty, PBC is a corporation with its principal place of business in San Francisco, California, and is organized and existing under the laws of the State of Delaware. Defendant, Method Products, PBC is a corporation with its principal place of business in San Francisco, California, and is organized and existing under the laws of the State of Delaware. Upon information and belief, the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

10.     This Court has personal jurisdiction over Defendants because Defendants conduct and transact business in the State of New York, contract to supply goods within the State of New York, and supply goods within the State of New York.

11.     Venue is proper because Plaintiffs and many Class Members reside in the Southern District of New York, and throughout the State of New York.

## PARTIES

**Plaintiffs**

12.     Plaintiff Wesley Vincent is an individual consumer who, at all times material hereto, was a citizen of Dutchess County, New York.  On or about May 2016 Plaintiff Vincent purchased Method Products from his local Target store.

13.     Plaintiff Noelle Morgante is an individual consumer who, at all times material hereto, was a citizen of Nassau County, New York. On or about 2016 Plaintiff Morgante purchased Method and Ecover Products in Dutchess County, New York.

14.     Plaintiff Daniel Richman, is an individual who at all times relevant herein is over the age of 18, and is a citizen of the State of California, resident of the County of Alameda. Plaintiff purchased one or more of the Products at issue during the Class Period from a retail store located in San Francisco, California.

15.     Plaintiff Ashley Peluchette, is an individual who at all times relevant herein is over the age of 18, and is a citizen of the State of Florida, resident of the County of Broward. Plaintiff purchased one or more the Products at issue during the Class Period from a retail store located in Broward County, Florida.

16.     Plaintiffs purchased the Products because they saw the labeling, advertising, the Defendants' website, and read the packaging, which represented that the Products are "Natural," "Naturally Derived," "Non-Toxic," and "Hypoallergenic."  Plaintiffs relied on Defendants' false, misleading, and deceptive representations that the Products are "Natural," "Naturally Derived," "Non-Toxic," and "Hypoallergenic."  Had Plaintiffs known the truth—that the representations they relied upon in making their purchases were false, misleading, and deceptive—they would not have purchased the Products at a premium price.

**Defendants**

17.     Defendant People Against Dirty, is a corporation organized and existing under the laws of the State of Delaware with its principal places of business in San Francisco, California. People Against Dirty manufactures, markets, advertises, and distributes the Products throughout the United States. People Against Dirty created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Products.

18.     Defendant Method is a corporation organized and existing under the laws of the State of Delaware with its principal places of business in San Francisco, California.  Method manufactures, markets, advertises, and distributes the Products throughout the United States.

20

Method created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Products.

## FACTUAL BACKGROUND

19.     Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products and everyday household products.  Defendants have capitalized on consumers' desire for purportedly "natural products." Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients.  In 2010, sales of natural products grew 6% to $117 billion.[6]  Reasonable consumers, including Plaintiffs and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

20.     Despite the Products containing a number of synthetic ingredients, Defendants market the Products as being "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

21.     As is depicted below, many of the Products' contain the following synthetic ingredients and state that they are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic":

---

6.     *About the Natural Products Association,* NATURAL PRODUCTS ASSOCIATION (last accessed July 3, 2015), http://www.npainfo.org/NPA/About_NPA/NPA/AboutNPA/AbouttheNaturalProductsAssociation.aspx?hkey=8d3a1 5ab-f44f-4473-aa6e-ba27ccebcbb8; *Chemical Blessings What Rousseau Got Wrong*, THE ECONOMIST, Feb. 4, 2008, available at http://www.economist.com/node/10633398; *see also* Hunger Oatman-Standford, *What Were We Thinking? The Top 10 Most Dangerous Ads*, COLLECTORS WEEKLY (Aug. 22, 2012), http://www.collectorsweekly.com/articles/the-top-10-most-dangerous-ads/ (featuring advertisements for dangerous synthetic chemicals that were once marketed as safe).

| Synthetic Ingredients | Products |
|---|---|
| • Calcium Chloride | • Method Foaming Hand Wash<br>• Method 4x Concentrated Laundry Detergent |
| • Propylene Glycol | • Method Fabric Softener |
| • Decyl Glucoside | • Method All-Purpose Surface Cleaner<br>• Method Natural Tub and Tile Bathroom Cleaner<br>• Method Daily Shower Cleaner<br>• Method Gel Hand Wash<br>• Method Dish and Hand Soap |
| • Glycerin | • Method Foaming Hand Wash<br>• Method Gel Hand Wash<br>• Method 4x Concentrated Laundry Detergent<br>• Method Dish and Hand Soap<br>• Ecover Dish Soap |
| • Laureth – 7 | • Method All-Purpose Surface Cleaner<br>• Method Natural Tub and Tile Bathroom Cleaner<br>• Method Daily Shower Cleaner |
| • Phenoxyethanol | • Method Fabric Softener<br>• Method 4x Concentrated Laundry Detergent |
| • Sodium Citrate | • Method Foaming Hand Wash<br>• Method Gel Hand Wash<br>• Method Fabric Softener<br>• Method 4x Concentrated Laundry Detergent<br>• Method Smarty Dish Dishwasher Tabs<br>• Method Smarty Dish, Dish Plus Dishwasher Tabs<br>• Ecover Dish Soap<br>• Ecover Automatic Dishwasher Tablets |
| • Tocopheryl Acetate | • Method Foaming Hand Wash<br>• Method Gel Hand Wash |

| | |
|---|---|
| • Potassium Citrate | • Method Natural Tub and Tile Bathroom Cleaner<br>• Method Daily Shower Cleaner |
| • Citric Acid | • Ecover Dish Soap |
| • Sodium Chloride | • Ecover Dish Soap |
| • Sodium Lauryl Sulfate | • Ecover Dish Soap |
| • Sodium Bicarbonate | • Ecover Automatic Dishwasher Tablets |

22.     Defendants' representations that the Products are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic," are false, misleading, and deceptive because the Products contain multiple ingredients that are, as explained below, synthetic and artificial.  Below are some of the synthetic ingredients the Products contain.

    **a.  Phenoxyethanol** is a synthetic substance and adjuvant. *See* 21 C.F.R. §172.515. [7]

    **b.  Tocopheryl Acetate** is a synthetic, inert ingredient used pre and post-harvest as an ingredient in pesticide formulations applied to growing crops or to raw agricultural commodities after harvest. *See* 40 C.F.R. §180.910.

    **c.  Decyl Glucoside** is a synthetic ingredient obtained by the condensation of decyl alcohol and glucose. [8]

    **d.  Sodium Bicarbonate** is a synthetic that is prepared by treating a sodium carbonate or a sodium carbonate and sodium bicarbonate solution with carbon dioxide. As

---

7.      The Federal Trade Commission, recognizing that many of these same ingredients are unquestionably synthetic, has filed complaints against companies that have used these ingredients in products promoted as natural. **Attachment A**

8       http://www.newdirections.com.au/articles/images/Decyl-Glucoside-and-Other-Alkyl-Glucosides-as-Used-in-Cosmetics.pdf

carbon dioxide is absorbed, a suspension of sodium bicarbonate forms. The slurry

is filtered, forming a cake which is washed and dried. *See* 21 C.F.R. §184.1736.

**e.   Potassium Citrate** is the potassium salt of citric acid. It is a synthetic ingredient

prepared by neutralizing citric acid with potassium hydroxide or potassium

carbonate. *See* 21 C.F.R. §184.1625.

**f.   Sodium Chloride** is a synthetic and hazardous chemical substance. [9]

**g.   Citric Acid** is (2-hydroxy-propane-1, 2,3-tricarboxylic acid) is a synthetic

substance. While the chemical's name has the word "citric" in it, citric acid is no

longer extracted from the citrus fruit but industrially manufactured by fermenting

certain genetically mutant strains of the black mold fungus, *Aspergillus niger*. A

technical evaluation report for the substance citric acid compiled by the United

States Department of Agriculture, Agricultural Marketing Service ("USDA

AMS") for the National Organic Program classified citric acid as "Synthetic

Allowed". *See* Page 4, *available*

*at* http://www.ams.usda.gov/AMSv1.0/getfile?dDocName=STELPRDC5067876. As one

of the USDA AMS reviewers commented,

> "[Citric acid] is a natural[ly] occurring substance that commercially goes
> through numerous chemical processes to get to [its] final usable form.
> This processing would suggest that it be classified as synthetic." *Id.* at 3.

The report further explains, under the "How Made" question, that citric acid is made –

> "Traditionally by extraction from citrus juice, no longer commercially
> available. It is now extracted by fermentation of a carbohydrate substrate
> (often molasses) by citric acid bacteria, *Aspergillus niger* (a mold) or
> *Candida guilliermondii* (a   yeast). Citric acid is recovered from the
> fermentation broth by a lime and sulfuric acid process in which the citric
> acid is first precipitated as a calcium salt and then reacidulated with

---

9.       https://whatsinproducts.com/files/brands_pdf/1391295214.pdf

sulfuric acid." *Id.* at 4.

**h. Sodium Lauryl Sulfate** is a chemical and food additive as stated in C.F.R. 172.822. It is an active ingredient prepared by sulfation of lauryl alcohol, followed by neutralization with sodium carbonate. [10]

**i. Calcium Chloride/Calcium Carbonate** is produced from calcium hydroxide, calcium chloride, or as a byproduct in the lime soda process.  Federal regulations recognize calcium hydroxide as a synthetic compound (and the FDA has declared that calcium chloride renders a food no longer "natural.")[11]  The lime soda process employs hazardous and synthetic substances and requires processing techniques so excessive so as to render the finished product unnatural.  In fact, the EPA has promulgated regulations specifically addressing the environmental impact of calcium carbonate produced through the lime process and by recovery from the Solvay waste products.  Additionally, when used in drugs, calcium carbonate is listed as a synthetic compound by federal regulation.

**j. Propylene Glycol** is known as 1,2-propanediol. It does not occur in nature. Propylene Glycol is manufactured by treating propylene with chlorinated water to form the chlorohydrin which is converted to the glycol by treatment with sodium carbonate solution. It is also prepared by heating glycerol with sodium hydroxide. *See* 21 C.F.R. §184.1666.

---

10.    http://www3.epa.gov/pesticides/chem_search/reg_actions/reregistration/red_G-52_1-Sep-93.pdf
11.    *See* FDA Warning Letter to Karl A. Hirzel, Hirzel Canning Co., (Aug. 29, 2001).

    **k.** **Laureth-7** is a polyethylene glycol-based surfactant and synthetic that may contain potentially toxic impurities such as 1, 4-dioxane. [12] Laureth-7 is synonymous with Ethoxylated Alcohol *See* 40 C.F.R. §721.643 and **Attachment B.**

    **l.** **Sodium Citrate** is the sodium salt of citric acid synthesized by reacting sodium carbonate with citric acid.  It is a recognized synthetic chemical under federal regulations.  *See* 7 C.F.R. §205.605(b).

    **m.** **Glycerin** is a factory-produced texturizer that is created by complex processing.  It is recognized by federal regulations as synthetic.  *See* 7 C.F.R. § 205.605(b).  It is commonly used as a filler and thickening agent.  It requires multiple processing steps in an industrial environment to create Glycerin.  Therefore, it cannot be described as "natural."  A technical evaluation report compiled by the USDA AMS Agricultural Analytics Division for the USDA National Organic Program explains that Glycerin is "produced by a hydrolysis of fats and oils" and is listed in the USDA Organic Program's National List as a "synthetic nonagricultural (nonorganic) substance."  The same report lists several methods of producing Glycerin, each of which involve numerous steps that include the use of high temperatures and pressure and purification to get an end product.

| Table 2 Processes for producing glycerin by hydrolysis of fats and oils[13] | |
|---|---|
| Lemmens Fryer's Process | Oil or fat is subjected in an autoclave to the conjoint action of heat and pressure (about 100 PSI) in the presence of an emulsifying and accelerating agent, e.g. |

---

12.    http://www.ewg.org/skindeep/ingredient/703425/LAURETH-7/

13.

    https://www.ams.usda.gov/sites/default/files/media/Glycerin%20Petition%20to%20remove%20TR%20201
3.pdf

| | zinc oxide or hydroxide (sodium hydroxide can be substituted) for about eight hours. The strong solution of glycerin formed is withdrawn and replaced by a quantity of hot, clean and preferably distilled water equal to about one third to one fourth of the weight of the original charge of oil or fat and treatment continued for an additional four hours. The dilute glycerin obtained from the latter part of the process is drawn off and used for the initial treatment of the further charge of oil or fat. |
|---|---|
| Budde and Robertson's Process | The oils or fats are heated and mechanically agitated with water and sulphuric acid gas, under pressure in a closed vessel or autoclave. The advantage claimed for the process are that the contents of the vessel are free from foreign matter introduced by reagents and need no purification; that the liberated glycerin is in the form of a pure and concentrated solution; that no permanent emulsion is formed and that the fatty acids are not discolored. |
| Ittner's Process | Coconut oil is kept in an autoclave in the presence of water at 70 atmospheres pressure and 225-245oC temperature and split into fatty acids and glycerin, both being soluble under these conditions in water. The glycerin solution separates in the bottom of the autoclave. The aqueous solution contains at the end of the splitting process more than 30 percent glycerin. |
| Continuous High Pressure Hydrolysis | In this process a constant flow of fat is maintained flowing upward through an autoclave column tower against a downward counterflow of water at a pressure of 600 PSI maintained at temperature of 480-495oF. Under these conditions, the fat is almost completely miscible in water and the hydrolysis take place in a very short time. The liberated fatty acids, washed free of glycerin by the downward percolating water, leave the top of the column and pass through a flash tank while the liberated glycerin dissolves in the downward flow of water and is discharged from the bottom of the tower into the sweet-water storage tank. |

23.     Given the presence of these synthetic and artificial ingredients in the Products, Defendants' representations that they are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic," are deceptive and misleading.

24.     The term "synthetic" is also defined by federal statute as "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such

term shall not apply to substances created by naturally occurring biological processes."  7 U.S.C. § 6502(21).

25.     Surveys and other market research, including expert testimony Plaintiffs intend to introduce, will demonstrate that the term "natural" is misleading to a reasonable consumer because the reasonable consumer believes that the term "natural," when used to describe a good such as the Products, means that it is free of synthetic ingredients.

26.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

27.     Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.  That is why, even though all of the ingredients listed above are identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

28.     Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendants' prominent claims, representations, and warranties that the Products are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

29.     Defendants did not disclose that any of the ingredients listed above are synthetic ingredients.  A reasonable consumer understands Defendants' "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic" claims to mean that the Products are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic," and do not contain synthetic ingredients.

30.     Defendants' representations that the Products are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic" induced consumers, including Plaintiffs and Class Members, to pay a premium to purchase the Products.  Plaintiffs and Class Members relied on Defendants' false and misleading misrepresentations in purchasing the Products at a premium price above comparable alternatives that are not represented to be "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."  If not for Defendants' misrepresentations, Plaintiffs and Class Members would not have been willing to purchase the Products at a premium price. Accordingly, they have suffered an injury as a result of Defendants' misrepresentations.

## CLASS ALLEGATIONS

31.     Plaintiffs bring this matter on behalf of themselves and those similarly situated.  As detailed at length in this Second Amended Complaint, Defendants orchestrated deceptive marketing and labeling practices.  Defendants' customers were uniformly impacted by and exposed to this misconduct.  Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

32.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

33.     Plaintiffs Wesley Vincent and Noelle Morgante also seek certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of New York at any time during the Class Period (the "New York Subclass").

34.     Plaintiff Daniel Richman also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of California at any time during the Class Period (the "California Subclass").

35.     Plaintiff Ashley Peluchette also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of Florida at any time during the Class Period (the "Florida Subclass").

36.     The Class, New York Subclass, California Subclass, and Florida Subclass shall be referred to collectively throughout the Second Amended Complaint as the Class.

37.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

38.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiffs believe that there are thousands of consumers who are Class Members described above who have been damaged by Defendants' deceptive and misleading practices.

39.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.   Whether Defendants  are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.   Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Products;

c.   Whether Defendants made false and/or misleading statements to the Class and the public concerning the content and safety of its Products;

d.   Whether Defendants' false and misleading statements concerning their Products were likely to deceive the public;

      e.   Whether Plaintiffs and the Class are entitled to injunctive relief;

      f.   Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

40.   <u>Typicality</u>: Plaintiffs are members of the Class.  Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendants' Products.  Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

41.   <u>Adequacy</u>: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seeks to represent; their consumer fraud claims are common to all members of the Class and they have a strong interest in vindicating their rights; they have retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action.  Plaintiffs have no interests which conflict with those of the Class.  The Class Members' interests will be fairly and adequately protected by Plaintiffs and their counsel.  Defendants have acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiffs and the Class Members.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

42.   The Class is properly brought and should be maintained as a class action under Rule 23(b) because a class action is superior to traditional litigation of this controversy.  Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any other questions affecting only individual members of the Class.  The Class issues are fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on

Defendants' deceptive and misleading marketing and labeling practices.  In addition, this Class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*:

43.     <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.   The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.   The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.   When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.   This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.   Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.   This class action will assure uniformity of decisions among Class Members;

g.   The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.  It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendants' uniform false advertising to purchase its products as being ""Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

44.  Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## INJUNCTIVE CLASS RELIEF

45.  Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here, Defendants have engaged in conduct resulting in misleading consumers about ingredients in their Products.  Since Defendants' conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendants' continuing misconduct. Plaintiffs would purchase the Products again if the ingredients were changed so that they indeed were "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

46.  The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a.  <u>Numerosity</u>: Individual joinder of the injunctive Class Members would be wholly impracticable.  Defendants' Products have been purchased by thousands of people throughout the United States;

b.  <u>Commonality</u>: Questions of law and fact are common to members of the Class. Defendants' misconduct was uniformly directed at all consumers.  Thus, all members of the Class have a common cause against Defendants to stop its misleading conduct through an injunction.  Since the issues presented by this injunctive Class deal exclusively with Defendants' misconduct, resolution of these questions would necessarily be common to the entire Class.  Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

  i.  Resolution of the issues presented in the 23(b)(3) class;

  ii.  Whether members of the Class will continue to suffer harm by virtue of Defendants' deceptive product marketing and labeling; and

  iii.  Whether, on equitable grounds, Defendants should be prevented from continuing to deceptively mislabel their Products as being "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

c.  <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the injunctive Class because their claims arise from the same course of conduct (i.e. Defendants' deceptive and misleading marketing, labeling, and advertising practices).  Plaintiffs are typical representatives of the Class because, like all members of the injunctive Class, they purchased Defendants' Products which were sold unfairly and deceptively to consumers throughout the United States.

d.  <u>Adequacy</u>: Plaintiffs will fairly and adequately represent and protect the interests of the injunctive Class.   Their consumer protection claims are common to all members of the injunctive Class and they have a strong interest in vindicating their rights.   In addition, Plaintiffs and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiffs seek injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class.  Certification under Rule 23(b)(2) is appropriate because Defendants have acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendants have marketed their Products using the same misleading and deceptive labeling to all of the Class Members).  Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendants would be prevented from continuing their misleading and deceptive marketing practices and would be required to honestly disclose to consumers the nature of the contents of their Products. Plaintiffs would purchase the Products again if the ingredients were changed so that they indeed were "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiffs and All Class and/or New York Subclass Members)**

47.    Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

48.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

49.     The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs and the Class and/or New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendants, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

50.     There is no adequate remedy at law.

51.     Defendants misleadingly, inaccurately, and deceptively present their Products to consumers.

52.     Defendants' improper consumer-oriented conduct—including labeling and advertising the Products as being "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic" —is misleading in a material way in that it, *inter alia*, induced Plaintiffs and Class and/or New York Subclass Members to purchase and pay a premium for Defendants' Products and to use the Products when they otherwise would not have. Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

53.     Plaintiffs and the Class and/or New York Subclass Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendants' representations— not "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic." Accordingly, Plaintiffs and the Class and/or New York Subclass Members received less than what they bargained and/or paid for.

54.     Defendants' advertising and Products' packaging and labeling induced the Plaintiffs and Class and/or New York Subclass Members to buy Defendants' Products and to pay a premium price for them.

55.     Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiffs and the Class have been damaged thereby.

56.     As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiffs and Class and/or New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiffs New York Subclass Members)**

57.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

58.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

59.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the

advertising fails to reveal facts material in the light of such

representations with respect to the commodity or employment to

which the advertising relates under the conditions proscribed in

said advertisement, or under such conditions as are customary or

usual . . .

60.     Defendants' labeling and advertisements contain untrue and materially misleading statements concerning Defendants' Products inasmuch as they misrepresent that the Products are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

61.     Plaintiffs and the Class and/or New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Products which were—contrary to Defendants' representations—not "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."  Accordingly, Plaintiffs and the Class and/or New York Subclass Members received less than what they bargained and/or paid for.

62.     Defendants' advertising, packaging and products' labeling induced the Plaintiffs and Class and/or New York Subclass Members to buy Defendants' Products.

63.     Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

64.     Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

65.     Defendants made the material misrepresentations described in this Complaint in Defendants' advertising, and on the Products' packaging and labeling.

66.     Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations.

67.     As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiffs and New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**VIOLATION OF UCL: FRAUDULENT PRONG —CAL. BUS. & PROF. Code §§ 17200, et seq**
**(On Behalf of Plaintiff Richman and California Subclass**

68.     Plaintiff Richman repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

69.     Throughout the Class Period Defendants engaged in a public advertising and marketing campaign representing that the Products are "Natural" and/or "Naturally Derived," despite the fact that the Products contain ingredients that are artificial, synthetic, and/or highly processed.

70.     Defendants' advertisements and marketing representations are misleading, untrue, and likely to deceive reasonable consumers.

71.     Defendants engaged in its advertising and marketing campaign with intent to directly induce customers to purchase the Products based on false claims.

72.     In violation of California Bus. & Prof. Code §§ 17500, *et seq.*, Defendants disseminated, or caused to be disseminated, the deceptive Products' labeling and advertising representations.

73.     Defendants' labeling and advertising representations for the Products are by their very nature unfair, deceptive, and/or unlawful within the meaning of California Bus. & Prof. Code §§ 17500 *et seq.*

74.     The representations were at all material times hereto likely to deceive reasonable consumers, including Plaintiff Richman and members of the Putative Class.

75.     Defendants violated California Bus. & Prof. Code §§ 17500 *et seq.*, in making and disseminating the deceptive representations alleged herein.

76.     Defendants knew or should have known that the representations were false, misleading, and likely to deceive reasonable consumers, such as Plaintiff Richman and members of the Putative Class.

77.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Richman and similarly situated purchasers of the Products suffered economic damages.

78.     Plaintiff Richman was injured in fact and lost money as a result of Defendants' conduct of improperly advertising the Products as described herein.

79.     Plaintiff Richman would have paid less for the Products or would not have purchased the Products but for Defendants' misleading statements about the Products.

80.     Pursuant to Bus. & Prof. Code § 17535, Plaintiff Richman, individually and on behalf of all similarly situated purchasers, seeks an order of this Court requiring Defendants to restore to purchasers of the Products all monies that may have been acquired by Defendants as a result of such false, unfair, deceptive, and/or unlawful acts or practices. Plaintiff Richman and members of the Putative Class seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief enjoining Defendants from disseminating its untrue and misleading statements, and other relief allowable under California Business & Professions Code Section 17535.

81.     Furthermore, as a result of Defendants' violations of the FAL, Plaintiff Richman and similarly situated purchasers of the Products are entitled to restitution for out-of-pocket expenses and economic harm.

82.     Pursuant to Civil Code § 3287(a), Plaintiff Richman and similarly situated purchasers of the Products are further entitled to pre-judgment interest as a direct and proximate result of Defendants' wrongful conduct. The amount on which interest is to be calculated is a sum

certain and capable of calculation, and Plaintiff Richman and similarly situated purchasers of the Products are entitled to interest in an amount according to proof.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF UCL: UNFAIR PRONG —CAL. BUS. & PROF. CODE §§ 17200, et seq.**
**(On Behalf of Plaintiff Richman and California Subclass**

83.     Plaintiff Richman repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

84.     Cal. Bus. & Prof. Code § 17200 prohibits any "unfair…business act or practice." Defendants' business practices, as alleged herein, are "unfair" within the meaning of the UCL because: (1) Defendants' conduct caused, or is likely to cause, substantial injury to Plaintiff Richman and the members of the Putative Class; (2) such injury is not reasonably avoidable by Plaintiff Richman and members of the Putative Class due to Defendants' exclusive knowledge of the exact character and content of the Products' ingredients; and (3) the injury is not outweighed by any countervailing benefits to competition or Plaintiff Richman and members of the Putative Class.

85.     Further, Defendants committed "unfair" business acts or practices by engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff Richman and members of the Putative Class; and engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws alleged herein.[14]

86.     Plaintiff Richman and members of the Putative Class suffered injury in fact and lost money or property as a result of Defendants' deceptive advertising: they were denied the benefit of the bargain when they decided to purchase the Products over competitor products that are less expensive and/or are do not claim to be "Natural" and/or "Naturally Derived."

---

[14]     *See People v. Casa Blanca Convalescent Home, Inc.*, 159 Cal. App. 3d 509, 530 (1984).

87.     First, the injury to Plaintiff Richman and members of the Putative Class is substantial because but for Defendants' misrepresentation that the Products are "Natural" and/or "Naturally Derived," Plaintiff Richman and members of the Putative Class would have paid less for the Products, would not have purchased the Products, and/or the Products are worth less because of the true state of the Products. Moreover, Plaintiff Richman and members of the Putative Class were denied the benefit of the bargain when they decided to purchase the Products over competitor products that are less expensive and/or do not claim to be "Natural" or Naturally Derived."

88.     Second, given the fact that Defendants had exclusive knowledge of the exact character and content of the Products' ingredients and Plaintiff Richman and members of the Putative Class had no reason to believe that the Products are not "Natural" and/or "Naturally Derived," the resulting injury is not of the variety that Plaintiff Richman and members of the Putative Class could reasonably have avoided.

89.     Third, the injury to Plaintiff Richman and members of the Putative California Subclass is not outweighed by any countervailing benefits to competition or Plaintiff Richman and members of the Putative Class. Any purported benefits to Plaintiff Richman and members of the Putative Class from the inclusion of the "Natural" and/or "Naturally Derived" representations on the Products, if any, is negated by the deceptive advertising that the Products are "Natural" and/or "Naturally Derived."

90.     Finally, Defendants had an improper motive (profit before accurate marketing) in its practices related to the deceptive labeling and advertising of the Products, as set forth above, which is immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiff Richman and members of the Putative Class. Defendants' conduct also offends established public policies against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers.

91.     Plaintiff Richman reserves the right to allege further conduct that constitutes other unfair business acts or practices.

92.     As purchasers and consumers of Defendants' Products, and as members of the general public who purchased and used the Products, Plaintiff Richman and the Putative Class are entitled to bring this class action seeking all available remedies under the UCL.

93.     Pursuant to California Bus. & Prof. Code § 17203, Plaintiff Richman, individually, and on behalf of the Putative Class, seeks an order of this Court for injunctive relief and disgorging and restoring all monies that have been acquired by Defendants as a result of Defendants' business acts or practices described herein. Plaintiff Richman, members of the Putative Class, and the general public may be irreparably harmed or denied an effective and complete remedy in the absence of such an order.

94.     As a result of Defendants' violations of the UCL, Plaintiff Richman and the Putative Class are entitled to restitution for out-of-pocket expenses and economic harm.

95.     Pursuant to Civil Code § 3287(a), Plaintiff Richman and the Putative Class are further entitled to pre-judgment interest as a direct and proximate result of Defendants' unfair and fraudulent conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff Richman and the Putative Class are entitled to interest in an amount according to proof.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF UCL: Unlawful Prong —Cal. Bus. & Prof. Code §§ 17200, et seq.**
**(On Behalf of Plaintiff Richman and California Subclass)**

96.     Plaintiff Richman repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

97.     Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful…business act or practice." A business practice is "unlawful" under the UCL if it violates any other law or regulation. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures as alleged herein constitute "unlawful" business acts and practices because Defendants' conduct violates the FAL and the CLRA.

43

98.   As detailed above, Defendants' unlawful practices include disseminating false and/or misleading representations about the Products.

99.   Specifically, Defendants have represented that their Products are "Natural" and/or "Naturally Derived," when in fact the Products contain ingredients that are artificial, synthetic, and/or highly processed.

100.   Plaintiff Richman would have paid less for the Products or would not have purchased the Products, but for Defendants' misleading statements about the Products.

101.   Plaintiff Richman was injured in fact and lost money as a result of Defendants' conduct.

102.   Plaintiff Richman paid for the Products, but did not receive what is reasonably expected.

103.   Plaintiff Richman has standing to pursue this claim as Plaintiff Richman has suffered injury in fact and has lost money or property as a result of Defendants' actions as set forth herein.

104.   The marketing, advertising, and sale of the Products by Defendants is unlawful because of (1) Defendants' violation of sections 1770(a)(5), 1770(a)(7), 1770(a)(9), and 1770(a)(16) of the CLRA, California Civil Code section 1750, *et seq.*; and (2) Defendants' violation of the FAL, California Business & Professions Code section 17500, *et seq*.

105.   Because Defendants' business conduct in advertising, marketing, and selling the Products using false and misleading statements, in violation of the CLRA, FAL, and/or other federal and state laws or regulations, it constitutes a per se violation of the "unlawful" prong of the UCL.

106.   As purchasers and consumers of Defendants' Products, and as members of the general public who purchased and used the Products, Plaintiff Richman and the Putative Class are entitled to and bring this class action seeking all available remedies under the UCL.

107.   Pursuant to California Bus. & Prof. Code § 17203, Plaintiff Richman, individually and on behalf of the Putative Class, seeks an order of this Court for injunctive relief and disgorging

and restoring all monies that may have been acquired by Defendants as a result of such unlawful business acts or practices. Plaintiff Richman, the Putative Class, and the general public may be irreparably harmed and/or denied an effective and complete remedy in the absence of such an order.

108.    As a result of Defendants' violations of the UCL, Plaintiff Richman and the Putative Class are entitled to restitution for out-of-pocket expenses and economic harm.

Pursuant to Civil Code § 3287(a), Plaintiff Richman and the Putative Class are further entitled to pre-judgment interest as a direct and proximate result of Defendants' unlawful business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff Richman and the Putative Class are entitled to interest in an amount according to proof.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, et seq.**
**(On Behalf of Plaintiff Peluchette and Florida Subclass)**

109.    Plaintiff Peluchette repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

110.    This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 201.213, *Florida Statutes*. The express purpose of FDUTPA is to "protect the consuming public...from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202(2).

111.    The sale of the Products at issue in this case was a "consumer transaction" within the scope of the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 201.213, *Florida Statutes*.

112.    Plaintiff Peluchette is a "consumer" as defined by Section 501.203, *Florida Statutes*. Defendants' Products are a "good" within the meaning of the Act. Defendants are engaged in trade or commerce within the meaning of the Act.

113.    Section 501.204(1), *Florida Statutes* declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

114.    Section 501.204(2), *Florida Statutes* states that "due consideration be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Trade Commission Act."  Defendants' unfair and deceptive practices are likely to mislead – and have misled – the consumer acting reasonably under the circumstances and, therefore, violate Section 500.04, Florida Statutes and 21 U.S.C. Section 343.

115.    Defendants have violated the Act by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers. Specifically, Defendants have represented that the Products are "Natural" and "Naturally Derived," when in fact, the Products are comprised of artificial, synthetic, and/or highly processed ingredients.

116.    Plaintiff Peluchette and Putative Class Members have been aggrieved by Defendants' unfair and deceptive practices in that they purchased and consumed Defendants' Products.

117.    Reasonable consumers rely on Defendants to honestly represent the true nature of their ingredients.

118.    Defendants have deceived reasonable consumers, like Plaintiff Peluchette and the Putative Class, into believing the Products were something they were not—"Natural" and/or "Naturally Derived."

119.    The knowledge required to discern the true nature of Defendants' Products is beyond that of the reasonable consumer—namely that the Products contain artificial, synthetic,

and/or highly processed ingredients. Defendants' representations lead reasonable consumers to believe that the Products were "Natural" and/or "Naturally Derived," when in fact, they are not.

120.    The damages suffered by the Plaintiff Peluchette and the Putative Class were directly and proximately caused by the deceptive, misleading, and unfair practices of Defendants, as described above.

121.    Pursuant to Section 501.211(1), *Florida Statutes*, Plaintiff Peluchette and the Putative Class seek a declaratory judgment and court order enjoining the above described wrongful acts and practices of the Defendants, and for restitution and disgorgement. Additionally, pursuant to sections 501.211(2) and 501.2105, *Florida Statutes*, Plaintiff Peluchette and the Putative Class make claims for damages, attorney's fees, and costs

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF STATE CONSUMER PROTECTION STATUTES**
**(On Behalf of Plaintiffs and All Class Members)**

122.    Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

123.    Plaintiffs and Class Members have been injured as a result of Defendants' violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiffs and Class Members based on Defendants' fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

124.    Defendants' conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the following jurisdictions:

a.    **Alaska:** Defendants' practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b.   **Arizona:**  Defendants' practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq*.

c.   **Arkansas:**  Defendants' practices were and are in violation of Arkansas Code Ann. § 4-88-101, *et seq.*

d.   **California:**  Defendants' practices were and are in violation of California Consumer Legal Remedies Act, Civil Code § 1750, *et seq*., and California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq*., and California's False Advertising Law, California Business and Professions Code § 17500, *et seq*.

e.   **Colorado**:  Defendants' practices were and are in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

f.   **Connecticut:**  Defendants' practices were and are in violation of Connecticut's Gen. Stat. § 42-110a, *et seq.*

g.   **Delaware:**  Defendants' practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

h.   **District of Columbia:**  Defendants' practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

i.   **Florida:**  Defendants' practices were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

j.   **Hawaii:**  Defendants' practices were and are in violation of the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

k.   **Idaho:**  Defendants' practices were and are in violation of Idaho's Consumer

Protection Act, Idaho Code Ann. § 48-601, *et seq.*

l.   **Illinois:**  Defendants' acts and practices were and are in violation of Illinois'

Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat.

505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

m.   **Indiana:**  Defendants' practices were and are in violation of Indiana's Deceptive

Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

n.   **Kansas:**  Defendants' practices were and are in violation of Kansas's Consumer

Protection Act, Kat. Stat. Ann. § 50-623, *et seq*.

o.   **Kentucky:**  Defendants' practices were and are in violation of Kentucky's

Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

p.   **Maine:**  Defendants' practices were and are in violation of the Maine Unfair

Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq*. and 10 Me.

Rev. Stat. Ann. § 1101, *et seq*.

q.   **Maryland:**  Defendants' practices were and are in violation of Maryland's

Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq*.

r.   **Massachusetts:**  Defendants' practices were unfair and deceptive acts and

practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen.

Laws ch. 93A, § 2.

s.   **Michigan:**  Defendants' practices were and are in violation of Michigan's

Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq*.

t.  **Minnesota:**  Defendants' practices were and are in violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

u.  **Missouri:**  Defendants' practices were and are in violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

v.  **Nebraska:**  Defendants' practices were and are in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade

   Practices Act, § 87-302, *et seq.*

w.  **Nevada:**  Defendants' practices were and are in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

x.  **New Hampshire:**  Defendants' practices were and are in violation of New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

y.  **New Jersey:**  Defendants' practices were and are in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

z.  **New Mexico:**  Defendants' practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

aa.  **New York:**  Defendants' practices were in and are in violation of New York's Gen. Bus. Law §§ 349, *et seq.*

bb.  **North Carolina:**  Defendants' practices were and are in violation of North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et seq.*

cc. **North Dakota:**  Defendants' practices were and are in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq.*

dd. **Ohio:**  Defendants' practices were and are in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

ee. **Oklahoma:**  Defendants' practices were and are in violation of Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

ff. **Oregon:**  Defendants' practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

gg. **Pennsylvania:**  Defendants' practices were and are in violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.*

hh. **Rhode Island:**  Defendants' practices were and are in violation of Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

ii. **South Dakota:**  Defendants' practices were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

jj. **Texas:**  Defendants' practices were and are in violation of Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*

kk. **Utah:**  Defendants' practices were and are in violation of Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

ll. **Vermont:**  Defendants' practices were and are in violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

mm. **Washington:**  Defendants' practices were and are in violation of Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

nn. **West Virginia:**  Defendants' practices were and are in violation of West Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et seq.*

*oo.* **Wisconsin:**  Defendants' practices were and are in violation of Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq.*

pp. **Wyoming:**  Defendants' practices were and are in violation of Wyoming's Consumer Protection Act, Wyo. Stat. Ann. §40-12-101, *et seq.*

125.    Defendants violated the aforementioned states' unfair and deceptive acts and practices laws by representing that the Products are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

126.    Contrary to Defendants' representations, the Products are not "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

127.    Defendants' misrepresentations were material to Plaintiffs' and Class Members' decision to pay a premium for the Products.

128.    Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

52

129. As a result of Defendants' violations of the aforementioned states' unfair and deceptive practices laws, Plaintiffs and Class Members paid a premium for the Products.

130. As a result of Defendants' violations, Defendants have been unjustly enriched.

131. Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiffs and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

<u>EIGHTH CAUSE OF ACTION</u>
<u>BREACH OF EXPRESS WARRANTY</u>
**(On Behalf of Plaintiffs and All Class Members)**

132. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

133. Defendants provided the Plaintiffs and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

134. The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

135. These affirmations of fact became part of the basis for the bargain and were material to the Plaintiffs' and Class Members' transactions.

136. Plaintiffs and Class Members reasonably relied upon the Defendants' affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendants' Products.

137.    Within a reasonable time after they knew or should have known of Defendants' breach, Plaintiffs, on behalf of  themselves and Class Members, placed Defendants on notice of the breach, giving Defendants an opportunity to cure its breach, which they refused to do.

138.    Defendants breached the express warranty because the Products are not "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

139.    Defendants thereby breached the following state warranty laws:

a.    Code of Ala. § 7-2-313;

b.    Alaska Stat. § 45.02.313;

c.    A.R.S. § 47-2313;

d.    A.C.A. § 4-2-313;

e.    Cal. Comm. Code § 2313;

f.    Colo. Rev. Stat. § 4-2-313;

g.    Conn. Gen. Stat. § 42a-2-313;

h.    6 Del. C. § 2-313;

i.    D.C. Code § 28:2-313;

j.    Fla. Stat. § 672.313;

k.    O.C.G.A. § 11-2-313;

l.    H.R.S. § 490:2-313;

m.    Idaho Code § 28-2-313;

n.    810 I.L.C.S. 5/2-313;

o.    Ind. Code § 26-1-2-313;

p.    Iowa Code § 554.2313;

q.    K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     Il. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

mm.     R.I. Gen. Laws § 6A-2-313;

nn.     S.C. Code Ann. § 36-2-313;

oo.   S.D. Codified Laws, § 57A-2-313;

pp.   Tenn. Code Ann. § 47-2-313;

qq.   Tex. Bus. & Com. Code § 2.313;

rr.   Utah Code Ann. § 70A-2-313;

ss.   9A V.S.A. § 2-313;

tt.   Va. Code Ann. § 59.1-504.2;

uu.   Wash. Rev. Code Ann. § 6A.2-313;

vv.   W. Va. Code § 46-2-313;

ww.   Wis. Stat. § 402.313;

xx.   Wyo. Stat. § 34.1-2-313.

140.   As a direct and proximate result of Defendants' breach of express warranty, Plaintiffs and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

### NINTH CAUSE OF ACTION
### VIOLATION OF THE MAGNUSON-MOSS
### WARRANTY ACT, 15 U.S.C. § 2301 *et seq.*
### (On Behalf of Plaintiffs and All Class Members)

141.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

142.   Plaintiffs bring this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 named Plaintiffs.

143.   The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

144.    The Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

145.    Plaintiffs and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

146.    Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

147.    Defendants represented in writing that the Products are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

148.    These statements were made in connection with the sale of the Products and relate to the nature of the Products and affirm and promise that the Products are as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

149.    As alleged herein, Defendants breached the written warranty by selling consumers Products that are not "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

150.    The Products do not conform to the Defendants' written warranty and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*  Consequently, Plaintiffs and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

**TENTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY**
**(On Behalf of Plaintiffs and All Class Members)**

151.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

152.    Defendants are in the business of manufacturing, distributing, marketing and advertising the above listed products.

153.    Under the Uniform Commercial Code's implied warranty of merchantability, the Defendants warranted to Plaintiffs and Class Members that the Products are "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

154.    Defendants breached the implied warranty of merchantability in that Defendants' Products' ingredients deviate from the label and product description, and reasonable consumers expecting a product that conforms to its label would not accept the Defendants' Product if they knew that they actually contained synthetic ingredients, that are not "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic."

155.    Within a reasonable amount of time after the Plaintiffs discovered that the Products contain synthetic ingredients, Plaintiffs notified the Defendants of such breach.

156.    The inability of the Defendants' Products to meet the label description was wholly due to the Defendants' fault and without Plaintiffs' or Class Members' fault or neglect, and was solely due to the Defendants' manufacture and distribution of the Products to the public.

157.    As a result of the foregoing, Plaintiffs and Class Members have been damaged in the amount paid for the Defendants' Products, together with interest thereon from the date of purchase.

**ELEVENTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**
**(On Behalf of Plaintiffs and All Class Members)**

158.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

159.   Defendants knew or had reason to know that the Plaintiffs and other Class Members were buying their Products with the specific purpose of buying products that contained exclusively natural ingredients.

160.   Plaintiffs and the other Class Members, intending to use wholly natural products, relied on the Defendants in selecting its Products to fit their specific intended use.

161.   Defendants held themselves out as having particular knowledge of the Defendants' Products' ingredients.

162.   Plaintiffs' and Class Members' reliance on Defendants in selecting Defendants' Products to fit their particular purpose was reasonable given Defendants' claims and representations in their advertising, packaging and labeling concerning the Products' ingredients.

163.   Plaintiffs and the other Class Members' reliance on Defendants in selecting Defendants' Products to fit their particular use was reasonable given Defendants' particular knowledge of the Products they manufacture and distribute.

164.   As a result of the foregoing, Plaintiffs and Class Members have been damaged in the amount paid for the Defendants' Products, together with interest thereon from the date of purchase.

**TWELFTH  CAUSE OF ACTION**
**COMMON LAW UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and All Class Members in the Alternative)**

165.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

166.   Plaintiffs, on behalf of themselves and consumers nationwide, brings a common law claim for unjust enrichment.

167.    Defendants' conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling their Products while misrepresenting and omitting material facts.

168.    Defendants' unlawful conduct as described in this Complaint allowed Defendants to knowingly realize substantial revenues from selling their Products at the expense of, and to the detriment or impoverishment of, Plaintiffs and Class Members, and to Defendants' benefit and enrichment.  Defendants have thereby violated fundamental principles of justice, equity, and good conscience.

169.    Plaintiffs and Class Members conferred significant financial benefits and paid substantial compensation to Defendants for the Products, which were not as Defendants represented them to be.

170.    Under New York's common law principles of unjust enrichment, it is inequitable for Defendants to retain the benefits conferred by Plaintiffs' and Class Members' overpayments.

171.    Plaintiffs and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class Members may seek restitution.

**THIRTEENTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(On Behalf of Plaintiffs and All Class Members)**

172.    Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

173.    Defendants, directly, or through its agents and employees, made false representations, concealments, and non-disclosures to Plaintiffs and Class Members about its Products' ingredients.

174.     In making these false, misleading, and deceptive representations and omissions, Defendants knew and intended that consumers would pay a premium for natural labeled products over comparable products that are not labeled as being natural, furthering Defendants' interest in increasing sales for its products and decreasing sales of products that are truthfully offered as "Natural," "Naturally Derived," "Non-Toxic," and/or "Hypoallergenic" by Defendants' competitors.

175.     As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive statements and representations, Defendants injured Plaintiffs and Class Members in that they paid a premium price for the Products which were not as represented.

176.     In making the representations of fact to Plaintiffs and Class Members described herein, Defendants have failed to fulfill their duties to disclose material facts about the Products. The failure to disclose the true nature of the Products' ingredients was caused by Defendants' negligence and carelessness.

177.     Defendants, in making these misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the misrepresentations were not true.  Defendants made and intended the misrepresentations to induce the reliance of Plaintiffs and Class Members.

178.     The Plaintiffs and Class Members relied on these false representations and non-disclosures by Defendants when purchasing the Products, upon which reliance was justified and reasonably foreseeable.

179.     As a result of Defendants' wrongful conduct, Plaintiffs and Class Members have suffered and continue to suffer economic losses and other general and specific damages, including

amounts paid for the Products and any interest that would have been accrued on these monies, all in the amount to be determined at trial.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiffs as the representative of the Class and Subclasses under Rule 23 of the FRCP;

(b) Entering preliminary and permanent injunctive relief against Defendants, directing Defendants to correct their practices and to comply with consumer protection statutes nationwide, including New York, Florida, and California consumer protection laws;

(c) Awarding monetary damages, including treble damages;

(d) Awarding punitive damages;

(e) Awarding Plaintiffs and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys and experts, and reimbursement of Plaintiffs' expenses; and

(f) Granting such other and further relief as the Court may deem just and proper.


Dated:  October 13, 2016

**THE SULTZER LAW GROUP P.C.**

Jason P. Sultzer /s/

By: _____

Jason P. Sultzer, Esq.
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

Benjamin M. Lopatin, Esq. (SBN 281730)
*Pro Hac Vice*
**EGGNATZ, LOPATIN & PASCUCCI, LLP**
2201 Market Street, Suite H
San Francisco, California 94114
Telephone: (415) 324-8620
Facsimile: (415) 520-2262
Email: *BLopatin@ELPLawyers.com*

Joshua H. Eggnatz, Esq. (Fla. Bar No.: 0067926)
*Pro Hac Vice*
**EGGNATZ, LOPATIN & PASCUCCI, LLP**
5400 S. University Drive, Ste. 417
Davie, Florida 33328
Tel: (954) 889-3359
Fax: (954) 889-5913 Email:
*jeggnatz@elplawyers.com*

*Counsel for Plaintiffs and the Class*