**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――――――

WESLEY VINCENT, NOELLE                    :
MORGANTE, DANIEL RICHMAN, AND        :          Case No.: 7:16-cv-06936-NSR
ASHLEY PELUCHETTE individually on         :
behalf of himself and on behalf of all others   :
similarly situated and John Does (1-100) on   :
behalf of themselves and all others similarly   :
situated,                                                      :
                                                                    :
         *Plaintiffs,*                                        :
*vs.*                                                            :

PEOPLE AGAINST DIRTY, PBC. and
METHOD PRODUCTS, PBC.

         *Defendants.*

―――――――――――――――――――――――――――

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,  PRELIMINARY**
**CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF NOTICE PLAN**

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................ 1

II.  PROCEDURAL BACKGROUND ............................................................................... 1

III.  THE TERMS OF THE PROPOSED SETTLEMENT ................................................. 7

    A.  Certification of the Settlement Class ................................................................. 7

    B.  Relief for the Members of the Settlement Class ............................................... 7

    C.  Service Awards and Attorneys' Fees and Expenses ......................................... 9

    D.  Settlement Notice .............................................................................................. 9

IV.  ARGUMENT ............................................................................................................. 12

    A.  The Court Should Preliminarily Approve the Settlement Agreement ............ 12

    B.  Legal Standard ................................................................................................ 12

    C.  The Settlement Is Procedurally Fair ............................................................... 14

    D.  The Settlement Is Substantively Fair ............................................................. 15

        i.  The complexity, expense, and likely duration of litigation ........................... 16

        ii.  The reaction of the class to the settlement .................................................... 17

        iii.  The stage of the proceedings and the amount of discovery completed .................... 17

        iv.  The risks of establishing liability and damages ............................................ 18

        v.  The risk of maintaining class action status through trial ............................... 19

        vi.  The ability of Defendant to withstand a greater judgment ........................... 20

        vii.  The range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation ........................................................ 20

    E.  The Court Should Preliminarily Certify the Settlement Class ....................... 22

        i.  The Settlement Class Meets All Prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure .......................................................................................................... 22

            a.  *Numerosity* .......................................................................................... 22

            b.  *Commonality* ....................................................................................... 22

            c.  *Typicality* ............................................................................................ 23

            d.  *Adequacy of representation* ................................................................ 24

        ii.  The Settlement Class Meets The Requirements of Rule 23(b)(3) .............................. 24

            a.  Common legal and factual questions predominate in this action ............................... 25

            b.  A class action is the superior means to adjudicate Plaintiffs' claims ......................... 26

    F.  The Court Should Approve the Proposed Notice Plan .................................... 27

V.  CONCLUSION .......................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ackerman v. Coca-Cola Co.*,

    2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010) ................................................. 27

*Amchem Prods. v. Windsor*,

    521 U.S. 591 (1997) ........................................................................................... 28, 29

*Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*,

    461 F.3d 219 (2d Cir. N.Y. 2006) ................................................................................ 29, 30

*Banyai v. Mazur*,

    No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 22342 (S.D.N.Y. Mar. 27, 2007) .................. 20

*Bodon v. Domino's Pizza, LLC*,

    No. 09-CV-2941, 2015 U.S. Dist. LEXIS 17358 (E.D.N.Y. Jan. 16, 2015) ................... 23

*Brazil v. Dole Packaged Foods, LLC*,

    No. 12-CV-01831, 2014 U.S. Dist. LEXIS 157578 (N.D. Cal. Nov. 6, 2014) ............... 22

*Charron v. Wiener*,

    731 F.3d 241 (2d Cir. 2013) ................................................................................ 13, 17, 28

*D.S. v. New York City Dep't of Educ.*,

    255 F.R.D. 59 (E.D.N.Y. 2008) .................................................................................. 20

*D'Amato v. Deutsche Bank*,

    236 F.3d 78 (2d Cir. 2001) ........................................................................................ 15

*Detroit v. Grinnell Corp.*,

    495 F.2d 448 (2d Cir. 1974) ................................................................................ 16, 17

*Dupler v. Costco Wholesale Corp.*,

    705 F. Supp. 2d 231 (E.D.N.Y. 2010) ......................................................................... 17

*Fogarazzo v. Lehman Bros.*,

    232 F.R.D. 176 (S.D.N.Y. 2005) ..................................................................... 27

*Gen. Tel. Co. of the Southwest v. Falcon*,

    457 U.S. 147 (1982)......................................................................................... 22

*Goldemberg v. Johnson & Johnson Consumer Cos.*,

    No. 13 Civ. 3073, 2016 U.S. Dist. LEXIS 137780 (S.D.N.Y. Oct. 4, 2016) ............. 18, 21

*Hadel v. Gaucho*, LLC,

    No. 15 Civ. 3706, 2016 U.S. Dist. LEXIS 33085 (S.D.N.Y. Mar. 14, 2016)............. 14, 15

*Hall v. Prosource Techs., LLC*,

    No. 14-CV-2502, 2016 U.S. Dist. LEXIS 53791 (E.D.N.Y. Apr. 11, 2016) .................. 15

*Handschu v. Special Services Div.*,

    787 F.2d 828 (2d Cir. 1986)............................................................................ 32

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998) ......................................................................... 31

*In re Nissan Radiator*,

    No. 10 CV 7493, 2013 U.S. Dist. LEXIS 116720 (S.D.N.Y. May 30, 2013) .................. 27

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,

    986 F. Supp. 2d 207 (E.D.N.Y. 2013) ............................................................... 19

*In re Sinus Buster Prods. Consumer Litig.*,

    No. 12 -CV-2429, 2014 U.S. Dist. LEXIS 158415 (E.D.N.Y. Nov. 10, 2014)................ 23

*Labrado v. Method Products, PBC*,

    No. 3:16-cv-05905 (N.D. Cal. Oct 12, 2016) .................................................... 5

*Manley v. Midan Rest. Inc.*,

    14 Civ. 1693, 2016 U.S. Dist. LEXIS 43571 (S.D.N.Y. Mar. 30, 2016) ................. passim

*Marisol A. by Forbes v. Giuliani*,

    126 F.3d 372 (2d Cir. 1997)................................................................... 25, 28

*McReynolds v. Richards-Cantave*,

    588 F.3d 790 (2d Cir. 2009)............................................................. 13, 15, 17

*Meredith Corp. v. SESAC, LLC*,

    87 F. Supp. 3d 650 (S.D.N.Y. 2015)................................................... 17, 19, 30

*Mills v. Capital One, N.A.*,

    No. 14 Civ 1937, 2015 U.S. Dist. LEXIS 133530 (S.D.N.Y. Sept. 30, 2015) ................ 22

*Richman v. Method Products, PBC and People Against Dirty, PBC*,

    Case No. 16-cv-5167 (N.D. Cal.) ...................................................................... 5

*Robidoux v. Celani*,

    987 F.2d 931 (2d Cir. 1993)............................................................................ 27

*Sykes v. Mel S. Harris & Assocs. LLC*,

    780 F.3d 70 (2d Cir. 2015)............................................................................. 26

*Tart v. Lions Gate Entm't Corp.*,

    No. 14-CV-8004, 2015 U.S. Dist. LEXIS 139266 (S.D.N.Y. Oct. 13, 2015) 14, 15, 29, 31

*Tsan v. Seventh Generation*,

    No. 7:14-cv-09087-KMK (S.D.N.Y.) ............................................................. 10

*Vargas v. Capital One Fin. Advisors*,

    2014 U.S. App. LEXIS 4689 (2d Cir. 2014) .................................................... 32

*Viafara v. MCIZ Corp.*,

    No. 12 Civ 7452, 2014 U.S. Dist. LEXIS 60695 (S.D.N.Y. Apr. 30, 2014) .................... 23

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011) ....................................................................................................... 26

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,

    396 F.3d 96 (2d Cir. 2005) ................................................................................ 13, 23, 32

*Williams v. Gerber Prods. Co.*,

    552 F.3d 934 (9th Cir. Cal. 2008) ................................................................................. 26

*Willix v. Healthfirst, Inc.*,

    No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) .................. 20

*Wilson vs. Method Products, PBC*,

    No. 2016-00038054 (Cal. Super. Ct. Oct. 27, 2016) ......................................................... 6

*Zeltser v. Merrill Lynch & Co.,*

    No. 13 Civ. 1531, 2014 U.S. Dist. LEXIS 135635 (S.D.N.Y. Sep. 23, 2014) ..... 20, 30, 31

**Statutes**

CAL. CIV. CODE 1750, *et seq.* ................................................................................................ 2

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004) .................................................. 27

MANUAL FOR COMPLEX LITIGATION (THIRD) (1995) ..................................................... 13

**Rules**

FED. R. CIV. P. 23(a) ........................................................................................... 25, 26, 27, 28

FED. R. CIV. P. 23(b) .................................................................................................... 29, 30

FED. R. CIV. P. 23(c) ....................................................................................................... 7, 32

FED. R. CIV. P. 23(e) .................................................................................................................. 6, 13

FED. R. CIV. P. 23(g) ...................................................................................................................... 7

Plaintiffs Wesley Vincent, Noelle Morgante, Daniel Richman and Ashley Peluchette, individually and on behalf of all others similarly situated, respectfully submit this memorandum of law in support of Plaintiffs' motion for preliminary approval of the Parties' Settlement Agreement. [1]

## I.   INTRODUCTION

This proposed class action settlement would resolve the claims of purchasers of Defendants' METHOD and ECOVER branded products.[2]   In two separate actions, plaintiffs alleged that Defendants People Against Dirty, PBC ("PAD") and Method Products, PBC ("Method") (collectively "Defendants") misled consumers by labeling the Products as "natural", "naturally-derived," "hypo-allergenic,", "non-toxic,", "plant-derived," "plant-based," "mineral-based," "bio-based," and similar statements to take advantage of consumers' growing concern about the deleterious health effects of synthetic and chemical ingredients.   The Products contain many ingredients that Plaintiffs contend are artificial, such as phenoxyethanol, decyl glucoside, and tocopheryl acetate.

To settle the cases, Method will pay $2.8 million and make appropriate changes to their product labeling, marketing and advertising.

## II.   PROCEDURAL BACKGROUND

On October 27, 2015, plaintiff Daniel Richman, through Eggnatz, Lopatin & Pascucci, LLP ("ELP"), served Method with a notice letter pursuant to California's Consumers Legal

---

1.      Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement.   References to "§ __" are to sections in the Settlement Agreement, submitted as Exhibit B to the Declaration of Jason P. Sultzer In Support of Plaintiffs' Motion For Preliminary Approval (the "Sultzer Decl.").

2.      The products at issue here include Defendants' line of personal care products, dishwashing products, laundry products, and household cleaning products (the "Products"), a list of which is attached as Exhibit E to the Settlement Agreement.

Remedies Act, CAL. CIV. CODE 1750, *et seq*., concerning Method's deceptive manufacturing, marketing, labeling and advertising by representing that certain varieties of its cleaning products and soaps are "Natural", "Naturally Derived", "hypo-allergenic,", "non-toxic,", "plant-derived," "plant-based," "mineral-based," "bio-based," and other similar statements. *See* Declaration of Joshua H. Eggnatz In Support of Plaintiffs' Motion For Preliminary Approval (the "Eggnatz Decl.") ¶ 8.  Since that time, ELP has been engaged in settlement negotiations and informal discovery with Method. *Id*.

Similarly, on May 26, 2016, the Sultzer Law Group ("Sultzer") (Sulzer and ELP collectively are referred to as "Class Counsel"), counsel for Plaintiffs Wesley Vincent and Noelle Morgante, sent a separate pre-suit notice letter to Method.  *See* Declaration of Jason P. Sultzer In Support of Plaintiffs' Motion for Preliminary Approval of Settlement, Preliminary Certification of Settlement Class, and Approval of Notice Plan ¶ 7.

Before serving the respective notice letters, the firms spoke with and interviewed purchasers of the Products about their expectations and understanding of the meaning of the Method's labeling.  Eggnatz Decl.  ¶ 10; Sultzer Decl. ¶ 5.  The firms also conducted thorough investigations of the claims, ingredients, manufacturing process, and the regulatory framework surrounding the personal care products at issue. Eggnatz Decl. ¶¶ 11-12. Specifically, the firms examined the different ingredients and chemicals in the Method's Products from publicly-available sources. Eggnatz Decl. ¶¶ 11-12; Sultzer Decl. ¶¶ 3-4.

Class Counsel also conducted a pricing survey and damages analysis, conducted an analysis to determine the price premium of the Products consisting of an evaluation of various data points, including but not limited to, the MSRP of the Products, the MSRP of comparable products, third party Nielsen data of the Products' sales throughout the class period from various retailers,

as well conducting field research of the actual retail prices of the Products and Method's competitor's comparable competing products in retail stores.  Eggnatz Decl. ¶ 13

Class Counsel also conducted laboratory tests to identify the ingredients in the Products. Tests included high performance liquid chromatography with both bioluminence detection and diode array detection.  Sultzer Decl. ¶ 6.

In addition, the firms thoroughly analyzed the legal landscape to determine if, and in what manner, to approach remedying Method's alleged misleading labeling practices, including multiple state consumer protection laws, the recent legal precedents in food and product labeling litigation and FDA regulations.  Eggnatz Decl. ¶ 11.

On March 30, 2016, ELP and Method executed a Tolling Agreement, whereby the parties agreed to continue to explore serious and informed settlement discussions, and to preserve the status quo by tolling the running of any statute of limitations, before initiating litigation. *Id*. ¶ 14.

In various letters and correspondences, beginning on April 29, 2016, Defendants' Counsel provided Class Counsel with information regarding the basis for Defendants' labeling of the products identified in the draft complaints as "natural" or "naturally derived." *Id*. ¶ 15. Defendants maintained, and continue to maintain, numerous arguments in support of Defendants' position that the allegations in the draft complaints were unsupported, and that they would fail initially as a matter of law, and ultimately as a matter of fact.  *Id*.  Throughout the following months, Defendants' Counsel also produced to Class Counsel, pursuant to a confidentiality agreement, sales and distribution information regarding the products identified in the draft complaints. Eggnatz Decl. ¶ 15; Sultzer Decl. ¶ 8.

On June 8, 2016, ELP attended an all-day mediation session in Miami, Florida with the assistance of Rodney Max, of Upchurch, Watson, White & Max.  Eggnatz Decl. ¶ 16

Although a settlement was not reached at the in-person Mediation, the parties agreed that negotiations should proceed and that the Mediation would continue telephonically. *Id*. ¶ 17.

Following the in-person Mediation, ELP continued in good-faith negotiations with Method's counsel, which lasted over three months, including multiple telephonic continued Mediation sessions with Mr. Max, hours of direct telephonic negotiations with counsel for Method, and consultations with claims administrators, and the back-and-forth exchange of multiple suggested versions of a settlement term sheet. *Id*. ¶ 18

On August 11, 2016, Sultzer, Defendants' Counsel, and Defendants' interim General Counsel held an in-person meeting at the office of Defendants' Counsel in San Francisco, where Method is headquartered.  Sultzer Decl. ¶ 9.  At that meeting, the Parties agreed upon a framework for resolution of the matter. Over the next several weeks, the Parties exchanged drafts of the term sheet and refined that framework into the basic outline of a settlement providing for both monetary and injunctive relief for Plaintiffs and the putative class, and a release for Defendants.  *Id*. ¶ 10.

Over the course of the settlement negotiations, Defendants' Counsel provided Class Counsel with certain additional sales and marketing information, which Plaintiffs required prior to agreeing in principle to enter the settlement set forth in this Class Settlement Agreement. Eggnatz Decl. ¶ 20. This information included sales data showing the number and type of products purchased nationally by consumers, average purchase price, net sales information, third-party Nielsen data, as well as marketing information regarding the reasons why consumers purchase Defendants' products.

On September 2, 2016, the Complaint in the above-titled action was filed on behalf of Plaintiff, Wesley Vincent [DE No. 1].  Also at that time, Sultzer and Counsel for Defendants' informed the Court that the framework of a settlement had been reached.  [DE No. 5]

On September 6, 2016, Method filed an Answer to the Complaint. [DE No. 7].

On September 7, 2016, ELP, on behalf of Plaintiffs, Daniel Richman and Ashley Peluchette, filed a Class Action Complaint in the Northern District of California, also based on Method's use of the terms "Natural" and/or "Naturally Derived" on the labeling and packaging of the Products.  *Richman v. Method Products, PBC and People Against Dirty, PBC*, Case No. 16-cv-5167 (N.D. Cal.). On September 12, 2016, plaintiffs Richman and Peluchette moved to intervene in the *Vincent* action. [DE No. 11]

On September 27, 2016, a First Amended Complaint was filed in the above-titled action, which added Plaintiff Noelle Morgante, and named Method Products, PBC as a co-Defendant [DE No. 17].  Also on September 27, 2016, *Vincent* opposed the intervention motion.

ELP and Sultzer, after agreeing to work together and sharing their lab results, damages analysis and views on liability and class certification, continued to negotiate the terms of the Settlement with Defendants. Eggnatz Decl. ¶ 28; Sultzer Decl. ¶ 12.

On October 7, 2016, an unrelated similar case styled *Keith Daughtery v. Method Products, PBC*, No. 1:16-cv-1226, alleging substantially the same claims as have been asserted in this action, was filed in the Northern District of New York by separate counsel.[3]  On October 13, 2016, ELP and Sultzer filed a Second Amended Complaint, consolidating Plaintiffs Daniel Richman's and Ashley Peluchette's claims with the *Vincent* action. [DE No. 28] The Second Amended Complaint asserts claims on behalf of a nationwide class of consumers, including individual subclasses of the

---

3.      On October 12, 2016, an unrelated case, *Labrado v. Method Products, PBC*, No. 3:16-cv-05905 (N.D. Cal. Oct 12, 2016), alleging substantially the same claims as have been asserted in this action on behalf of a California class was filed in San Francisco Superior Court.  And on October 27, 2016, another unrelated case, *Wilson vs. Method Products, PBC*, No. 2016-00038054 (Cal. Super. Ct. Oct. 27, 2016), alleging substantially the same claims as have been asserted in this action on behalf of a California class was filed in San Diego County.

states of California, Florida, and New York, regarding Defendants' use of the terms "Natural",

"Naturally Derived", "hypo-allergenic,", "non-toxic,", "plant-derived," "plant-based," "mineral-

based," "bio-based," and similar statements on the Products, when, in fact, those Products contain

unnatural ingredients that are artificial, synthetic, and/or highly processed. Plaintiffs asserted

various common law and statutory claims, alleging that Defendants' use of the terms "Natural",

"Naturally Derived", "hypo-allergenic,", "non-toxic,", "plant-derived," "plant-based," "mineral-

based," "bio-based," and similar statements are false, deceptive, and likely to mislead the

reasonable consumer.

On October 31, 2016, Method filed their Answer to the Second Amended Complaint [DE

No. 32].

Throughout October and November, the parties continued to negotiate a comprehensive

settlement.  These negotiations were lengthy, detailed and covered all aspects of the settlement.

Eggnatz Decl. ¶ 32; Sultzer Decl. ¶ 12.  On December 12, 2016 the parties signed the Settlement

Agreement.

Plaintiffs respectfully ask the Court to grant preliminary approval of the Settlement,

allowing the Claims Administrator to provide notice to the Settlement Class members, and to

schedule a Fairness Hearing to consider final approval of the Settlement. *See* FED. R. CIV. P. 23(e).

Plaintiffs also respectfully request to be appointed as representatives for the Settlement Class and

for their counsel to be appointed as Class Counsel.[4] *See* FED. R. CIV. P. 23(g). Plaintiffs also ask

the Court to approve the notice program to which the Parties agreed in the Settlement, because it

meets the requirements of due process and is the best notice practicable under the circumstances.

*See* FED. R. CIV. P. 23(c).

---

4.      The Settlement Agreement defines "Class Counsel" as Sulzer and ELP (§ 2.8)

### III.     THE TERMS OF THE PROPOSED SETTLEMENT

The Settlement Agreement defines the Settlement Class, describes the Parties' agreed-upon Settlement relief, and proposes a plan for disseminating notice to the Settlement Class members. Plaintiffs' objectives in filing the Actions were to remedy the allegedly deceptive representations in Defendants' marketing and labeling of the Products and to compensate Settlement Class members damaged by the alleged misrepresentations.   Through the Actions and the Settlement Agreement, Plaintiffs achieved both objectives.

#### A.     Certification of the Settlement Class

Under the Settlement Agreement, the Parties agree to seek certification of a nationwide Settlement Class defined as follows:

> All persons and entities that, during the Class Period, both resided in the United States and purchased in the United States any of the Products for use and not for resale. Excluded from the Settlement Class are: (a) Defendants' board members or executive-level officers, including its attorneys; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court's staff; and (d) any person that timely and properly excludes himself or herself from the Settlement Class in accordance with the procedures approved by the Court.

#### B.     Relief for the Members of the Settlement Class

The Settlement Agreement provides for significant injunctive and monetary relief.

With respect to monetary relief, the Settlement Agreement provides that Defendants will establish a Common Fund in the amount of $2,800,000 to pay (i) timely, valid, and approved Claims; (ii) all costs of notice and claims administration; (iii) judicially approved Service Awards; (iv) judicially approved Attorneys' Fees and Expenses; and (v) any necessary taxes and tax expenses. (§ 4.1).

Settlement Class Members with proof of purchase will be entitled to reimbursement of $1.00 cash per Product purchased during the Class Period, without limit. (§ 4.2(j)(i)).  Settlement

Class Members without proof of purchase will be entitled to reimbursement of $1.00 for up to 8 Products purchased by providing the approximate date, retailer, and location of the purchase(s), and providing additional information, such as the fragrance and satisfaction with the product. For those Class Members without proof and who only provide the approximate dates and locations of purchase may obtain reimbursement of up to $1.00 per Product, for up to 4 Products. (§ 4.2(j)(ii)-(ii)).  If there is a Residual Fund after the payment of all valid claims, then Settlement Class Members' relief will be increased on a *pro rata* basis up to a maximum of four hundred percent (400%) of the Eligible Settlement Class Member's Initial Claim Amount. (§ 4.4(a)(i)). If there are insufficient funds, then relief will be decreased on a *pro rata* basis. (§ 4.4(b)).

If there are excess funds after payment of Settlement Class Members' cash claims, any excess funds will be distributed to consumers via $1 coupons on coupon websites. (§ 4.4(a)(ii)). Funds from any uncashed checks or if the coupon component is economically infeasible, the parties will seek the Court's permission to donate remaining funds to The Sierra Club, Earth Echo International, and The Conservation Alliance. *Id.*

With respect to injunctive relief, the Settlement provides that Defendants will not use the terms "natural" or "naturally-derived" on the labels of Defendants' METHOD and ECOVER branded Products, unless Defendants:

a) list the ingredients on the Product labels in accordance with generally accepted industry standards, including INCI, IL and other applicable legislation and regulations;

b) provide ingredient information including (1) origin (plant-derived or synthetic) and (2) function on Method's Website or, at Method's option, on the Product label;

c) restrict the use of the term "natural" to refer to fragrance ingredients that meet the ISO 9235 standard, as it may be amended from time to time. In such event, the label shall clearly disclose that the term "natural" only refers to the qualifying fragrance, such as "natural rosemary fragrance";

d)  use the term "naturally derived" to refer to an 'ingredient' or 'formula/product' as follows:

a.  An ingredient that is made from (1) renewable plant-based materials, (2) abundant minerals, and/or (3) water, and that may be modified to provide functionality.  The modification may involve synthesizing with sources other than plant and/or mineral sources.

b.  A formula or product whose functional ingredients, *e.g.*, those that provide the cleaning action, are natural or naturally derived as set forth above in this Agreement.

e)  state the definitions of "natural" and "naturally derived" prominently on Method's Website, *e.g.*, through a link and/or a hover-over effect where the terms are used; and

f)  To the extent that Defendants continue to use ingredients that are alleged to be skin irritants (including but not limited to Mehtylisothiasolinone ("MIT") and Benzisothiazolinone ("BIT")), Method shall include a disclosure on Method's Website that the terms "hypoallergenic," "non-toxic" or similar statements on the packaging or advertising do not mean that a product or ingredient will not cause any allergic reaction or irritation in any person, and that a small percentage of individuals may have some form of allergic reaction or irritation to certain ingredients or products; (§ 4.5).

## C.  Service Awards and Attorneys' Fees and Expenses

Defendants have agreed not to oppose an application for payment of Service Awards of up to $2,500 to each of the named Plaintiffs to compensate them for the actions they took in their capacities as class representatives. (§ 8.6.) Defendants have also agreed not to oppose an application for payment of attorneys' fees and litigation expense award to Class Counsel in an amount of up to 33% of the Settlement Fund, for Class Counsel's work on the Actions. (§ 8.1.)

## D.  Settlement Notice

The Settlement Agreement proposes that the Court appoint The Angeion Group ("Angeion") to administer the notice process and outlines the forms and methods by which notice of the Settlement Agreement will be given to the Settlement Class members, including notice of

the deadlines to opt out of, or object to, the Settlement. (§ 5.1.)  Before selecting Angeion, the

Parties requested and considered proposals and bids from three claims administrators.  The Parties

ultimately selected the Angeion Group, based on their excellent work and breadth of experience

administering other similar consumer class actions, including the settlement of *Tsan v. Seventh

Generation*, No. 7:14-cv-09087-KMK (S.D.N.Y.), which also involved mislabeled "natural"

personal care products and household cleaners.  In that case, Angeion's notice program was

approved by The Honorable Kenneth M. Karas on October 11, 2016, which was designed to reach

the same demographic as in this case.

The Claims Administrator will use a Long-Form Notice and a Summary Notice to

disseminate notice of the Settlement Agreement to the Settlement Class members. (§ 5.1(a);

Settlement Agreement, Exs. B and D.) The Long-Form Notice is designed to provide notice of the

full terms of the Settlement Agreement.  It includes:

1.   A description of the claims in the litigation and the products at issue;

2.   How to tell if a consumer is a member of the proposed class;

3.   A description of the proposed settlement and the relief offered;

4.   A list of the options presented to the members of the proposed class, i.e.
     applying for settlement benefits, objecting to the settlement, opting out of
     the settlement or doing nothing;

5.   A description of the release of claims being sought by defendants as part of
     the settlement; and

6.   The time and date of the final approval hearing.

The Parties developed a robust notice program[5] with the assistance of Angeion that

---

5.   The details of the notice program are set forth in the Declaration of Steven Weisbrot,

includes: (1) comprehensive web-based notice using paid banner ads on targeted websites; (2) additional web-based notice using "keyword" searches displaying banner ads; (3) national media through publication of a 1/2 page ad in *People* magazine; (4) a dedicated Settlement Website through which Settlement Class members can obtain more detailed information about the Settlement and access case documents; and (5) a toll-free telephone helpline through which Settlement Class members can obtain additional information about the Settlement and request the class notice and/or a Claim Form.

Angeion estimates that the notice program will reach at least 70% of the proposed class with an average frequency of three times each.  Weisbrot Decl. ¶ 8.  Angeion developed the program by targeting the demographic profile of Method purchasers using multimedia audience research.  Weisbrot Decl. ¶¶ 10-11.  The demographic profile, predominantly female, married, and employed, spends an above average amount of time on the internet and an average amount of time reading print magazines compared to the general population.  Weisbrot Decl. ¶ 12.

The internet notice part of the notice campaign will place banner ads for four weeks on both desktop and mobile devices.  Search terms, both specific to Method products and those most likely to reach the target demographic will be used.  Weisbrot Decl. at ¶ 15.  The banner notice is intended to serve nearly 18 million impressions.  Weisbrot Decl. at ¶ 16.  The print portion will publish a half page ad in *People* magazine.

Once directed to the Settlement Website, the consumer will be able to submit their claim online.  This will make claim submission as easy as possible.

The Settlement Website will also post Settlement-related and case-related documents such

---

Executive Vice President of Notice & Strategy at the Angeion Group, attached as Exhibit C to the Sultzer Declaration.

as the Settlement Agreement, the Summary Notice, the Long-Form Notice, the Preliminary Approval Order, and easy to understand "FAQ's" about the settlement.  The Settlement Website will also include procedural information regarding the status of the Court approval process and important deadlines, such as announcements of the Fairness Hearing date, when the Final Order and Judgment has been entered, and when the Final Settlement Date has been reached.

## IV.   ARGUMENT

### A.    The Court Should Preliminarily Approve the Settlement Agreement

Class Counsel have worked steadfastly to reach a fair, reasonable, and adequate settlement. Plaintiffs and their counsel believe their claims are strong and are optimistic about obtaining class certification and succeeding on the merits.  However, significant expense and risk attend the continued prosecution of the claims through trial and any appeals. In negotiating and evaluating the settlement, Plaintiffs and Class Counsel have taken these costs and uncertainties into account, as well as the risks and delays inherent in complex class action litigation.  Additionally, in the process of investigating and litigating the Actions, Class Counsel conducted significant research on the consumer protection statutes at issue, as well as the overall legal landscape, to determine the likelihood of success and reasonable parameters under which courts have approved settlements in comparable cases. In light of the foregoing, Class Counsel believe the present settlement provides significant relief to the Settlement Class members and is fair, reasonable, adequate, and in the best interests of the Settlement Class.

### B.    Legal Standard

Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, a court may approve a class action settlement "only . . . on finding that [the settlement agreement] is fair, reasonable, and adequate." FED. R. CIV. P. 23(E)(2). The "fair, reasonable, and adequate" standard effectively

requires parties to show that a settlement agreement is both procedurally and substantively fair. *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013); *accord McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009).

The Second Circuit Court of Appeals has recognized a "strong judicial policy in favor of settlements, particularly in the class action context." *McReynolds*, 588 F.3d at 803 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*")). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Visa* at 117 (citation omitted); *see also Hadel v. Gaucho*, LLC, No. 15 Civ. 3706, 2016 U.S. Dist. LEXIS 33085 at *4 (S.D.N.Y. Mar. 14, 2016) ("Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Visa* at 116 (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995)).

"Preliminary approval is the first step in the settlement of a class action whereby the court 'must preliminarily determine whether notice of the proposed settlement . . . should be given to class members in such a manner as the court directs, and an evidentiary hearing scheduled to determine the fairness and adequacy of settlement.'" *Manley v. Midan Rest. Inc.*, 14 Civ. 1693, 2016 U.S. Dist. LEXIS 43571 at *21 (S.D.N.Y. Mar. 30, 2016) (citations omitted). "To grant preliminary approval, the court need only find that there is 'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *Id.* (citations and internal quotation marks omitted); *accord Tart v. Lions Gate Entm't Corp.*, No. 14-CV-8004, 2015 U.S. Dist. LEXIS 139266, (S.D.N.Y. Oct. 13, 2015). "If the proposed settlement appears to fall

within the range of possible approval, the court should order that the class members receive notice of the settlement." *Manley*, 14 Civ. 1693, 2016 U.S. Dist. LEXIS 43571 at *8 (citation omitted); *accord Hadel*, No. 15 Civ. 3706, 2016 U.S. Dist. LEXIS 33085 at *2; *Tart*, 14-CV-8004, 2015 U.S. Dist. LEXIS 139266 at *5.

Here, the Settlement Agreement is both procedurally and substantively fair and falls well within the range of possible approval.

### C.    The Settlement Is Procedurally Fair

To demonstrate a settlement's procedural fairness, a party must show "that the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted); *accord McReynolds*, 588 F.3d at 804; *see also Hall v. Prosource Techs., LLC*, No. 14-CV-2502, 2016 U.S. Dist. LEXIS 53791 at *18 (E.D.N.Y. Apr. 11, 2016) (concluding settlement procedurally fair in light of mediation and ample discovery).

First, the negotiations were conducted at arms' length, and indeed, were characterized by false starts, terminations of discussions, and the involvement of multiple parties with, at times, competing agendas.  *See* Sultzer Decl. ¶¶ 8-13 and Eggnatz Decl. ¶¶ 8-32.  Settlement discussions took place in person, in a mediation, by email and telephonically over eight months, both with and without the assistance with the highly-respected mediator Rodney Max, of Upchurch, Watson, White & Max. Eggnatz Decl. ¶ 16.

Second, the discussions were undertaken by counsel who are well versed in complex litigation and, more specifically, in cases involving misrepresentations concerning the term "natural" as applied to consumer products.  *See* Eggnatz Decl. ¶¶ 5, 47; Sultzer Decl. ¶ 18.

14

Third, Plaintiffs and their counsel conducted a thorough investigation and evaluation of the claims and defenses prior to filing the Actions and continued to analyze the claims throughout the pendency of the cases. (*See, e.g.*, Eggnatz Decl. ¶¶ 11-13.)  Class Counsel conducted significant informal discovery, including obtaining sales data showing the number and type of products purchased nationally by consumers, average purchase price, net sales information, third-party Nielsen data, as well as marketing information regarding the reasons why consumers purchase Defendants' products.  Eggnatz Decl. ¶¶ 11-13; Sultzer Decl. ¶ 8.  Counsel also performed lab tests to determine the real ingredients in the Products.   Sultzer Decl. ¶ 6.   Through this investigation, discovery, and ongoing analysis, and through litigation of Plaintiffs' claims before this Court and in the Northern District of California, Class Counsel obtained an understanding of the strengths and weaknesses of the Actions.

For the foregoing reasons, the Settlement Agreement is procedurally fair.

### D.    The Settlement Is Substantively Fair

To demonstrate the substantive fairness of a settlement agreement, a party must show that the factors the Second Circuit set forth in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"), weigh in favor of approving the agreement. Charron, 731 F.3d at 247. The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*McReynolds*, 588 F.3d at 804 (quoting *Grinnell*, 495 F.2d at 463).  The *Grinnell* factors are used to evaluate settlements at the final approval stage, but can be looked to for guidance at the

preliminary approval stage, at which Plaintiffs have a lower burden.  Here, the *Grinnell* factors

overwhelmingly favor preliminary approval of the Settlement Agreement.

> **i.     The complexity, expense, and likely duration of litigation**

"The greater the 'complexity, expense and likely duration of the litigation,' the stronger

the basis for approving a settlement." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663

(S.D.N.Y. 2015) (citations omitted). Consumer class action lawsuits by their very nature are

complex, expensive, and lengthy. *See, e.g., Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d

231, 239 (E.D.N.Y. 2010); *see also Manley*, 2016 U.S. Dist. LEXIS 43571, at *9 ("Most class

actions are inherently complex [.]").  Should the Court decline to approve the proposed settlement

and litigation were to resume, it would be costly, complex, and time-consuming.

First, contested class certification (and possibly subsequent decertification) motions would

include battles over which law or laws should be applied to the claims of class members; the

mechanism by which damages stemming from an unwarranted price premium could be calculated

on a class wide basis; and whether individual purchasing decisions were relevant and/or would

predominate over class wide issues.  Class issues involving damages would likely generate expert

discovery and *Daubert* motions as well.  Although plaintiffs are confident in their ultimate success

in certifying a class based on this case's similarities to another matter before this Court,

*Goldemberg v. Johnson & Johnson Consumer Cos.*, No. 13 Civ. 3073, 2016 U.S. Dist. LEXIS

137780 (S.D.N.Y. Oct. 4, 2016) (certifying class of consumers who purchased products labeled

"Active Naturals"), a positive ruling would no doubt be challenged by a decertification motion or

on appeal. Defendants would also will contest the ascertainability of the Class.

Third, in addition to the expected discovery concerning the manufacturing of the products

and the sources and formulation of the ingredients, there would likely be lengthy and expensive

expert discovery and testimony about the meaning of the terms "natural", "naturally-derived",
"hypo-allergenic,", "non-toxic,", "plant-derived," "plant-based," "mineral-based," "bio-based,"
and similar statements to a reasonable consumer.  These issues would generate *Daubert* motion
practice as well.  Each step towards trial would be subject to Defendants' vigorous opposition and
possible interlocutory appeal.  Even if the case were to proceed to judgment on the merits, any
final judgment would likely be appealed, which would take significant time and resources. These
litigation efforts would be costly to all Parties and would require significant judicial oversight.

Although Plaintiffs believe they would ultimately prevail, "litigation of this matter . . .
through trial would be complex, costly and long." *Manley*, 2016 U.S. Dist. LEXIS 43571 at *9
(citation omitted). "The settlement eliminates [the] costs and risks" associated with further
litigation. *Meredith Corp.*, 87 F. Supp. 3d at 663. "It also obtains for the class prompt []
compensation for prior [] injuries." *Id.*

For all of these reasons, this factor weighs strongly in favor of preliminary approval.

### ii.        The reaction of the class to the settlement

It is premature to address the reaction of the Settlement Class to the Settlement.

### iii.       The stage of the proceedings and the amount of discovery completed

The third *Grinnell* factor—the stage of the proceedings and the amount of discovery
completed—considers "whether Class Plaintiffs had sufficient information on the merits of the
case to enter into a settlement agreement . . . and whether the Court has sufficient information to
evaluate such a settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013) (citations omitted).

Here, "discovery has advanced sufficiently to allow the parties to resolve the case
responsibly." *Manley*, 2016 U.S. Dist. LEXIS 43571 at *9. Class Counsel have conducted

significant informal discovery related to Plaintiffs' claims, including laboratory testing, review of sales and marketing data, and pricing analysis. *See* Eggnatz Decl. ¶¶ 8-22; Sultzer Decl. ¶¶ 3-6; 8. Consequently, Plaintiffs had sufficient information to evaluate the claims of the class. *See D.S. v. New York City Dep't of Educ.*, 255 F.R.D. 59, 77 (E.D.N.Y. 2008) ("The amount of discovery undertaken has provided plaintiffs' counsel 'sufficient information to act intelligently on behalf of the class' in reaching a settlement.").

### iv.       The risks of establishing liability and damages

"Litigation inherently involves risks." *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102 at *11 (E.D.N.Y. Feb. 18, 2011) (citation omitted). "[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Banyai v. Mazur*, No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 22342 at *30 (S.D.N.Y. Mar. 27, 2007) (citation omitted); *accord Zeltser v. Merrill Lynch & Co.,* No. 13 Civ. 1531, 2014 U.S. Dist. LEXIS 135635 at * 14 (S.D.N.Y. Sep. 23, 2014).

Plaintiffs recognize that, as with any litigation, uncertainties exist. Defendants continue to deny Plaintiffs' allegations, and should this matter proceed, they will vigorously defend themselves on the merits.

Most fundamentally, while Plaintiffs believe a reasonable consumer would be misled by the "natural", "naturally-derived", "hypo-allergenic,", "non-toxic,", "plant-derived," "plant-based," "mineral-based," "bio-based," and similar statements labeling on the products, a jury might not agree.

In addition, with respect to the calculations of damages, attributing a given price premium to a single component of the label is a complicated process. In this Court's opinion in *Goldemberg* the Court denied the defendants' *Daubert* motion and held that the plaintiffs' methodology for

their price premium calculation was capable of matching the plaintiffs' liability case to their damages case for class certification purposes. *Id*. at *40-41. Plaintiffs are confident that they could make a similar showing here. However, whether the methodology would survive further challenge on the merits is an open question, especially given the fluctuating retail prices throughout the Class Period.

For these reasons, although Plaintiffs are confident in the merits of their case, the risks of establishing liability and damages strongly support preliminary approval.

>    **v.    The risk of maintaining class action status through trial**

The Actions settled before rulings on class certification, and the current certification is for settlement purposes only. (§ 3.1). As discussed above, in addition to the challenges inherent in certifying a potential national class, Plaintiffs may be required to proffer a suitable mechanism for calculating damages in the form a classwide price premium. While Plaintiffs believe they could establish the existence of such a premium to the Court's satisfaction, this proposed settlement eliminates that risk.

Furthermore, even if the Court were to certify a litigation class, the certification would not be set in stone. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); *see also Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831, 2014 U.S. Dist. LEXIS 157578 (N.D. Cal. Nov. 6, 2014) (decertifying Rule 23(b)(3) class in consumer fraud case). Given the risks, this factor weighs in favor of final approval. *See, e.g., Mills v. Capital One, N.A.*, No. 14 Civ 1937, 2015 U.S. Dist. LEXIS 133530 at *10-11 (S.D.N.Y. Sept. 30, 2015) (granting final certification in absence of facts contrary to preliminary certification decision).

### vi.      The ability of Defendant to withstand a greater judgment

"Courts have recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement." *In re Sinus Buster Prods. Consumer Litig.*, No. 12 -CV-2429, 2014 U.S. Dist. LEXIS 158415 *25 (E.D.N.Y. Nov. 10, 2014) (citations omitted). A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Viafara v. MCIZ Corp.*, No. 12 Civ 7452, 2014 U.S. Dist. LEXIS 60695 *21 (S.D.N.Y. Apr. 30, 2014) (citation omitted). Although Defendants may be able to withstand a greater judgment, the agreed to settlement fund is fair and adequate when weighing the likelihood of success and overall value of Settlement Class Member's individual damages should this Action proceed to trial. For these reasons, this factor is neutral.

### vii.     The range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation

"There is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion [.]" *Visa*, 396 F.3d at 119 (citation omitted). "In other words, the question for the Court is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces[.]" *Bodon v. Domino's Pizza, LLC*, No. 09-CV-2941, 2015 U.S. Dist. LEXIS 17358 *18 (E.D.N.Y. Jan. 16, 2015) (citation omitted).

Here, the relief for which the Settlement Agreement provides is within the range of reasonableness, especially in light of the best possible recovery and in light of all the attendant risks of litigation. The gravamen of the Actions is that Defendants are deceiving consumers by labeling the METHOD and ECOVER Products as "natural", "naturally derived", "hypo-

allergenic,", "non-toxic,", "plant-derived," "plant-based," "mineral-based," "bio-based," and similar statements when, in fact, they are not. The injunctive relief for which the Settlement provides—*i.e.*, use of "natural" and "naturally derived" with certain restrictions—is an excellent outcome both for the Settlement Class members and for future consumers. Furthermore, the cash compensation to which eligible Settlement Class members will be entitled in the event the Court approves the Settlement goes a significant way toward compensating Settlement Class members for the damages they incurred on account of Defendants' allegedly deceptive "natural," "naturally derived", "hypo-allergenic,", "non-toxic,", "plant-derived," "plant-based," "mineral-based," "bio-based," and similar representations.

As discussed above, while Plaintiffs believe their claims are strong, continuation of this litigation poses significant risks. Not only might ongoing litigation not result in an increased benefit to the Settlement Class, it would lead to substantial expenditure by both Parties and Court resources. Taking into account the risks and benefits Plaintiffs have outlined above, the Settlement falls within the "range of reasonableness." Class Counsel have achieved an excellent recovery considering the merits of the Settlement weighed against the cost and risks of further litigation.

There is also the risk associated with the calculation of the price premium. Once Plaintiffs established a suitable means to calculate the price premium on a class wide basis, there remains the calculation of the actual premium itself. A trier of fact may find a lower premium or, although Plaintiffs believe this outcome unlikely, none at all.

Thus, collectively and independently, the *Grinnell* factors warrant the conclusion that the Settlement Agreement is fair, adequate, and reasonable. As such, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement.

### E.     The Court Should Preliminarily Certify the Settlement Class

A court may certify a settlement class upon finding that the action underlying the settlement satisfies all Rule 23(a) prerequisites and at least one prong of Rule 23(b).  As Plaintiffs set forth below, the proposed Settlement Class satisfies all of the requirements of Rule 23(a) and Rule 23(b)(3), and, consequently, Plaintiffs respectfully ask the Court to certify the Settlement Class preliminarily for settlement purposes.

### i.     The Settlement Class Meets All Prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure

Rule 23(a) has four prerequisites for certification of a class: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequate representation. FED. R. CIV. P. 23(a). The Settlement Class meets each prerequisite and, as a result, satisfies Rule 23(a).

#### a.     Numerosity

Under Rule 23(a)(1), plaintiffs must show that the proposed class is "so numerous that joinder of all [its] members is impracticable." FED. R. CIV. P. 23(a)(1). The Second Circuit has found numerosity met where a proposed class is "obviously numerous." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Here, there is no dispute that at least hundreds of thousands of people nationwide purchased the Defendants' Products during the proposed class period.  Numerosity is easily satisfied. *Id.*

#### b.     Commonality

Under Rule 23(a)(2), plaintiffs must show that "questions of law or fact common to the [proposed] class" exist. FED. R. CIV. P. 23(a)(2). Commonality requires that the proposed class members' claims all centrally "depend upon a common contention," which "must be of such a nature that it is capable of class wide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-*

*Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do[.]" *Id.* at 359 (citation, quotation marks, and brackets omitted). The Second Circuit has construed this instruction liberally, holding that plaintiffs need only show that their injuries stemmed from defendants' "unitary course of conduct." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 85 (2d Cir. 2015).

Here, there are common questions of law and fact that will generate common answers apt to drive the resolution of the litigation, including but not limited to, whether Defendants' representations were likely to deceive reasonable consumers. Resolution of this common question would require evaluation of the question's merits under a single objective standard, *i.e.*, the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. Cal. 2008); *Ackerman v. Coca-Cola Co.*, 2010 U.S. Dist. LEXIS 73156 *56 (E.D.N.Y. July 21, 2010). Thus, commonality is satisfied.

### c.   *Typicality*

Under Rule 23(a)(3), plaintiffs must show that the proposed class representatives' claims "are typical of the [class'] claims." Fed. R. Civ. P. 23(a)(3). Plaintiffs must show that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) (citations omitted). "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." *In re Nissan Radiator*, No. 10 CV 7493, 2013 U.S. Dist. LEXIS 116720 *53 (S.D.N.Y. May 30, 2013); *Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) ("The typicality requirement is not demanding.") (citation omitted).

Here, typicality is met because the same unlawful conduct by Defendants—*i.e.*, their allegedly misleading marketing of the Products—was directed at, or affected, Plaintiffs and the

members of the proposed Settlement Class. *Robidoux*, 987 F.2d at 936–37.

### d.      Adequacy of representation

Under Rule 23(a)(4), Plaintiffs must show that the proposed class representatives will "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Plaintiffs must demonstrate that: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A.*, 126 F.3d at 378.

To satisfy the first requirement, Plaintiffs must show that "the members of the class possess the same interests" and that "no fundamental conflicts exist" between a class' representative(s) and its members. *Charron*, 731 F.3d at 249. Here, Plaintiffs possess the same interests as the proposed Settlement Class members because Plaintiffs and the Settlement Class members were all allegedly injured in the same manner based on the same allegedly misleading marketing concerning the Products.

With respect to the second requirement, Class Counsel are qualified, experienced, and generally able to conduct the litigation. Class Counsel have invested considerable time and resources into the prosecution of the Actions. *See* Eggnatz Decl. ¶¶ 44-48; Sultzer Decl. ¶¶ 15-18. They have qualified as lead counsel in other class actions and have a proven track record of successful prosecution of significant class actions. (*Id*.).

For the foregoing reasons, Plaintiffs have satisfied the adequacy requirement.

### ii.      The Settlement Class Meets The Requirements of Rule 23(b)(3)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3).""). *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997).  Plaintiffs seek certification under Rule 23(b)(3). Under that rule, the

court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

### a.    Common legal and factual questions predominate in this action

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623 (citation omitted). The Second Circuit has held that "to meet the predominance requirement . . . a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*, 461 F.3d 219, 227-28 (2d Cir. N.Y. 2006) (citations omitted). In the context of a request for settlement-only class certification, concerns about whether individual issues "would present intractable management problems" at trial drop out because "the proposal is that there be no trial." *Id.* at 620 (citation omitted). As a result, "the predominance inquiry will sometimes be easier to satisfy in the settlement context." *Tart*, 2015 U.S. Dist. LEXIS 139266 at *4 (citation omitted). Furthermore, consumer fraud cases readily satisfy the predominance inquiry. *Amchem Prods., Inc.*, 521 U.S. at 625.

Here, for settlement purposes, the central common questions predominate over any questions that may affect individual Settlement Class members. The central common questions include whether Defendants' marketing of the Products as "natural," "naturally derived" "non-toxic," "hypoallergenic", "plant-derived," "plant-based," "mineral-based," "bio-based," and similar statements was likely to deceive reasonable consumers and whether the representations were material. These issues are subject to "generalized proof" and "outweigh those issues that are

subject to individualized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d at 227–28 (citation

omitted). The Settlement Class meets the predominance requirement for settlement purposes.

> **b.    *A class action is the superior means to adjudicate Plaintiffs'
> claims***

Rule 23(b)(3) also requires that "a class action is superior to other available methods for

fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Here, the class action

mechanism is superior to individual actions for numerous reasons. First, "[t]he potential class

members are both significant in number and geographically dispersed" and "[t]he interest of the

class as a whole in litigating the many common questions substantially outweighs any interest by

individual members in bringing and prosecuting separate actions." *Meredith Corp.*, 87 F. Supp. 3d

at 661 (citation omitted).

Additionally, a class action is superior here because "it will conserve judicial resources"

and "is more efficient for Class Members, particularly those who lack the resources to bring their

claims individually." *Zeltser,* No. 13 Civ. 1531, 2014 U.S. Dist. LEXIS 135635 at *8 (citation

omitted). The cost to purchase any of the Products is less than $15—thus, the potential recovery

for any individual Settlement Class member is relatively small. As a result, the expense and burden

of litigation make it virtually impossible for the Settlement Class members to seek redress on an

individual basis. By contrast, in a class action, the cost of litigation is spread across the entire class,

thereby making litigation viable. *See, e.g., Tart*, 2015 U.S. Dist. LEXIS 139266, at *5. "Employing

the class device here will not only achieve economies of scale for Class Members, but will also

conserve judicial resources and preserve public confidence in the integrity of the system by

avoiding the waste and delay repetitive proceedings and preventing inconsistent adjudications."

*Zeltser* at *8-9 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998); other

citations omitted). For all of the foregoing reasons, a class action is superior to individual suits.

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, the Court should preliminarily certify the Settlement Class.

### F.     The Court Should Approve the Proposed Notice Plan

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312 (2004). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Visa*, 396 F.3d at 113 (citations omitted).

The Court is given broad power over which procedures to use for providing notice so long as the procedures are consistent with the standards of reasonableness that the due process clauses in the U.S. Constitution impose. *Handschu v. Special Services Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("[T]he district court has virtually complete discretion as to the manner of giving notice to class members.").

"When a class settlement is proposed, the court 'must direct to class members the best notice that is practicable under the circumstances.'" *Vargas v. Capital One Fin. Advisors*, 2014 U.S. App. LEXIS 4689 at *26 (2d Cir. 2014) (summary order) (citing FED. R. CIV. P. 23(c)(2)(B), (e)(1)). The notice must include: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who request exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." FED. R. CIV. P. 23(C)(2)(B). "There are no rigid rules to determine whether a settlement notice to the class satisfies

constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Visa*, 396 F.3d at 114.

Here, the robust proposed notice program meets the requirements of due process and the Federal Rules of Civil Procedure. The proposed methods Plaintiffs identified above for providing notice to the Settlement Class members are reasonable. (*See* Weisbrot Decl. ¶ 14-17.)  Indeed, in a class case where records of purchasers are not available Plaintiffs' proposed notice program may be the only type of notice practicable.

Notice to the Settlement Class will be undertaken by internet and print publication shortly after entry of the Preliminary Approval Order.  The proposed notice program also provides sufficiently detailed notice. The notice defines the Settlement Class; explains all Settlement Class members' rights, the Parties' releases, and the applicable deadlines; and describes in detail the injunctive and monetary terms of the Settlement, including the procedures for allocating and distributing Settlement funds among the Settlement Class members. It will plainly indicate the time and place of the Fairness Hearing, and it plainly explains the methods for objecting to, or opting out of, the Settlement.  It details the provisions for payment of Attorneys' Fees and Expenses and class representative Service Awards, and it provides contact information for Class Counsel.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court: (1) certify the Settlement Class and appoint Plaintiffs as the class representatives and their counsel a Class Counsel; (2) preliminarily approve the Settlement Agreement; (3) approve the form and manner of the class action settlement notice; and (4) set a date and time for the Fairness Hearing.

Dated:  December 21, 2016

**THE SULTZER LAW GROUP P.C.**

Jason P. Sultzer /s/

By: _____

Jason P. Sultzer, Esq.
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

Benjamin M. Lopatin, Esq. (SBN 281730)
*Pro Hac Vice*
**EGGNATZ, LOPATIN & PASCUCCI,
LLP**
2201 Market Street, Suite H
San Francisco, California 94114
Telephone: (415) 324-8620
Facsimile: (415) 520-2262
Email: *BLopatin@ELPLawyers.com*

Joshua H. Eggnatz, Esq.
(Fla. Bar No.: 0067926)
*Pro Hac Vice*
**EGGNATZ, LOPATIN & PASCUCCI,
LLP**
5400 S. University Drive
Ste. 417
Davie, Florida 33328
Tel: (954) 889-3359
Fax: (954) 889-5913
Email: *jeggnatz@elplawyers.com*

*Counsel for Plaintiffs and the Class*

29