**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| WESLEY VINCENT, NOELLE MORGANTE, DANIEL RICHMAN, AND ASHLEY PELUCHETTE individually on behalf of himself and on behalf of all others similarly situated and John Does (1-100) on behalf of themselves and all others similarly situated, | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

Case No.: 7:16-cv-06936-NSR

             *Plaintiffs,*

*vs.*

PEOPLE AGAINST DIRTY, PBC. and
METHOD PRODUCTS, PBC.

             *Defendants.*

_____

## DECLARATION OF JASON P. SULTZER IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF NOTICE PLAN

Pursuant to 28 U.S.C. § 1746, I, Jason P. Sultzer, declare as follows:

        1.     I am a founding partner at The Sultzer Law Group, which, along with Eggnatz, Lopatin and Pascucci, LLP ("ELP") (together, "Class Counsel"), are counsel for Plaintiffs Wesley Vincent, Noelle Morgante, Daniel Richman, and Ashley Peluchette in the above-captioned action. I am a member in good standing of the state bar of New York, as well as the federal bars of the United States Supreme Court, United States District Court for the Southern, Eastern, and Northern Districts and the United States Court of Appeals for the Second Circuit.

        2.     I respectfully submit this declaration in support of Plaintiffs' Motion For Preliminary Approval Of Settlement, Preliminary Certification Of Settlement Class, And Approval

Of Notice Plan. Except as otherwise noted, the facts set forth in this declaration are based in part upon my personal knowledge, and I would competently testify to them if called upon to do so.

3.      My firm conducted a thorough investigation of the labeling and ingredients of Method products.

4.      My firm researched the ingredients contained in the Products and drew on our knowledge of the industry and the law to determine that Method's representations were misleading.

5.      My firm spoke with purchasers of Method Products to ascertain the meaning of the "natural" and "naturally derived" statements to consumers.

6.      This investigation included laboratory testing.  Class Counsel performed tests to identify the ingredients in the Products.  Tests included high performance liquid chromatography with both bioluminence detection and diode array detection.  The results were provided to Method.

7.      On May 26, 2016, my firm sent a demand and notice letter to Method.

8.      Throughout the Summer of 2016, we received informal discovery from Method, including sales figures, product lines, Nielsen data, and the basis for Method's representations concerning the terms "natural" and "naturally-derived."

9.      On August 11, 2016, my firm held an in-person meeting with Method's general counsel and outside counsel at Method's headquarters in San Francisco.  Significant progress was made at that meeting but no agreement was reached that day.

10.     In the following weeks, we reached an agreement on the framework of a settlement.

11.     After agreeing on the framework for the settlement, Method disclosed the existence of the *Richman* action.  The *Richman* action had not yet been filed and Method's settlement

negotiations with *Richman's* Counsel were confidential. My firm was also unaware of the *Grenwood* action pending in Saint Clair County in the State of Illinois until Method disclosed it.

12.     Following this disclosure, my firm and ELP agreed to work together and negotiated a formal settlement agreement with Method.  These negotiations were extensive and protracted.

13.     All Parties executed the Settlement Agreement on December 12, 2016.

14.     Class Counsel has reviewed the proposed notice plan and are satisfied that it is the best notice practicable under the circumstances given that the Products are sold over-the-counter in retail stores and no personally identifiable contact information for Class Members exist.

15.     Class Counsel have been responsible for prosecution of the Action and for the negotiation of the Settlement Agreement. We have vigorously represented the interests of the Settlement Class Members throughout the course of the litigation and settlement negotiations.

16.     Throughout the course of investigation, pleadings, motion practice, discovery, mediation, and filing of the Settlement Agreement with the Court, Class Counsel have devoted significant time and resources to the investigation, development, and resolution of the Action.

17.     Class Counsel are not representing clients with interests at odds with the interests of the Settlement Class Members.

18.     The Sultzer Law Group has substantial experience with consumer class actions in general, and with consumer fraud and false advertising, specifically. I have been involved in the prosecution of consumer class action matters including, but not limited to:

   a.  *Assis, David et al. v. Ernest Supplies LLC   (Kings County Supreme Court 505605/2016)*

   b.  *Campbell, Kathleen et al. v. McBride Research Laboratories, Inc., et al. (New York, Bronx County Supreme Court 26761/2016E)*
   c.  *Ciancio, Silvio et al. v. Beaumont Products Incorporated, et al. (SDNY 16-cv-08124)*
   d.  *Cordoba, Kelly et al. v. Virgin Scent, Inc., et al. (New York, Westchester County Supreme Court 56355/2016)*

e.  *Dayan, Eli et al. v. Swiss-American Products, Inc. (EDNY 15-cv-06895)*

f.  *Douek, Vivian et al. v. McNabb LLC (EDNY 16-cv-01763)*

g.  *Guerra, Ruth et al. v. Hero Nutritionals, Inc. (EDNY 16-cv-04563)*

h.  *Gurkov, Levi et al. v. Frederick Hart Company Inc. et al. (Nassau County Supreme Court 601706/2016)*

i.  *Haack, Jeffrey et al. v. Drew's LLC (SDNY 16-cv-06022)*

j.  *Harabedian, Paul et al. v. Hammer Nutrition, LTD (EDNY 14-cv-0459)*

k.  *Hecht, Shea, et al. v. Wells Fargo Bank, N.A., et al. (EDNY 15-cv-02338)*

l.  *Huzarsky, Jonathan et al. v. Little Kids, Inc. (U.S. District Court District of Massachusetts 15-cv-13613)*

m.  *Jacobs, Marcella et al. v. Camille Rose L.L.C. (SDNY 16-cv-08937)*

n.  *Jones, Maureen et al. v. John WM Macy Cheesesticks, Inc. (Kings County Supreme Court 509337/2015)*

o.  *Kaatz, Marie and Gagliardi, Abigail, et al. v. Hyalnd's Inc., et al. (SDNY 16-cv-00237)*

p.  *Maor, Marshall et al v. Paramount Country Club, LLC, et al. (Rockland County Supreme Court 032284/2016)*

q.  *Marasco, Richard et al. v. American Expediting Company, Inc., et al. (EDNY 16-cv-00232)*

r.  *Markos, Jaish et al. v. Russell Brands, LLC (SDNY 16-cv-4362)*

s.  *Moschetta, Marc et al. v. Wal-Mart Stores, Inc. d/b/a Great Value (SDNY 16-cv-01377)/ MDL:2705 & 2708*

t.  *Nicotra, Jennifer et al. v. Babo Botanicals, LLC (EDNY 16-cv-00296)*

u.  *Principe, Mark et al. v. Edison Nation, LLC et al. (EDNY 15-cv-05453)*

v.  *Rosner, Ari v. CleanWell LLC (EDNY 16-cv-01780)*

w.  *Rosner, Yisroel et al. v. Spectrum Brands, Inc. (EDNY 16-cv-01693)*

x.  *Silva, Christopher et al. v. Smucker Natural Foods, Inc. and J.M. Smucker Co. (EDNY 14-cv-6154)*

y.  *Sitt v. Nature's Bounty, Inc. et al.* (SDNY 15-cv-04199)

z.  *Sullivan, Noelky et al. v. Church & Dwight Inc. (EDNY 15-cv-04737)*

> *aa. Thomas, Jenny v. YCC et al. (Dutchess County Supreme Court 5456/2014)*
>
> *bb. Weisberg, Cynthia et al. v. Aladdin Bakers, Inc. (Kings County Supreme Court 503704/2015)*

19.    Attached hereto as Exhibit A is The Sultzer Law Group's firm résumé.

20.    Attached hereto as Exhibit B is the Settlement Agreement with exhibits in this action.

21.    Attached hereto as Exhibit C is the Declaration of Steven Weisbrot, Executive Vice President of Notice & Strategy at the Angeion Group.


I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated:  December 21, 2016

                                   **THE SULTZER LAW GROUP P.C.**


                                   Jason P. Sultzer /s/
                        By:  _____
                                   Jason P. Sultzer, Esq.
                                   85 Civic Center Plaza, Suite 104
                                   Poughkeepsie, NY 12601
                                   Tel: (845) 483-7100
                                   Fax: (888) 749-7747
                                   sultzerj@thesultzerlawgroup.com

                                   *Counsel for Plaintiff and the Class*

5

# EXHIBIT A



The<br>
**Sultzer**<br>
**Law Group** P.C.<br>
*A Complex Litigation & Trial Practice*<br>
NEW YORK | PENNSYLVANIA | NEW JERSEY | CALIFORNIA

The Sultzer Law Group, P.C. focuses on complex civil litigation, including consumer class actions. The firm is headquartered in New York, and maintains offices in California, New Jersey, and Pennsylvania. Since its founding in 2013, The Sultzer Law Group, P.C. has served as counsel in numerous high-profile consumer class action cases. The firm is included in Martindale-Hubbell's Bar Register of Preeminent Lawyers for its class action practice. The partners are AV rated by Martindale-Hubbell and have been selected as Super Lawyers. The firm's founding partner, Mr. Sultzer, has earned selection as a Fellow of the Litigation Counsel of America (LCA), recognizing the country's top trial attorneys. The firm's attorneys have contributed to or been featured in various well known publications, regarding their class action practice, including: *Law360*, Inside Counsel Magazine, Risk Management Magazine, and CNBC News. More detail about the firm, its practice areas, and its attorneys appear on its website: www.thesultzerlawgroup.com

I. **Representative Practice Areas**

**Consumer Protection Class Action Litigation**

Attorneys at The Sultzer Law Group, P.C. have advocated for consumers' rights, successfully challenging some of the nation's largest and most powerful corporations for a variety of improper, unfair, and deceptive business practices in a wide range of industries including, the financial, cosmetic, food, and supplement industries. Through our efforts, we have recovered significant benefits for our consumer clients.

Recent Representative matters include:

- *Assis, David et al. v. Ernest Supplies LLC  (Kings County Supreme Court 505605/2016)*
- *Campbell, Kathleen et al. v. McBride Research Laboratories, Inc., et al. (New York, Bronx County Supreme Court 26761/2016E)*
- *Ciancio, Silvio et al. v. Beaumont Products Incorporated, et al. (SDNY 16-cv-08124)*
- *Cordoba, Kelly et al. v. Virgin Scent, Inc., et al. (New York, Westchester County Supreme Court 56355/2016)*
- *Dayan, Eli et al. v. Swiss-American Products, Inc. (EDNY 15-cv-06895)*
- *Douek, Vivian et al. v. McNabb LLC (EDNY 16-cv-01763)*
- *Guerra, Ruth et al. v. Hero Nutritionals, Inc. (EDNY 16-cv-04563)*
- *Gurkov, Levi et al. v. Frederick Hart Company Inc. et al. (Nassau County Supreme Court 601706/2016)*
- *Haack, Jeffrey et al. v. Drew's LLC (SDNY 16-cv-06022)*
- *Harabedian, Paul et al. v. Hammer Nutrition, LTD (EDNY 14-cv-0459)*
- *Hecht, Shea, et al. v. Wells Fargo Bank, N.A., et al. (EDNY 15-cv-02338)*



NEW YORK | PENNSYLVANIA | NEW JERSEY | CALIFORNIA

- *Huzarsky, Jonathan et al. v. Little Kids, Inc. (U.S. District Court District of Massachusetts 15-cv-13613)*
- *Jacobs, Marcella et al. v. Camille Rose L.L.C. (SDNY 16-cv-08937)*
- *Jones, Maureen et al. v. John WM Macy Cheesesticks, Inc. (Kings County Supreme Court 509337/2015)*
- *Kaatz, Marie and Gagliardi, Abigail, et al. v. Hyland's Inc., et al. (SDNY 16-cv-00237)*
- *Maor, Marshall et al v. Paramount Country Club, LLC, et al. (Rockland County Supreme Court 032284/2016)*
- *Markos, Jaish et al. v. Russell Brands, LLC (SDNY 16-cv-4362)*
- *Moschetta, Marc et al. v. Wal-Mart Stores, Inc. d/b/a Great Value (SDNY 16-cv-01377)/MDL: 2705 & 2708*
- *Nicotra, Jennifer et al. v. Babo Botanicals, LLC (*EDNY 16-cv-00296*)*
- *Principe, Mark et al. v. Edison Nation, LLC et al. (EDNY 15-cv-05453)*
- *Rosner, Ari v. CleanWell LLC (EDNY 16-cv-01780)*
- *Rosner, Yisroel et al. v. Spectrum Brands, Inc. (EDNY 16-cv-01693)*
- *Silva, Christopher et al. v. Smucker Natural Foods, Inc. and J.M. Smucker Co. (EDNY 14-cv-6154)*
- *Sitt v. Nature's Bounty, Inc. et al.* (SDNY 15-cv-04199)
- *Sullivan, Noelky et al. v. Church & Dwight Inc. (EDNY 15-cv-04737)*
- *Thomas, Jenny v. YCC et al. (Dutchess County Supreme Court 5456/2014)*
- *Weisberg, Cynthia et al. v. Aladdin Bakers, Inc. (Kings County Supreme Court 503704/2015)*
- *Vincent, Wesley, et al. v People Against Dirty, PBC. and Method Products, PBC., (SDNY 7:16-cv-06936-NSR)*

## Commercial Litigation

Attorneys at The Sultzer Law Group, P.C.  handle high-stakes commercial cases for both plaintiffs and defendants. We specialize in significant liability exposure involving issues such as business torts, intellectual property matters in which we have pursued and defended against patent and trademark infringement claims, breach of contract, UCC sale of goods, predatory lending, misappropriation of trade secrets/customers, fraud, unfair competition, breach of fiduciary duty, conversion, business transactions, and land use actions. We have successfully represented municipalities as well as companies and individuals in a wide range of industries, including real estate, telecommunications, retail, manufacturing, construction, and alarm/emergency response systems. As a result of our aggressive representation, we have recovered millions of dollars on behalf of clients embroiled in contentious business disputes.



**The Sultzer Law Group P.C.**

*A Complex Litigation & Trial Practice*

NEW YORK | PENNSYLVANIA | NEW JERSEY | CALIFORNIA

Recent representative matters include:

- *101 Imaging LLC DBA Acuscan v. Dr. Rossi, MD., P.C. et al. (Nassau County Supreme Court 601008/2014)*
- *Asset Enhancement Solutions, LLC v. Lifewatch, Inc. (Nassau County Supreme Court 601542/2014)*
- *Brune & Richard LLP v. Daniel Beyda et al. (New York County Supreme Court 650443/2015)*
- *CDP Holdings Group, LLC v. Daniel Beyda (New York County Supreme Court 650261/2016)*
- *Craig C. Goldberg v. GA Capital Partners LLC et al. (New York County Supreme Court 652748/2015)*
- *Daniel Beyda v. Daniel DiPietro et al. (Nassau County Supreme Court 600916/2015)*
- *Dover Madison Capital Management LLC v. Clearwater Systems Corp. et al.  (New York County Supreme Court 652315/2015)*
- *Eddie Sitt, individually and derivatively and on behalf of Sitt Asset Management LLC and Sitt Leasing, LLC v. Ralph Sitt et al. (New York County Supreme Court 652490/2016)*
- *Enterprise Radiology, P.C. d/b/a Washington Heights Imaging v. CDP Holdings Group, LLC et al. (Nassau County Supreme Court 601786/2015)*
- *Federal Trade Commission et al. v. Lifewatch Inc. et al. (U.S. District Court, Northern District of Illinois 15-cv-05781)*
- *Lease-It Capital Corp. d/b/a Acculease v. I.M.S./Imaging Medical Solutions, Inc. et al. (New York County Supreme Court 151316/2015)*
- *Life Alert Emergency Response, Inc. v. Lifewatch, Inc., 2:08-cv-02184-CAS (FFMx) (C.D. Cal)*
- *Long Island Radiology Associates, P.C. v. Daniel Beyda M.D. et al. (Nassau County Supreme Court 602572/2015)*
- *Scanner Guard Corporation v. Excelsis Investments, Inc. et al. (EDPA 16-cv-00516)*
- *Walker Winslow Group, LLC d/b/a Paradigm Health Plans v. Ross Krasnow, et al.  (U.S. District Court District of New Jersey 14-cv-7772)*

**Mass Tort Litigation**

Attorneys at The Sultzer Law Group, P.C. have successfully defended companies against mass toxic tort cases docketed throughout the United States.  Our cases have ranged from single-plaintiff, single-defendant, and single-product claims of personal injury to matters which involved hundreds of plaintiffs and hundreds of products.  We have obtained defense verdicts and summary judgment orders in a number of asbestos, lead, latex, and benzene cases.



A Complex Litigation & Trial Practice

NEW YORK | PENNSYLVANIA | NEW JERSEY | CALIFORNIA

## II.    Partner Biographies

**Jason P. Sultzer**

Jason P. Sultzer represents clients throughout the United States and has substantial experience in class actions, product liability, mass torts, business disputes, personal injury litigation, and intellectual property-related issues.

Mr. Sultzer has successfully defended and prosecuted nationally recognized companies in highly publicized class action lawsuits in state and federal courts, including proceedings before the

Judicial Panel on Multidistrict Litigation. These class actions involved a wide variety of matters, including unfair competition, breach of warranty, product-related issues, employment discrimination, civil rights, overtime wages, the Fair Debt Collection Practices Act, the Telephone Consumer Protection Act, and consumer protection statutes of nearly all fifty states. Mr. Sultzer has successfully opposed class certification and has obtained dismissals in cases prior to class certification by asserting defenses such as federal preemption, primary jurisdiction, and lack of standing. Mr. Sultzer is a frequent author and lecturer about class action lawsuits and has been quoted in national publications concerning the Class Action Fairness Act and class action settlements.

Mr. Sultzer also has successfully litigated hundreds of product liability cases involving a wide range of products, including catastrophic injury and wrongful death matters resulting from fires and electrocutions. Most recently, Mr. Sultzer conducted a trial in which the court returned a favorable verdict in a case involving allegations that his client's product caused a fire and property damage in excess of $10 million.

Additionally, Mr. Sultzer has extensive experience in mass tort cases, including those involving asbestos and the alleged health effects of cell phone use. Given Mr. Sultzer's significant experience in mass tort matters, he regularly advises his clients during corporate crisis situations associated with product recalls, federal agency investigations, state attorney general inquiries, and mass tort and class action litigation threats.

Mr. Sultzer also routinely litigates matters involving complex commercial disputes. He represents both plaintiffs and defendants in these cases. These matters include contractual disputes, business fraud, predatory lending, misappropriation of trade secrets/customers, land use actions, and unfair competition. These clients have been engaged in the real estate, retail, financial, telecommunications, construction, and manufacturing industries. Most recently, Mr. Sultzer obtained a multi-million dollar recovery on behalf of a real estate developer in a breach of contract action involving the development of waterfront property in New York City.



Prior to opening The Sultzer Law Group P.C., Mr. Sultzer was an equity partner at one of the largest law firms in the country where he served as the co-chairman of its class action practice group. Earlier in his career, Mr. Sultzer was in-house counsel for Owens Corning, a Fortune 500 Company, where he was involved in defending the company against tens of thousands of asbestos lawsuits throughout the country.

Mr. Sultzer has received the Martindale-Hubbell AV rating, indicating that his legal peers rank him at the highest level of professional excellence. He was also named as a "Mass Tort Lawyer of the Year" by American Law Media, and has been recognized as a Super Lawyer for the last 6 years.  Mr. Sultzer, was also featured on the front cover of the Wall Street Journal's Legal Leader's magazine in 2014 and 2015 designating him as one of New York's top rated lawyers. In

addition, Mr. Sultzer has earned selection as a Fellow of the Litigation Counsel of America (LCA), recognizing the country's top trial attorneys. The LCA is an invitation-only honorary society that is composed of less than one-half of one percent of American lawyers.

**Joseph Lipari**

Joseph Lipari has litigated in state and federal courts throughout the United States, and he has appeared before binding arbitration panels. Mr. Lipari has achieved numerous successful outcomes as counsel for plaintiffs and defendants, including verdicts and settlements.

He has successfully represented businesses in complex suits arising out of high-profile, catastrophic events including: underground mining accidents in Alabama; steel mill explosions in Pennsylvania and Louisiana; and extended unplanned shutdowns and outages in mills, plants, and factories located across the United States and abroad.

He is admitted to the bars of New York, Pennsylvania, and New Jersey. He has also appeared as counsel, by way of pro hac vice admission, in over twenty states. Mr. Lipari has lectured and published on topics including trial strategy, patent disputes, hydrofracking in the Marcellus Shale, and risk management practices.

Mr. Lipari is a 2002 graduate of Seton Hall University School of Law. Before law school, he attended Officer Candidate School in Quantico, Virginia and was offered a commission as Second Lieutenant in the United States Marine Corps.

Prior to joining The Sultzer Law Group P.C., Mr. Lipari was a partner at a prominent national litigation firm. Earlier in his career, he was associated with one of the largest law firms in the country.



The Sultzer Law Group P.C.
*A Complex Litigation & Trial Practice*
NEW YORK | PENNSYLVANIA | NEW JERSEY | CALIFORNIA

Mr. Lipari has received the Martindale-Hubbell AV rating, indicating that his legal peers rank him at the highest level of professional excellence. He was also named as a "Mass Tort Lawyer of the Year" by American Law Media, and has been recognized as a Super Lawyer.

**Adam Gonelli**

Mr. Gonnelli is a partner at The Sultzer Law Group, P.C. Throughout his career, Mr. Gonnelli has served as lead or co-lead counsel in numerous high-profile class action cases throughout the country resulting in multi-million dollar recoveries to consumers, employees, and investors. Mr. Gonnelli concentrates his practice on consumer fraud class actions, wage and hour litigation, and transactional/commercial litigation. Some of his representative cases include Guttentag v. Ruby Tuesday ($3 million recovery for employees in FLSA wage suit); In re NutraQuest, Inc., No. 06-202 (D.N.J.) (consumer fraud case against national diet supplement company); Wanzo v. Nextel Commc'ns, Inc., No. GIC 791626 (Cal. Sup. Ct.) (consumer case challenging change in "nights and weekends" plan); Rice v. Lafarge North America, No. 268974 (Md. Cir. Ct.) (merger case resulted in a benefit of $388 million); and In re Fox Entm't Group, Inc. S'holders Litig., No. 1033-N (Del. Ch. 2005) (benefit to shareholders of $450 million).

While attending Cornell Law School, Mr. Gonnelli served as Editor-in-Chief of the Cornell Journal of Law and Public Policy and was a member of the Atlantic Regional Championship moot court team in the Jessup International Law Moot Court Competition (1997). At Rutgers University, Mr. Gonnelli lettered in football and fencing and served as Student Government President.

Prior to joining The Sultzer Law Group, Mr. Gonnelli was a partner at a national plaintiff class action law firm where he served as the chairman of its Wage Theft Practice Group. Before attending Law School, Mr. Gonnelli was a Financial Writer at the Federal Reserve Bank of New York, where he wrote educational materials on international trade and monetary policy.

# EXHIBIT B

## CLASS SETTLEMENT AGREEMENT

This Class Settlement Agreement is entered into on December 6, 2016, by and between Plaintiffs Wesley Vincent, Noelle Morgante, Daniel Richman, and Ashley Peluchette ("Plaintiffs"), on behalf of themselves and each of the members of the Settlement Class, on the one hand, and Defendants People Against Dirty, PBC ("PAD"), a Delaware public benefit corporation, and Method Products, PBC ("Method"), a Delaware public benefit corporation, on the other (collectively, Plaintiffs and Defendants are the "Parties"). The Parties intend for this Class Settlement Agreement to fully, finally, and forever resolve, discharge, and settle all released rights and claims, subject to the terms and conditions set forth herein.

## I. RECITALS

1.1     On October 27, 2015, Eggnatz, Lopatin and Pascucci, LLP ("ELP") served a CLRA letter and draft complaint ("Richman Complaint") against Method, on behalf of Plaintiffs Daniel Richman and Ashley Peluchette, alleging that certain of Method's products were deceptively labeled as "natural" and/or "naturally derived." Similarly, on May 26, 2016, the Sultzer Law Group ("Sultzer"), counsel for Plaintiffs Wesley Vincent and Noelle Morgante, sent a separate pre-suit notice letter to Method alleging that certain of Method's products were deceptively labeled as "natural" and/or "naturally derived." The letter enclosed a draft complaint ("Vincent Complaint") for a civil action and related Sultzer's intention to file it in federal court, and also demanded that Method preserve certain records related to the allegations in the draft complaint.

1.2     The draft complaints alleged that certain of Method's products are labelled in a deceptive manner inasmuch as the labelling states that the products are "natural" or "naturally derived," whereas the products purportedly contain substances that are synthetic,

artificial and/or genetically modified.  The draft Vincent Complaint sought certification of a nationwide class under both Rule 23(b)(3) and 23(b)(2), and alleged nine counts of wrongdoing: (i) violation of New York GBL § 349; (ii) violation of New York GBL § 350; (iii) violation of consumer protection statutes of more than forty (40) states; (iv) breach of express warranty; (v) violation of the Magnuson-Moss Warranty Act; (vi) breach of implied warranty of merchantability; (vii) breach of implied warranty of fitness for a particular purpose; (viii) unjust enrichment; and (ix) negligent misrepresentation.  The draft Richman Complaint similarly sought certification of a nationwide class, but under California and Florida consumer protection statutes.

1.3     Upon receipt of the pre-suit notice letters and draft complaints, Defendants (through Defendants' Counsel) engaged in confidential pre-litigation settlement negotiations with Sultzer and ELP, consisting of correspondence and numerous telephone calls, an in-person mediation, and various ongoing post-mediation settlement discussions.

1.4     On March 31, 2016, ELP, on behalf of its clients, entered into a Confidentiality Agreement with Method, pursuant to which, and for the purpose of settlement discussions only, Method agreed to produce certain sales and marketing information that would enable ELP and its clients to better evaluate their position with respect to settlement.  On June 3, 2016 Sulzer, on behalf of its clients, entered into a similar Confidentiality Agreement with Method, pursuant to which, and for the purpose of settlement discussions only, Method agreed to produce certain sales and marketing information that would enable Sultzer and its clients to better evaluate their position with respect to settlement.

1.5     In various letters and correspondence, beginning on April 29, 2016, Defendants' Counsel provided ELP and Sultzer with information regarding the basis for

Defendants' labeling of the products identified in the draft Complaints as "natural" or "naturally derived." Defendants maintained, and continue to maintain, numerous arguments in support of Defendants' position that the allegations in the draft Complaints were unsupported, and that they would fail initially as a matter of law, and ultimately as a matter of fact. Concurrently, Defendants' Counsel also produced to ELP and Sultzer, pursuant to the confidentiality agreements, sales information regarding the products identified in the draft complaints.

1.6     Thereafter, the Parties continued negotiations, exchanging multiple iterations of settlement proposals and negotiating over the phone and via email correspondence.

1.7     On June 8, 2016 ELP attended an in-person mediation with Defendants' Counsel, Defendants' interim General Counsel, Defendants' Senior Director of Regulatory and Greenskeeping. Although a settlement was not reached that day, the Defendants and ELP continued to engage in extensive settlement discussions, both with and without the participation of the mediator. On August 11, 2016, Sultzer, Defendants' Counsel and Defendants' interim General Counsel held an in-person meeting at the office of Defendants' Counsel in San Francisco, where Method has its headquarters. At that meeting, Sultzer and Defendants, through Defendants' Counsel, agreed upon a framework for a resolution of the matter. Over the next several weeks, Sultzer and Defendants' Counsel exchanged drafts and refined that framework into the basic outline of a settlement agreement providing for both monetary and injunctive relief for Plaintiffs and the putative class and a broad release for Defendants.

1.8     Over the course of the settlement negotiations, Defendants' Counsel provided ELP and Sultzer with certain additional sales and marketing information, which Plaintiffs

required prior to agreeing in principle to enter into the settlement set forth in this Class Settlement Agreement.  This information included sales data showing the number and type of products purchased nationally by consumers, average purchase price, net sales information, and third-party Nielsen data, as well as marketing information regarding the reasons why consumers purchase Defendants' products.

1.9     On September 2, 2016, Plaintiff Wesley Vincent filed the original complaint in this Action, captioned *Vincent v. People Against Dirty*, *PBC*, 7:16-cv-06936, in the United States District Court for the Southern District of New York.  The same day, Defendant PAD filed a Notice of Settlement indicating that the parties had reached an agreement in principle and would be preparing a settlement agreement to resolve this dispute on a class-wide basis.

1.10    On September 6, 2016, Defendant PAD filed an answer to the complaint.  On September 27, 2016, Plaintiff Wesley Vincent amended the complaint to add Plaintiffs Noelle Morgante and John Does 1-100 and to name Defendant Method.

1.11    On September 7, 2016, Plaintiffs Daniel Richman and Ashley Peluchette filed their complaint in the Northern District of California, captioned *Richman et al.  v. People Against Dirty*, *PBC* et al., 3:16-cv-05167 (the "Richman Action").

1.12    On October 13, 2016, Plaintiff Wesley Vincent filed a Second Amended Complaint, adding Daniel Richman and Ashley Peluchette as Plaintiffs in this Action.  The same day, Defendant Method and Plaintiffs Daniel Richman and Ashley Peluchette filed a joint stipulation of dismissal in the Richman Action.  On October 31, 2016, Defendants filed their answer to the Second Amended Complaint in this Action.

## II.    DEFINITIONS

2.1      "Action" or "this Action" means the lawsuit captioned *Vincent, et al. v. People Against Dirty, PBC* 7:16-cv-06936, United States District Court for the Southern District of New York.

2.2      "Agreement" or "Settlement Agreement" means this Class Settlement Agreement and any exhibits attached or incorporated hereto, including any amendments the Parties may agree to and any exhibits to such amendments.

2.3      "Attorneys' Fees and Expenses" means any funds the Court may award to Class Counsel as compensation for any fees and expenses incurred in connection with this Action and/or the Settlement, as set forth in Section VIII of this Class Settlement Agreement. Attorneys' Fees and Expenses do not include costs or expenses associated with Class Notice or the administration of the settlement.

2.4      "Claim Form" means the document to be submitted by Claimants seeking payment pursuant to Section 4.2 of this Class Settlement Agreement.  The Claim Form will accompany the mailed Class Notice and will be available online at the Settlement Website, substantially in the form of Exhibit A to this Class Settlement Agreement.

2.5      "Claim Period" means the time period during which the members of the Settlement Class may submit a Claim Form to the Settlement Administrator for review.  The Claim Period shall run for a period of time ordered by the Court, and shall last at least ninety (90) calendar days from the date of the first publication of the Summary Settlement Notice or Class Notice, whether online, via print publication, or via press release, whichever is earlier.

2.6      "Claimant" means a member of the Settlement Class who submits a claim for payment as described in Section 4.2 of this Class Settlement Agreement.

2.7     "Class Action Settlement Administrator," "Settlement Administrator," or "Notice Administrator" means the company jointly selected by Class Counsel and Defendants' Counsel and approved by the Court to provide the Class Notice and to administer the claims process.

2.8     "Class Counsel" means the Sultzer Law Group, 85 Civic Center Plaza, Suite 104, Poughkeepsie, NY, 12601, and Eggnatz, Lopatin & Pascucci, LLP, 5400 S. University Drive, Suite 417, Davie, FL 33328.

2.9     "Class Notice" or "Long Form Notice" means the legal notice of the proposed Settlement terms, substantially in the form of Exhibit B, as approved by Defendants' Counsel and Class Counsel, subject to approval by the Court, to be provided to potential members of the Settlement Class in the methods set forth below.

2.10    "Class Period" means the period from August 1, 2010, to the deadline for claim submission set forth in the Class Notice.

2.11    "Complaint" means the Second Amended Complaint, as it may be amended from time to time.

2.12    "Court" means the United States District Court for the Southern District of New York.

2.13    "Defendants' Counsel" means Arnold & Porter LLP, 10th Floor, Three Embarcadero Center, San Francisco, CA 94111-4024.

2.14    "Effective Date" means:

(a)     if no appeal is taken from the Order and Final Judgment, thirty-five (35) days after the Court enters the Order and Final Judgment of this Class Settlement Agreement; or

(b)     if an appeal is taken from the Order and Final Judgment, the date on which all appellate rights (including petitions for rehearing or re-argument, petitions for rehearing *en banc*, petitions for *certiorari* or any other form of review, and proceedings in the United States Supreme Court or any other appellate court) have expired, been exhausted, or been finally disposed of in a manner that affirms the Order and Final Judgment.

2.15    "Final Approval" of this Class Settlement Agreement means the date that the Order and Final Judgment is entered in this Action approving this Class Settlement Agreement.

2.16    "Fund Institution" means a third-party banking institution where the cash funds Defendant Method Products, PBC will pay under the terms of this Class Settlement Agreement will be deposited into a Qualified Settlement Fund account, specifically, the Settlement Fund, as defined herein. Pursuant to Section 4.1, Class Counsel will select the Fund Institution, and Defendants will approve it.

2.17    "Service Award" means the amount the named Plaintiffs Wesley Vincent, Noelle Morgante, Daniel Richman, and Ashley Peluchette will receive for their service as class representatives, pursuant to Section 8.6.

2.18    "Initial Claim Amount" means the amount a member of the Settlement Class claims as a cash payment on a Claim Form that is timely, valid, and approved by the Settlement Administrator. The value basis of the Initial Claim Amount is described in Section 4.2.  The Initial Claim Amount is subject to *pro rata* increase or decrease, depending on the value of all approved Claims submitted, pursuant to Section 4.4.

2.19    "Method Products, PBC" or "Method" means Defendant Method Products, PBC, a Delaware public benefit corporation with its principal place of business in San

Francisco, California and its predecessors, subsidiaries, shareholders, affiliates, officers, directors, partners, employees, agents, servants, assignees, successors, and/or other transferees or representatives.

2.20 "Notice Plan" means the plan for publication of the Class Notice developed by the Settlement Administrator, substantially in the form of the notice plan attached hereto as Exhibit C.

2.21 "People Against Dirty, PBC" or "PAD" means Defendant People Against Dirty, PBC, a Delaware public benefit corporation with its principal place of business in San Francisco, California and its predecessors, subsidiaries, shareholders, affiliates, officers, directors, partners, employees, agents, servants, assignees, successors, and/or other transferees or representatives.

2.22 "Order and Final Judgment" means the final order to be entered by the Court approving the Settlement pursuant to the terms and conditions of this Agreement, dismissing the Action with prejudice, releasing claims, and otherwise directing such actions as the Court or the Parties deem necessary and appropriate to effectuate the terms and conditions of this Class Settlement Agreement.

2.23 "Preliminary Approval" means the order preliminarily approving this Class Settlement Agreement, preliminarily certifying the Settlement Class, approving the Notice of Proposed Settlement, and issuing any necessary related orders.

2.24 "Products" means Defendant Method's Method- or Ecover-branded products as identified in Exhibit E, and any similar Method- or Ecover-branded products not listed in Exhibit E, including those products purchased by members of the Settlement Class during the Class Period, as well as any such products or similar products purchased by members of the

-8-

Settlement Class in the future, provided that there is no substantial change in their formulation or Defendants' labeling, marketing, or advertising that would be material to the claims resolved in this Settlement Agreement and that would contravene Sections 4.5, 4.6, and 4.7 of this Agreement.

2.25    "Proof of Purchase" means a receipt or other documentation reasonably establishing the fact of purchase during the Class Period in the United States. Proof of Purchase may be in the form of any reasonably reliable proof customarily provided to Settlement Administrator to establish proof of purchase for class membership, such as an itemized store receipt or loyalty/membership card print-outs, the original UPC code for each purchased Product, and/or pictures of UPC codes for each purchased Product, to the extent the Settlement Administrator is able to confirm the picture is reasonably reliable consistent with industry standard fraud prevention measures.

2.26    "Qualified Settlement Fund" means the type of fund, account, or trust, created pursuant to 26 C.F.R. § 1.468B-1, that the Fund Institution will establish to receive payments under this Agreement.

2.27    "Related Actions" means any action previously filed, threatened to be filed, or filed in the future in any state or federal court asserting claims and/or alleging facts substantially similar to those asserted and alleged in this Action.

2.28    "Released Claims" means any claim, cross-claim, liability, right, demand, suit, matter, obligation, damage, restitution, disgorgement, loss, cost, attorneys' fee or expense, action, or cause of every kind and description that any Plaintiff, the Settlement Class or any member thereof had or have, including assigned claims, whether in arbitration, administrative, or judicial proceedings, whether as individual claims, claims asserted on a

class basis or on behalf of the general public, whether known or unknown, asserted or unasserted, suspected or unsuspected, latent or patent, that is, has been, could reasonably have been, or in the future might reasonably be asserted by Plaintiff or members of the Settlement Class either in the Action or in any action or proceeding in this Court or in any other court or forum, including any Related Actions, regardless of legal theory or the law under which such action may be brought, and regardless of the type or amount of relief or damages claimed, against any of the Released Persons, arising out of or relating to the allegations in the Complaint or the labels on the Products (all sizes and fragrances) and Websites or that otherwise relates in any way to advertising, formulation, labeling, or marketing, in any format or medium, of Defendants' Products as natural, naturally derived, hypo-allergenic, non-toxic, plant-derived, plant-based, mineral-derived, mineral-based, bio-based, and similar statements.   Plaintiffs and the Settlement Class agree that the modifications to the labeling, packaging, marketing, and advertising of the Products set forth in Section 4.5 below are satisfactory to Plaintiffs and the Settlement Class and alleviate each and every alleged deficiency with regard to the advertising, formulation, labeling, packaging, advertising, and marketing of the Products, and similar deficiencies, if any, with regard to other or future Products set forth in or related to the Complaint and/or Related Actions.   For the avoidance of doubt, the term "Released Claims" includes only those claims that arise out of or relate to the allegations in the Complaint, any Related Actions, or Defendants' advertising, formulation, labeling, marketing, and advertising of the Products.

2.29   "Released Persons" means and includes People Against Dirty, PBC and Method Products, PBC, and each of their current and former parents, subsidiaries, affiliates, controlled companies both inside and outside the United States, predecessors, successors,

suppliers, distributors, retailers, customers, and assigns, including the present and former directors, officers, employees, shareholders, agents, insurers, partners, privies, representatives, attorneys, and accountants, and all persons acting by, through, under the direction of, or in concert with them.

2.30    "Residual Fund" means the value of any funds remaining in the Settlement Fund, less all Claimants' Initial Claim Amounts, less Class Notice and administration costs, and less all Attorneys' Fees and Expenses and Service Awards pursuant to Court order or otherwise specified in this Agreement.

2.31    "Settlement Amount" means Two Million Eight Hundred Thousand Dollars ($2,800,000.00).

2.32    "Settlement Class" means all persons and entities that, during the Class Period, both resided in the United States and purchased in the United States any of the Products for use and not for resale.  Excluded from the Settlement Class are: (a) Defendants' board members or executive-level officers, including its attorneys; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court's staff; and (d) any person who timely and properly excludes himself or herself from the Settlement Class in accordance with the procedures approved by the Court.

2.33    "Settlement Fund" means the Settlement Amount that Defendant Method Products, PBC will pay or cause to be paid in cash to the Fund Institution to be used to pay members of the Settlement Class who submit valid and timely Claim Forms, pursuant to Section 4.2.  The Settlement Fund will also be used to pay for any award of Attorneys' Fees and Expenses that the Court orders, any Class Notice and administration costs, any Service Awards, and any other costs pursuant to Section 4.1 of this Agreement.

2.34    "Settlement Hearing(s)" means the hearing(s) the Court will hold to consider and determine whether it should approve the proposed settlement contained in this Class Settlement Agreement as fair, reasonable, and adequate, and whether it should enter judgment approving the terms of this Class Settlement Agreement. Settlement Hearings include both a "Preliminary Approval Hearing" and a "Final Approval Hearing" or "Fairness Hearing," to be held after preliminary approval is granted, as the Court so orders.

2.35    "Settlement Website" means the website to be created for this settlement that will include information about the Action and this Class Settlement Agreement, relevant documents, and electronic and printable forms relating to this Class Settlement Agreement, including the Claim Form.  The Settlement Website shall be activated by the date of the first publication of the Summary Settlement Notice or Class Notice, whichever is earlier, and shall remain active until one hundred and twenty (120) calendar days after the Court enters the Order and Final Judgment.

2.36    "Summary Settlement Notice" or "Short Form Notice" means the summary class notice of proposed class action settlement, to be disseminated by publication substantially in the form of Exhibit D attached to this Agreement. Any changes to the Summary Settlement Notice or Short Form Notice from the form set forth in Exhibit D must be jointly approved by Class Counsel and Defendants' Counsel.

2.37    "Tally" or "Final Tally" means the calculation and report the Settlement Administrator shall provide to the Parties, which shall include the value, number, and type of timely, valid, and approved Claims. The Final Tally shall also include the amount that members of the Settlement Class timely and validly claimed. The Settlement Administrator

shall give the Final Tally to the Parties no later than seven (7) calendar days after the close of the Claim Period.

2.38    "Website" means US-facing websites for METHOD and ECOVER brands, including www.methodhome.com, www.ecover.com/us, and http://us.ecover.com.

## III.    CERTIFICATION OF THE CLASS AND PRELIMINARY APPROVAL

3.1    For the purposes of settlement and the proceedings contemplated herein, the Parties stipulate and agree that a nationwide Settlement Class should be certified.  Such certification is for settlement purposes only, and has no effect for any other purpose.

3.2    The certification of the Settlement Class shall be binding only with respect to this Agreement.  In the event that the Effective Date does not occur for any reason, the Preliminary Approval and all of its provisions shall be vacated by its own terms, and this Action shall revert to the status that existed prior to the date of this Class Settlement Agreement.

3.3    As part of the settlement process, Defendants consent to Plaintiffs' application to the Court for entry of an order which, among other things: (a) preliminarily certifies the Settlement Class in accordance with the definition set forth in Section 2.32 of this Class Settlement Agreement; (b) preliminarily approves this Agreement for purposes of issuing the Class Notice; (c) approves the timing, content, and manner of the Class Notice and Summary Settlement Notice; (d) appoints the Settlement Administrator; (e) appoints the Sultzer Law Group P.C. and Eggnatz, Lopatin and Pascucci, LLP as Class Counsel and Plaintiffs Wesley Vincent, Noelle Morgante, Daniel Richman, and Ashley Peluchette as class representatives; and (f) makes such orders as are necessary and appropriate to effectuate the terms and conditions of this Agreement.

**IV.   SETTLEMENT CONSIDERATION AND BENEFITS**

The relief under this Settlement includes three components to benefit the Settlement Class: (a) a Settlement Fund from which members of the Settlement Class who submit timely, valid, and approved claims will obtain refunds; (b) modifications to the labeling of the Products; and (c) modifications to the Website(s) where Defendants advertise the Products.

4.1    **Settlement Fund**

**(a)    Settlement Fund**.  Defendant shall establish a Settlement Fund with a value of Two Million Eight Hundred Thousand Dollars ($2,800,000.00) and shall make all cash payments due pursuant to Section 4.2 by paying this amount into a Qualified Settlement Fund at the Fund Institution.

The Settlement Fund shall be applied to pay in full and in the following order: (i) any necessary taxes and tax expenses; (ii) all costs and expenses associated with disseminating notice to the Settlement Class, including but not limited to the Class Notice and Summary Settlement Notice; (iii) all costs and expenses associated with the administration of the Settlement, including but not limited to processing claims and fees of the Class Action Settlement Administrator; (iv) any Attorneys' Fees and Expenses award made by the Court to Class Counsel pursuant to Section VIII of this Agreement; (v) any Service Awards made by the Court to Plaintiffs under Section 8.6 of this Agreement; (vi) cash payments distributed to Settlement Class members who have submitted timely, valid, and approved claims pursuant to the claims process outlined in Section 4.2 and the monetary relief outlined in

-14-

Section 4.3 of this Agreement; and (vii) payments made from the Residual Fund, if any, pursuant to Section 4.4 of this Agreement.

   **(b)**  **Defendants' Funding of the Settlement Fund**.

     (i)  Within ten (10) days after Preliminary Approval, Defendant Method shall fund costs associated with carrying out the Notice Plan.

     (ii)  Within thirty-five (35) calendar days after the entry of Final Approval, Defendant Method Products, PBC shall fund the Settlement Fund with the entire Settlement Amount. This deadline may be extended by mutual consent of the Parties.

   (c)  The Parties must approve any payment of costs or expenses under Sections 4.1(a)(i), 4.1(a)(ii), and 4.1(a)(iii).

   (d)  In no circumstances shall Defendants' total contribution to or liability for the Settlement Fund exceed Two Million Eight Hundred Thousand Dollars ($2,800,000.00).  Thus, under this Class Settlement Agreement, the Parties agree that the Settlement Fund encompasses the full extent of Defendants' monetary payment due under this Agreement.  These payments, pursuant to the terms and conditions of this Agreement, and any other non-monetary obligations of and considerations due from Defendants set forth in this Agreement, will be in full satisfaction of all individual and class claims asserted in or that could have been asserted in this Action.

   (e)  Defendants and the Released Persons are not obligated (and will not be obligated) to compute, estimate, or pay any taxes on behalf of Plaintiffs, Plaintiffs' Counsel, Class Counsel, any member of the Settlement Class, the Notice Administrator, or the Settlement Administrator.

(f)     In the event the Effective Date does not occur, all amounts paid into the Settlement Fund, less amounts incurred for claims administration and notice, shall be promptly returned to Defendants, and this Action shall revert to the status that existed prior to the date of this Agreement, except as otherwise ordered by the Court.

4.2     **Eligibility and Process for Obtaining a Cash Payment**

To be eligible for a cash payment, a member of the Settlement Class must submit a timely and valid Claim Form, which will be evaluated by the Settlement Administrator.

(a)     **Claim Form Availability**.  The Claim Form shall be substantially similar to the claim form attached hereto as Exhibit A.  The Claim Form will be: (i) included on the Settlement Website to be designed and administered by the Settlement Administrator, and members of the Settlement Class shall be allowed to complete the Claim Form online; and (ii) made readily available from the Settlement Administrator, including by requesting a Claim Form from the Settlement Administrator by mail, email, or calling a toll-free number provided by the Settlement Administrator.

(b)     **Timely Claim Forms**.  Members of the Settlement Class must submit a timely Claim Form, which is one postmarked or submitted online before or on the last day of the Claim Period, the specific date of which will be prominently displayed on the Claim Form and Class Notice. For a non-online Claim Form, the Claim Form will be deemed to have been submitted on the date of the postmark on the envelope or mailer. For an online Claim Form and in all other cases, the Claim Form will be deemed to have been submitted on the date it is received by the Settlement Administrator.

(c)     **Validity of Claim Forms**.  Members of the Settlement Class must submit a valid Claim Form, which must contain the Settlement Class member's name and

-16-

mailing address, attestation of purchase(s) as described in Section 4.2(d), type(s) and number of Products purchased, and approximate locations and dates of purchase. Subject to Section 4.2(g) herein, Claim Forms that do not meet the requirements set forth in this Agreement and in the Claim Form instructions may be rejected. The Settlement Administrator will determine a Claim Form's validity.

Where a good faith basis exists, the Settlement Administrator may reject a Claim Form for, among other reasons: (i) failure to attest to the purchase of the Products or purchase of products that are not covered by the terms of this Settlement Agreement; (ii) failure to provide adequate verification or additional information about the Claim pursuant to a request of the Settlement Administrator; (iii) failure to fully complete and/or sign the Claim Form; (iv) failure to submit a legible Claim Form; (v) submission of a fraudulent Claim Form; (vi) submission of a Claim Form that is duplicative of another Claim Form; (vii) submission of a Claim Form by a person who is not a member of the Settlement Class; (viii) request by a person submitting the Claim Form to pay funds to a person or entity that is not the member of the Settlement Class for whom the Claim Form is submitted; (ix) failure to submit a Claim Form by the end of the Claim Period; or (x) failure to otherwise meet the requirements of this Class Settlement Agreement.

(d) **Attestation of Purchase Under Penalty of Perjury Required**.  For claims without proof of purchase, each member of the Settlement Class submitting a Claim Form shall sign (either by hand or by electronic signature if the claim is submitted online) and submit a Claim Form that states to the best of his or her knowledge the total number and type of Products that he or she purchased and the approximate date(s) of his or her purchases. The Claim Form shall be signed under an affirmation stating the following or substantially

-17-

similar language: "I declare, under penalty of perjury, that the information in this Claim Form is true and correct to the best of my knowledge, and that I purchased the Product(s) claimed above in the United States during the Class Period for personal or household use and not for resale. I understand that my Claim Form may be subject to audit, verification, and Court review."

    (e) **Verification of Purchase May Be Required**.  The Claim Form shall advise members of the Settlement Class that while proof of purchase is not required to submit a claim, the Settlement Administrator has the right to request verification or more information regarding the purchase of the Products for the purpose of preventing fraud.  If the Settlement Administrator requests such verification and the member of the Settlement Class does not timely comply or is unable to produce documents or additional information to substantiate the information on the Claim Form and the claim is otherwise not approved, the Settlement Administrator may disqualify the claim, subject to the reconsideration procedure outlined in Section 4.2(g) below.

    (f) **Claim Form Submission and Review**.  Claimants may submit a Claim Form either by mail or electronically.  The Settlement Administrator shall review and process the Claim Forms pursuant to the process described in this Agreement to determine each Claim Form's validity. Adequate and customary procedures and standards will be used by the Settlement Administrator to prevent the payment of fraudulent claims and to pay only legitimate claims.  The Parties shall take all reasonable steps, and direct the Settlement Administrator to take all reasonable steps, to ensure that Claim Forms completed and signed electronically by members of the Settlement Class conform to the requirements of the federal Electronic Signatures Act, 15 U.S.C. § 7001, *et seq.*

-18-

       (g)    **Claim Form Deficiencies**.  In the event the Settlement Administrator rejects a Claim Form pursuant to Section 4.2(c) above, the Settlement Administrator shall mail a notice of rejection to Settlement Class members whose Claims have been rejected in whole or in part.  Failure to provide all information requested on the Claim Form will not result in immediate denial or nonpayment of a claim.  Instead, the Settlement Administrator will take all reasonable and customary steps to attempt to cure the defect and to determine the eligibility of the member of the Settlement Class for payment and the amount of payment based on the information contained in the Claim Form or otherwise submitted, including advising the Settlement Class members that if they disagree with the determination, the Settlement Class member may send a letter to the Settlement Administrator requesting reconsideration of the rejection and the Settlement Administrator shall reconsider such determination, which reconsideration shall include consultation with Class Counsel and Defendants' Counsel.  In such event, Settlement Class members shall be advised of their right to speak with Class Counsel, and Defendants are entitled to dispute claims if available records or other information indicate that the information on the Claim Form is inaccurate or incomplete.  The Parties shall meet and confer regarding resolution of such claims and, if unable to agree, shall submit those claims to the Court for determination. As to any claims being determined by the Court pursuant to this Section 4.2(g), the Settlement Administrator shall send payment or a letter explaining the Court's rejection of the claim within thirty-five (35) days of the Court's determination.

       (h)    **Failure to Submit Claim Form**.  Unless a member of the Settlement Class opts out pursuant to Section VI, any member of the Settlement Class who fails to submit a timely and valid Claim Form shall be forever barred from receiving any payment

-19-

pursuant to this Agreement, and shall in all other respects be bound by all of the terms of this Agreement and the terms of the Order and Final Judgment to be entered in the Action.  Based on the release contained in this Agreement, any member of the Settlement Class who does not opt out will be barred from bringing any action in any forum (state or federal) against any of the Released Persons concerning any of the matters subject to the release.

(i)      **Cash Recovery for Members of the Settlement Class.**  The relief to be provided to each member of the Settlement Class who submits a timely and valid Claim Form pursuant to the terms and conditions of this Agreement shall be a payment in the form of a cash refund.  The total amount of the payment will vary based on: (i) whether the member of the Settlement Class submits valid Proof of Purchase; (ii) whether the member of the Settlement Class provides additional information regarding his or her purchase, such as the fragrance purchased and/or his or her satisfaction with the product; and (iii) the total amount of valid claims submitted.  Cash refunds will be paid by the Settlement Administrator via check, pursuant to Section 4.3.

(j)      **Monetary Relief for Settlement Class.**

(i)      Proof of Purchase.  Claimants with Proof of Purchase may obtain reimbursement of up to One Dollar ($1.00) per Product purchased during the Class Period, without any limitation on the number of Products purchased.  The Initial Claim Amount depends on the number of Products purchased per the Proof of Purchase provided and is subject to a *pro rata* upward or downward adjustment pursuant to Section 4.4.

(ii)     Without Proof of Purchase.  Members of the Settlement Class who file a Claim Form for purchases of Products for which they are unable to provide Proof of Purchase may seek reimbursement of up to One Dollar ($1.00) per Product purchased for

up to four (4) Products by stating under penalty of perjury the type(s) and number of Products purchased and the approximate dates of purchases.  Alternately, such Settlement Class members may seek reimbursement of up to One Dollar ($1.00) per Product purchased for up to eight (8) Products by stating under penalty of perjury the type(s) and number of Products purchased, the approximate dates of purchases, the retailer and/or location of the purchase(s), and providing additional information regarding the purchase, such as the fragrance purchased and/or the Settlement Class member's satisfaction with the Product.  In such event, any request to provide additional information must be agreed upon by the Parties. The substance of Settlement Class members' responses to any request for additional information regarding their purchases shall not affect their eligibility to receive reimbursement for up to eight (8) Products without Proof of Purchase.  In other words, simply providing the additional information entitles Settlement Class members to receive reimbursement for up to eight (8) Products—there is no wrong answer that will reduce the settlement's benefits, as long as the Settlement Class member is otherwise eligible to receive the benefits. On the Claim Form, the Settlement Class member must state the type of Product(s) purchased and the number of Product(s) purchased during the Class Period.  The Initial Claim Amount depends on the number of Products purchased and whether the additional information described in this Section is provided, and is subject to a *pro rata* upward or downward adjustment pursuant to Section 4.4.

    4.3    **Distribution to Authorized Settlement Class Members**

    (a)    The Settlement Administrator shall begin paying timely, valid, and approved claims via first-class mail no later than ten (10) calendar days after the Effective Date.

(b)     The Settlement Administrator shall have completed the payment to Settlement Class members who have submitted timely, valid, and approved claims pursuant to the claim process no later than twenty (20) calendar days after the Effective Date.

4.4     **Excess or Insufficient Funds in the Settlement Fund**

(a)     **Excess Funds**.  If, after the payment of all valid claims, notice and administration costs, Attorneys' Fees and Expenses, Service Awards, and any other claim, cost, or fee specified by this Agreement, value remains in the Settlement Fund, it shall be called the Residual Fund. Any value remaining in the Residual Fund shall increase eligible Settlement Class members' relief on a *pro rata* basis until the Residual Fund is exhausted as follows:

(i)     If Residual Fund Available.  If there is a Residual Fund, then Settlement Class members' relief shall be increased on a *pro rata* basis up to a maximum of four hundred percent (400%) of the eligible Settlement Class member's Initial Claim Amount.  The Settlement Administrator shall determine each authorized Settlement Class member's *pro rata* share based upon each Settlement Class member's Claim Form and the total number of valid claims. Accordingly, the actual amount recovered by each Settlement Class member will not be determined until after the Claim Period has ended and all claims have been calculated.

(ii)     If Excess Residual Funds Remain Available.  If excess Residual Funds remain available in the Settlement Fund after the *pro rata* increase pursuant to section 4.4(a)(i) above,  then the Settlement Administrator shall distribute such remaining Settlement Funds to consumers via a One Dollar ($1.00) off coupon distributed through publicly available web coupon sites such as coupons.com or ibotta.com, of which coupons

-22-

90% will be for METHOD branded products and 10% for ECOVER branded products, less fees to administer the program and distribute such coupons.  If the coupon option is not available or not economically viable, as determined by the Court upon motion of any Party to this Agreement, then the Settlement Administrator shall distribute such remaining Settlement Funds to the following non-profit organizations in equal shares: The Sierra Club, Earth Echo International, and the Conservation Alliance (the "Charitable Organizations"). Affidavits from The Sierra Club, Earth Echo International, and the Conservation Alliance are attached as Exhibits F, G, and H.

                (iii)    No funds remaining after the calculations done pursuant to Sections 4.4(a)(i)-(ii) or (b) will be returned to Defendants.  If there are any funds remaining in the Settlement Fund following the calculations pursuant to Sections 4.4(a)(i)-(ii) or (b), including any checks or coupons that were not cashed or redeemed, then the Settlement Administrator shall distribute such remaining funds to the Charitable Organizations.

                (b)    **Insufficient Funds**.  If the total amount of the timely, valid, and approved Claims submitted by Settlement Class members exceeds the funds available, considering any fees, payments, and costs set forth in this Agreement that must also be paid from the Settlement Fund, each eligible Settlement Class member's Initial Claim Amount shall be proportionately reduced on a *pro rata* basis, such that the aggregate value of the cash payments distributed does not exceed the Settlement Fund balance after payment of all other costs. The Settlement Administrator shall determine each authorized Settlement Class member's *pro rata* share based upon each Settlement Class member's Claim Form and the total number of valid claims. Accordingly, the actual amount recovered by each Settlement

Class member will not be determined until after the Claim Period has ended and all claims have been calculated.

4.5     **Injunctive Relief: Modification of Product Labels and the Website**

Defendants shall make the modifications described below to the Product labeling and/or to the Website as noted, beginning within ninety (90) days after Final Approval, but shall be able to continue to utilize existing labels and materials, and sell existing inventory of the Products, provided the labels, materials, and inventory of the Products were in existence as of the date that is ninety (90) days after Final Approval.  Defendants agree to modify the content of Defendants' Website(s) to correspond to the labeling changes.

For any Product labeled with the term "natural" or "naturally derived," Defendant Method will:

(i)     list the ingredients on the product labels in accordance with generally accepted industry standards, including INCI, IL, and other applicable legislation and regulations;

(ii)     provide ingredient information including (1) origin (plant-derived or synthetic) and (2) function on the Website(s) or, at Defendants' option, on the Product label;

(iii)     use the term "natural" to refer to fragrance ingredients that meet the ISO 9235 standard, as it may be amended from time to time.  In such event, the label shall clearly disclose that the term "natural" refers only to the qualifying fragrance, such as "natural rosemary fragrance";

(iv)     use the term "naturally derived" to refer to an ingredient or formula/product as follows:

1.    An ingredient that is made from (1) renewable plant-based materials, (2) abundant minerals, and/or (3) water, and that may be modified to provide functionality.  The modification may involve synthesizing with sources other than plant and/or mineral sources.

2.    A formula or product whose functional ingredients, e.g., those that provide the cleaning action, are natural or naturally derived as set forth above in this Agreement.

(v)    state the definitions of "natural" and "naturally derived" prominently on the Website(s), e.g., through a link and/or a hover-over effect where the terms are used;

(vi)    To the extent that Method continues to use ingredients that are alleged to be skin irritants (including but not limited to Methylisothiasolinone and Benzisothiazolinone), Method shall include a disclosure on Method's Website that the terms "hypoallergenic," "non-toxic," or similar statements on the packaging or advertising do not mean that a product or ingredient will not cause any allergic reaction or irritation in any person, and that a small percentage of individuals may have some form of allergic reaction or irritation to certain ingredients or products; and

(vii)    abide by all regulatory labeling standards, where applicable.

The injunctive relief set forth in this Section will be superseded or otherwise modified to conform to any applicable statute, regulation, pronouncement, guidance, or other law that conflicts with the provisions above or that expressly permits the use of the terms "natural" and/or "naturally derived" without the above restrictions.

4.6   **Other Injunctive Relief Terms and Conditions**

(a)   Plaintiffs and the members of the Settlement Class agree that the agreed modifications to the labeling, marketing, and advertising of the Products are satisfactory to Plaintiffs and the members of the Settlement Class and alleviate each and every alleged deficiency with regard to the labeling, packaging, advertising, and marketing of the Products and their ingredients (and similar deficiencies, if any, with regard to other of Defendants' products that currently exist or that may exist in the future) set forth in or related to the Complaint, any Related Actions or otherwise.

(b)   **Expiration.**   With respect to each Product or category of Products, as applicable, the injunctive relief requirements by which Defendant agrees to abide as part of this Settlement Agreement and as described in Section 4.5 and this Section 4.6 shall expire on the earliest of the following dates: (i) the date upon which there are changes to any applicable statute, regulation, pronouncement, guidance, or other law that Defendants reasonably believe would require a modification to any of such Products' labeling in order to comply with the applicable statute, regulation, pronouncement, guidance, or other law; or (ii) the date upon which there are any changes to any applicable federal or state statutes or regulations that would allow Defendants to label the Product "natural" or "naturally derived" without the labeling modifications and restrictions set forth in this Agreement, including but not limited to changes in U.S. Food and Drug Administration ("FDA"), Federal Trade Commission ("FTC"), U.S. Department of Agriculture ("USDA"), U.S. Environmental Protection Agency ("EPA"), and other state or federal governmental agencies' regulations, guidance, or pronouncements.

4.7    **Permitted Conduct**

(a)    Subject to the requirements to modify its labeling and marketing of the Products set forth in this Agreement, Defendants shall be permitted to label, market, and advertise their Products using the following language: "natural," "naturally derived," "hypoallergenic," and/or "non-toxic."

(b)    Nothing in this Agreement shall prohibit or limit Defendants' right or ability to use or permit others to use, in accordance with all applicable laws and regulations, their licenses, logos, taglines, product descriptors, or registered trademarks.

(c)    Nothing in this Agreement shall preclude Defendants from making claims in accordance with applicable FDA, FTC and EPA regulations.

(d)    The Parties specifically acknowledge that product packaging often changes. Nothing in this Agreement shall require Defendants to continue to use the current trademarks, taglines, and descriptions of its Products, and nothing in this Agreement shall preclude Defendants from making further disclosures or any labeling, marketing, advertising, or packaging changes that (i) Defendants reasonably believe are necessary to comply with any changes to any applicable statute, regulation, pronouncement, guidance, or other law of any kind (including but not limited to the Federal Food, Drug and Cosmetic Act or regulations of the FDA, USDA, FTC, or EPA and/or state equivalents); (ii) are necessitated by product changes and/or reformulations to ensure that Defendants provide accurate product descriptions; or (iii) do not materially differ from the taglines and product descriptions agreed to in this Agreement.

## V.    NOTICE TO CLASS AND ADMINISTRATION OF PROPOSED SETTLEMENT

5.1    **Duties and Responsibilities of the Settlement Administrator**

Class Counsel and Defendants recommend and retain Angeion Group to be the Settlement Administrator for this Agreement. The Settlement Administrator shall abide by and shall administer the Settlement in accordance with the terms, conditions, and obligations of this Class Settlement Agreement and the orders issued by the Court in this Action.

(a)    **Class Notice Duties**. The Settlement Administrator shall, in cooperation with the Parties, be responsible for consulting on and designing the Class Notice, Summary Class Notice, and Claim Form. After the Court's Preliminary Approval of this Agreement and appointment of the Settlement Administrator, the Settlement Administrator shall also be responsible for disseminating the Class Notice, substantially in the form as described in the Notice Plan attached as Exhibit C to this Agreement, as specified in the Preliminary Approval Order, and as specified in this Agreement. The Class Notice and Summary Class Notice will comply with all applicable laws, including, but not limited to, the Due Process Clause of the United States Constitution.  Class Notice duties include, but are not limited to:

(i)    consulting on, drafting, and designing the Class Notice, Summary Class Notice, and Claim Form.  Class Counsel and Defendants' Counsel shall have input and joint approval rights, which shall not be unreasonably withheld, over these notices and the Claim Form or any changes to the notices and the Claim Form;

(ii)    developing a Notice Plan, attached as Exhibit C to this Agreement.  Class Counsel and Defendants' Counsel shall have input and joint approval

rights, which shall not be unreasonably withheld, over this Notice Plan or changes to this Notice Plan;

(iii)   implementing and arranging for the publication of the Summary Settlement Notice and Class Notice via various forms of electronic media, including implementing media purchases, all in substantial accordance with the Notice Plan, attached as Exhibit C.  To the extent that the Settlement Administrator believes additional or different notice should be undertaken than that provided for in the Notice Plan, Class Counsel and Defendants' Counsel shall have input and joint approval rights, which shall not be unreasonably withheld, over any additional or different notice;

(iv)   establishing and publishing a website that contains the Class Notice and related documents, including a Claim Form capable of being completed and submitted online.  The website, including the Class Notice, shall remain available for 120 days after the Effective Date;

(v)   sending the Class Notice and related documents, including a Claim Form, via electronic mail or regular mail, to any potential member of the Settlement Class who so requests;

(vi)   responding to requests from Class Counsel and Defendants' Counsel; and

(vii)   otherwise implementing and assisting with the dissemination of the notice of the Settlement.

(b)   **Class Action Fairness Act Notice Duties to State and Federal Officials**.  No later than ten (10) calendar days after this Agreement is filed with the Court,

Defendants shall mail or cause the items specified in 28 U.S.C. § 1715(b) to be mailed to each state and federal official, as specified in 28 U.S.C. § 1715(a).

        (c)    **Claim Processing Duties**.  The Settlement Administrator shall be responsible for Claim processing and related administrative activities, including communications with members of the Settlement Class concerning the Settlement, the Claim process, and the options they have.  Claim processing duties include, but are not limited to:

        (i)    executing any mailings required under the terms of this Agreement;

        (ii)    establishing a toll-free voice response unit to which members of the Settlement Class may refer for information about the Action and the Settlement;

        (iii)    establishing a Post Office box for the receipt of Claim Forms, exclusion requests, and any correspondence;

        (iv)    receiving and maintaining on behalf of the Court all correspondence from any member of the Settlement Class regarding the Settlement, and forwarding inquiries from members of the Settlement Class to Class Counsel or its designee for a response, if warranted; and

        (v)    receiving and maintaining on behalf of the Court any correspondence with members of the Settlement Class regarding any objections, opt-out requests, exclusion forms, or other requests to exclude himself or herself from the Settlement, and providing to Class Counsel and Defendants' Counsel a copy within five (5) calendar days of receipt. If the Settlement Administrator receives any such forms or requests after the deadline for the submission of such forms and requests, the Settlement Administrator shall promptly provide Class Counsel and Defendants' Counsel with copies.

(d)     **Claim Review Duties.**     The Settlement Administrator shall be responsible for reviewing and approving Claim Forms in accordance with this Agreement. Claim review duties include, but are not limited to:

(i)     reviewing each Claim Form submitted to determine whether each Claim Form meets the requirements set forth in this Agreement and whether it should be allowed, including determining whether a Claim Form submitted by any member of the Settlement Class is timely, complete, and valid;

(ii)     working with members of the Settlement Class who submit timely claims to try to cure any Claim Form deficiencies;

(iii)     using all reasonable efforts and means to identify and reject duplicate and/or fraudulent claims, including, without limitation, maintaining a database of all Claim Form submissions;

(iv)     keeping an accurate and updated accounting via a database of the number of Claim Forms received, the amount claimed on each Claim Form, the name and address of the members of the Settlement Class who made the claim, the type of claim made, whether the claim has any deficiencies, and whether the claim has been approved as timely and valid; and

(v)     otherwise implementing and assisting with the claim review process and payment of the claims, pursuant to the terms and conditions of this Agreement.

(e)     **Periodic Updates.**     The Settlement Administrator shall provide periodic updates to Class Counsel and Defendants' Counsel regarding Claim Form submissions beginning within seven (7) calendar days after the commencement of the dissemination of the Class Notice or the Summary Settlement Notice and continuing on a

weekly basis thereafter and shall provide such an update at least ten (10) business days before the Final Approval hearing. The Settlement Administrator shall also provide such updates to Class Counsel or Defendants' Counsel upon request, within a reasonable amount of time.

(f)     **Claim Payment Duties**.   The Settlement Administrator shall be responsible for sending payments to all eligible members of the Settlement Class with valid, timely, and approved claims pursuant to the terms and conditions of this Agreement. Claim payment duties include, but are not limited to:

(i)     Within seven (7) days of the Effective Date, provide a report to Class Counsel and Defendants' Counsel calculating the amount and number of valid and timely claims that requested refunds, including any to be paid pursuant to the Residual Funds described in Section 4.4;

(ii)     Pursuant to Sections 4.3, 4.4, and 4.5, once the Settlement Fund has been funded, sending checks to members of the Settlement Class who submitted timely, valid, and approved Claim Forms;

(iii)     Once payments to the Settlement Class have commenced, pursuant to the terms and conditions of this Agreement, the Settlement Administrator shall provide a regular accounting to Class Counsel and Defendants' Counsel that includes but is not limited to the number and the amount of claims paid.

(g)     **Reporting to Court**.  Not later than ten (10) calendar days before the date of the Fairness Hearing, the Settlement Administrator and Notice Administrator shall file a declaration or affidavit with the Court that: (i) includes a list of those persons who have

opted out or excluded themselves from the Settlement; and (ii) describes the scope, methods, and results of the notice program.

(h)     **Duty of Confidentiality**.  The Settlement Administrator shall treat any and all documents, communications, and other information and materials received in connection with the administration of the Settlement as confidential and shall not use or disclose any or all such documents, communications, or other information to any person or entity, except to the Parties or as provided for in this Agreement or by Court Order.

(i)     **Right to Inspect**.  Class Counsel and Defendants' Counsel shall have the right to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

(j)     **Failure to Perform**.  If the Settlement Administrator misappropriates any funds from the Settlement Fund or makes a material or fraudulent misrepresentation to, or conceals requested material information from, Class Counsel, Defendants, or Defendants' Counsel, then the Party who discovers the misappropriation or concealment or to whom the misrepresentation is made shall, in addition to any other appropriate relief, have the right to demand that the Settlement Administrator immediately be replaced.  If the Settlement Administrator fails to perform adequately on behalf of the Parties, the Parties may agree to remove the Settlement Administrator.  Neither Party shall unreasonably withhold consent to remove the Settlement Administrator.  The Parties will attempt to resolve any disputes regarding the retention or dismissal of the Settlement Administrator in good faith. If unable to so resolve a dispute, the Parties will refer the matter to the Court for resolution.

## VI.    OBJECTIONS AND REQUESTS FOR EXCLUSION

6.1    A member of the Settlement Class may either object to this Agreement pursuant to Section 6.2 or request exclusion from this Agreement pursuant to Section 6.3.

6.2    Members of the Settlement Class shall have the right to object to this Settlement and to appear and show cause, if they have any reason why the terms of this Agreement should not be given Final Approval, pursuant to this paragraph:

(a)    A member of the Settlement Class may object to this Agreement either on his or her own without an attorney, or through an attorney hired at his or her own expense.

(b)    Any objection to this Agreement must be in writing, signed by the objecting member of the Settlement Class (and his or her attorney, if individually represented, including any former or current counsel who may be entitled to compensation for any reason related to the objection), filed with the Court, with a copy delivered to Class Counsel and Defendants' Counsel at the addresses set forth in the Class Notice, no later than thirty (30) days before the Fairness Hearing.

(c)    Any objection regarding or related to this Agreement shall contain a caption or title that identifies it as "Objection to Class Settlement in *Vincent v. People Against Dirty, PBC* (S.D.N.Y. No. 7-16-cv-06936)."

(d)    Any objection regarding or related to this Agreement shall contain information sufficient to identify and contact the objecting member of the Settlement Class (or his or her individually-hired attorney, if any), as well as a specific, clear and concise statement of his or her objection, the facts supporting the objection, the legal grounds and authority on which the objection is based, and whether he or she intends to appear at the Final Approval Hearing, either with or without counsel.

-34-

(e)     Any objection shall include documents sufficient to establish the basis for the objector's standing as a member of the Settlement Class, such as (i) a declaration signed by the objector under penalty of perjury, with language similar to that included in the Claim Form attached hereto as Exhibit A, including a statement that the member of the Settlement Class purchased at least one of the Products during the Class Period; or (ii) receipt(s) reflecting such purchase(s).

(f)     Any objection shall also include a detailed list of any other objections submitted by the Settlement Class member, or his or her counsel, to any class action submitted in any court, whether state or otherwise, in the United States in the previous five (5) years.  If the Settlement Class member or his or her counsel has not objected to any other class action settlement in any court in the United States in the previous five (5) years, he or she shall affirmatively state so in the written materials provided in connection with the objection to this Settlement.

(g)     Class Counsel and Defendants shall have the right to respond to any objection no later than seven (7) days prior to the Fairness Hearing. The Party so responding shall file a copy of the response with the Court, and shall serve a copy, by regular mail, hand or overnight delivery, to the objecting member of the Settlement Class or to the individually-hired attorney for the objecting member of the Settlement Class; to Class Counsel; and to Defendants' Counsel.

(h)     If an objecting member of the Settlement Class chooses to appear at the hearing, no later than fifteen (15) days before the Fairness Hearing, a Notice of Intention to Appear, either In Person or Through an Attorney, must be filed with the Court, listing the name, address and telephone number of the attorney, if any, who will appear.

(i)     Any Settlement Class Member who fails to file and serve timely a written objection and notice of his/her intent to appear at the Final Approval Hearing pursuant to this Section shall not be permitted to object to the Settlement and shall be foreclosed from seeking any review of the Settlement or the terms of the Agreement by any means, including but not limited to an appeal.

6.3     **Requests for Exclusion**.  Members of the Settlement Class shall have the right to elect to exclude themselves, or "opt out," of the monetary portion of this Settlement, relinquishing their rights to cash compensation under this Class Settlement Agreement and preserving their claims for damages that accrued during the Class Period, pursuant to this paragraph:

(a)     A member of the Settlement Class wishing to opt out of this Agreement must send to the Settlement Administrator by U.S. Mail a personally signed letter including his or her name and address, and providing a clear statement communicating that he or she elects to be excluded from the Settlement Class.

(b)     Any request for exclusion or opt out must be postmarked on or before the opt-out deadline date specified in the Preliminary Approval Order, which shall be no later than thirty (30) calendar days before the Final Approval Hearing (the Opt-Out Deadline). The date of the postmark on the return-mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted.

(c)     The Settlement Administrator shall forward copies of any written requests for exclusion to Class Counsel and Defendants' Counsel, and shall file a list reflecting all requests for exclusion with the Court no later than ten (10) calendar days before the Settlement Hearing.

(d)     The request for exclusion must be personally signed by the member of the Settlement Class.

6.4     Any member of the Settlement Class who does not file a timely written request for exclusion as provided in the preceding Section 6.3 shall be bound by all subsequent proceedings, orders, and judgments, including, but not limited to, the Release in this Action, even if he or she has litigation pending or subsequently initiates litigation against one or both Defendants relating to the claims and transactions released in this Action.

6.5     Any member of the Settlement Class who does not request exclusion from the Settlement has the right to object to the Settlement.  Members of the Settlement Class may not both object to and opt out of the Settlement.  Any member of the Settlement Class who wishes to object must timely submit an objection as set forth in Section 6.2 above. If a member of a Settlement Class submits both an objection and a written request for exclusion, he or she shall be deemed to have complied with the terms of the procedure for requesting exclusion as set forth in Section 6.3 and shall not be bound by the Agreement if approved by the Court, and the objection will not be considered by the Court.

## VII.   RELEASES

7.1     Upon the Effective Date of this Class Settlement Agreement, Plaintiffs and each member of the Settlement Class, and each of their successors, assigns, heirs, and personal representatives, shall be deemed to have, and by operation of the Order and Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons. The Released Claims shall be construed as broadly as possible to effect complete finality over this litigation involving the advertising, labeling, and marketing of the Products as set forth herein.

7.2     In addition, with respect to the subject matter of this Action, by operation of entry of the Final Order and Judgment, Plaintiffs and each member of the Settlement Class, and each of their respective successors, assigns, legatees, heirs, and personal representatives, expressly waive any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases of unknown claims, including, without limitation, Section 1542 of the California Civil Code, which provides:

> A General Release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

In addition to the foregoing, by operation of entry of the Final Order and Judgment, Plaintiffs and each member of the Settlement Class shall be deemed to have waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or any foreign country, and any and all principles of common law that are similar, comparable, or equivalent in substance or intent to Section 1542 of the California Civil Code.

7.3     Plaintiffs understand that the facts upon which this Class Settlement Agreement is executed may hereafter be other than or different from the facts now believed by Plaintiffs and Class Counsel to be true and nevertheless agree that this Class Settlement Agreement and the Release shall remain effective notwithstanding any such difference in facts.

7.4     To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement, including but not limited to any Related Actions, or any other action or

claim that arises out of the same factual predicate or same set of operative facts as this Action.

7.5     Class Enjoined: On the Effective Date, all members of the Settlement Class who did not opt out of the Settlement Class (and any person or entity claiming by or through him, her, or it, as heir, administrator, devisee, predecessor, successor, attorney, representative of any kind, shareholder, partner, director or owner of any kind, affiliate, subrogee, assignee, or insurer) will be forever barred and permanently enjoined from directly, indirectly, representatively or in any other capacity, filing, commencing, prosecuting, continuing, litigating, intervening in, participating in as class members or otherwise, or receiving any benefits or other relief from any other lawsuit, whether individually or on behalf of or as a member of any class, any other arbitration, or any other administrative, regulatory, or other proceeding against Defendants (and Defendants' current and former parents, subsidiaries, affiliates and controlled companies, officers, directors, members, managers, shareholders, employees, predecessors, successors, assigns, agents, and attorneys) that arises out of or relates to the Released Claims; and all persons and entities shall be forever barred and permanently enjoined from filing, commencing, or prosecuting any other lawsuit, whether individually or as a class action, against Defendants (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) on behalf of Settlement Class members who have not timely opted out of the Settlement Class if such other lawsuit arises from or otherwise relates to the Released Claims.

## VIII.   ATTORNEYS' FEES AND EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARDS

8.1     Class Counsel agrees to make, and Defendants agree not to oppose, an application for an award of Attorneys' Fees and Expenses in the Action that will not exceed an amount equal

to one third (33.33…%) of the Settlement Fund of Two Million Eight Hundred Thousand Dollars ($2,800,000.00).   This amount shall be paid from the Settlement Fund and shall be the sole aggregate compensation paid by Defendants for Class Counsel representing the Class. The ultimate award of Attorneys' Fees and Expenses will be determined by the Court.

8.2    Class Counsel, in its sole discretion, shall allocate and distribute the Court's award of Attorneys' Fees and Expenses.  Class Counsel shall indemnify Defendants and their attorneys against any disputes among Class Counsel, including lawyers working at the direction of or in conjunction with Class Counsel, relating to the allocation and distribution of Class Counsel's Attorneys' Fees and Expenses.

8.3    Class Counsel agrees that any award of Attorneys' Fees and Expenses will be sought solely and exclusively in the Action. Class Counsel agrees that they will not seek or accept more than Nine Hundred Thirty-Three Thousand, Three Hundred Thirty-Three Dollars ($933,333.00) in Attorneys' Fees and Expenses.

8.4    Defendants will not appeal from any order with respect to the award of Attorneys' Fees and Expenses provided that the order does not award Attorneys' Fees and Expenses in excess of the amount stated in Section 8.1. Defendants shall have the right to appeal in the event of an award of Attorneys' Fees and Expenses in excess of such amount. Defendants shall also have the right to withdraw from the Class Settlement Agreement in the event of an award of Attorneys' Fees and Expenses to Class Counsel that is in excess of such amount.

8.5    Within thirty-five (35) days after the entry of the Final Approval, the Notice Administrator shall cause the Attorneys' Fees and Expenses awarded by the Court to be paid to Class Counsel as directed by Class Counsel. In the event the Effective Date does not occur, all

amounts paid to Class Counsel as Attorneys' Fees and Expenses awarded by the Court shall be promptly returned to Defendants.

8.6     Within five (5) days after the Effective Date, the Settlement Fund shall pay Service Awards of Two Thousand Five Hundred Dollars ($2,500.00) to each of the named Plaintiffs: Wesley Vincent, Noelle Morgante, Daniel Richman, and Ashley Peluchette.

## IX.     NO ADMISSION OF LIABILITY

9.1     Defendants have denied and continue to deny that the labeling, advertising, or marketing of the Products is false, deceptive, or misleading to consumers or violates any legal requirement, including but not limited to the allegations that Defendants engaged in unfair, unlawful, fraudulent, or deceptive trade practices, breached any implied or express warranty, were unjustly enriched or engaged in negligent misrepresentation, or violated the Magnuson Moss Warranty Act or any other statute, regulation, or common law or industry standard. Defendants are entering into this Class Settlement Agreement solely because it will eliminate the uncertainty, distraction, burden, and expense of further litigation. The provisions contained in this Class Settlement Agreement and the manner or amount of relief provided to members of the Settlement Class herein shall not be deemed a presumption, concession, or admission by Defendants of any fault, liability, or wrongdoing as to any facts or claims that have been or might be alleged or asserted in the Action, or in any other action or proceeding that has been, will be, or could be brought, and shall not be interpreted, construed, deemed, invoked, offered, or received into evidence or otherwise used by any person in any action or proceeding, whether civil, criminal, or administrative, for any purpose other than as provided expressly herein.

9.2     In the event that the Court does not approve this Class Settlement Agreement substantially in the form submitted (or in a modified form mutually acceptable to the Parties), or this Class Settlement Agreement is terminated or fails to become effective or final in accordance

with its terms, Plaintiffs and Defendants shall be restored to their respective positions in the Action as of the date hereof. In such event, the terms and provisions of this Class Settlement Agreement shall have no further force and effect and shall not be used in the Action or in any other proceeding or for any purpose, and the Parties will jointly make an application requesting that any judgment entered by the Court in accordance with the terms of this Class Settlement Agreement shall be treated as vacated, *nunc pro tunc*.

9.3    By entering into this Class Settlement Agreement, Defendants are not consenting to or agreeing to certification of the Settlement Class for any purpose other than to effectuate the settlement of the Action. The Parties agree that if the Court does not approve this Class Settlement Agreement substantially in the form submitted (or in a modified form mutually acceptable to the Parties), including, without limitation, if the Court grants a fee application that would cause the total award for Attorneys' Fees and Expenses to Class Counsel to exceed Nine Hundred Thirty-Three Thousand, Three Hundred Thirty-Three Dollars  ($933,333.00), or if this Class Settlement Agreement is terminated or fails to become effective or final in accordance with its terms, the Action shall proceed as if no Party had ever agreed to such settlement, without prejudice to the right of any Party to take any and all action of any kind in the Action.

## X.    ADDITIONAL PROVISIONS

10.1    Plaintiffs and Class Counsel warrant and represent to Defendants that they have no present intention of initiating any other claims or proceedings against Defendants or any of Defendants' affiliates, or any entity that manufactures, distributes, or sells the Products or any other product that is marketed or labeled using the People Against Dirty, Method or Ecover brand name, and, except for the claims hereby settled, Plaintiffs and Class Counsel warrant and represent to Defendants that they have no present knowledge and are not presently aware of any

factual or legal basis for any such claims or proceedings, other than claims or proceedings that may already be pending against Defendants.

10.2    The Parties agree that information and documents exchanged in negotiating this Settlement Agreement were so exchanged pursuant to Federal Rule of Evidence 408, and no such confidential information exchanged or produced by either side may be used for or revealed for any other purpose than this Settlement. This does not apply to publicly available information or documents.

10.3    The Parties agree to return or dispose of confidential documents and information exchanged in negotiating this Settlement Agreement within fifteen (15) days of the Effective Date. This does not apply to publicly available information or documents.

10.4    The Parties agree that the terms of the Class Settlement Agreement were negotiated at arm's length and in good faith by the Parties and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

10.5    The Parties and their respective counsel agree to use their best efforts and to cooperate fully with one another (i) in seeking preliminary and final Court approval of this settlement, and (ii) in effectuating the full consummation of the settlement provided for herein.

10.6    Each counsel or other person executing this Class Settlement Agreement on behalf of any Party hereto warrants that such person has the authority to do so.

10.7    This Class Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument. Executed counterparts shall be deemed valid if delivered by mail, courier, electronically, or by facsimile.

10.8    This Class Settlement Agreement shall be binding upon and inure to the benefit of the settling Parties (including all members of the Settlement Class), their respective agents, attorneys, insurers, employees, representatives, officers, directors, partners, divisions, subsidiaries, affiliates, associates, assigns, heirs, successors in interest, and shareholders, and any trustee or other officer appointed in the event of a bankruptcy, as well as to all Released Persons as defined in Section 2.29. The waiver by any Party of a breach of this Class Settlement Agreement by any other Party shall not be deemed a waiver of any other breach of this Class Settlement Agreement.

10.9    This Class Settlement Agreement and any exhibits attached to it constitute the entire agreement between the Parties hereto and supersede any prior agreements or understandings, whether oral, written, express, or implied between the Parties with respect to the settlement.

10.10   No amendment, change, or modification of this Class Settlement Agreement or any part thereof shall be valid unless in writing, signed by all Parties and their counsel, and approved by the Court.

10.11   The Parties to this Class Settlement Agreement each represent to the other that they have received independent legal advice from attorneys of their own choosing with respect to the advisability of making the settlement provided for in this Class Settlement Agreement, and with respect to the advisability of executing this Class Settlement Agreement, that they have read this Class Settlement Agreement in its entirety and fully understand its contents, and that each is executing this Class Settlement Agreement as a free and voluntary act.

10.12   Except as otherwise provided herein, all notices, requests, demands, and other communications required or permitted to be given pursuant to this Class Settlement Agreement

shall be in writing and shall be delivered personally, by facsimile, by e-mail, or by overnight mail, to the undersigned counsel for the Parties at their respective addresses.

10.13   The titles and captions contained in this Class Settlement Agreement are inserted only as a matter of convenience and for reference, and shall in no way be construed to define, limit, or extend the scope of this Class Settlement Agreement or the intent of any of its provisions. This Class Settlement Agreement shall be construed without regard to its drafter, and shall be construed as though the Parties participated equally in the drafting of it.

10.14   The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Class Settlement Agreement and the Parties to the Class Settlement Agreement submit to the jurisdiction of the Court for those purposes.

10.15   To the extent Class Counsel wish to issue any general or public communication about the settlement, any such public statement shall be limited to publicly available information and documents filed in this action and/or made in a form mutually agreed upon by Class Counsel and Defendants' Counsel.

**IN WITNESS WHEREOF**, People Against Dirty, PBC, Method Products, PBC, and Wesley Vincent, Noelle Morgante, Daniel Richman, and Ashley Peluchette, on behalf of themselves and all others similarly situated, intending to be legally bound hereby, have duly executed this Class Settlement Agreement as of the date set forth below, along with their counsel.

-45-

Dated: _____          By: _____
                                  Plaintiff Wesley Vincent


Dated: _____          By: _____
                                  Plaintiff Noelle Morgante


Dated: _____          By: _____
                                  Plaintiff Daniel Richman


Dated: _____          By: _____
                                  Plaintiff Ashley Peluchette


Dated: 12/6/2016                  METHOD PRODUCTS, PBC
                                  By: _____
                                  Paul Yee
                                  Chief Financial Officer


Dated: 12/6/2016                  PEOPLE AGAINST DIRTY, PBC
                                  By: _____
                                  Paul Yee
                                  Chief Financial Officer


                                  THE SULTZER LAW GROUP
Dated: _____          By: _____
                                  Jason P. Sultzer
                                  Attorneys for Plaintiffs


                                  EGGNATZ, LOPATIN & PASCUCCI, LLP
Dated: _____          By: _____
                                  Joshua Eggnatz
                                  Attorneys for Plaintiffs


Agreed as to Form


                                  ARNOLD & PORTER, LLP
Dated: _____          By: _____
                                  Trenton H. Norris
                                  Attorneys for Defendants

-46-

Dated: _____        By: _____
                                       Plaintiff Wesley Vincent

Dated: _____        By: _____
                                       Plaintiff Noelle Morgante

Dated: _____        By: _____
                                       Plaintiff Daniel Richman

Dated: _____        By: _____
                                       Plaintiff Ashley Peluchette

Dated: _____        METHOD PRODUCTS, PBC
                                       By: _____
                                       Paul Yee
                                       Chief Financial Officer

Dated: _____        PEOPLE AGAINST DIRTY, PBC
                                       By: _____
                                       Paul Yee
                                       Chief Financial Officer

Dated: _____        THE SULTZER LAW GROUP
                                       By: _____
                                       Jason P. Sultzer
                                       Attorneys for Plaintiffs

Dated: _____        EGGNATZ, LOPATIN & PASCUCCI, LLP
                                       By: _____
                                       Joshua Eggnatz
                                       Attorneys for Plaintiffs

Agreed as to Form

Dated: ___12/6/16___                   ARNOLD & PORTER, LLP
                                       By: _____
                                       Trenton H. Norris
                                       Attorneys for Defendants

-46-

Dated: 12/12/16

By: _____
Plaintiff Wesley Vincent

Dated: 12/12/16

By: _____
Plaintiff Noelle Morgante

Dated: _____

By: _____
Plaintiff Daniel Richman

Dated: _____

By: _____
Plaintiff Ashley Peluchette

Dated: _____

METHOD PRODUCTS, PBC
By: _____
Paul Yee
Chief Financial Officer

Dated: _____

PEOPLE AGAINST DIRTY, PBC
By: _____
Paul Yee
Chief Financial Officer

Dated: 12/12/16

THE SULTZER LAW GROUP
By: _____
Jason P. Sultzer
Attorneys for Plaintiffs

Dated: _____

EGGNATZ, LOPATIN & PASCUCCI, LLP
By: _____
Joshua Eggnatz
Attorneys for Plaintiffs

Agreed as to Form

Dated: _____

ARNOLD & PORTER, LLP
By: _____
Trenton H. Norris
Attorneys for Defendants

-46-

Dated: _____      By: _____
                                       Plaintiff Wesley Vincent


Dated: _____      By: _____
                                       Plaintiff Noelle Morgante


Dated: _____      By: _____
                                       Plaintiff Daniel Richman


Dated: _____      By: _____
                                       Plaintiff Ashley Peluchette


                                       METHOD PRODUCTS, PBC

Dated: _____      By: _____
                                       Paul Yee
                                       Chief Financial Officer


                                       PEOPLE AGAINST DIRTY, PBC

Dated: _____      By: _____
                                       Paul Yee
                                       Chief Financial Officer


                                       THE SULTZER LAW GROUP

Dated: _____      By: _____
                                       Jason P. Sultzer
                                       Attorneys for Plaintiffs


                                       EGGNATZ, LOPATIN & PASCUCCI, LLP

Dated: __12/6/2016__                   By: _____
                                       Joshua Eggnatz
                                       Attorneys for Plaintiffs

-46-

Dated: _____     By: _____
                                      Plaintiff Wesley Vincent


Dated: _____     By: _____
                                      Plaintiff Noelle Morgante


Dated: 12/6/16 _____     By: _____
                                      Plaintiff Daniel Richman


Dated: _____     By: _____
                                      Plaintiff Ashley Peluchette


                                      METHOD PRODUCTS, PBC

Dated: _____     By: _____
                                      Paul Yee
                                      Chief Financial Officer


                                      PEOPLE AGAINST DIRTY, PBC

Dated: _____     By: _____
                                      Paul Yee
                                      Chief Financial Officer


                                      THE SULTZER LAW GROUP

Dated: _____     By: _____
                                      Jason P. Sultzer
                                      Attorneys for Plaintiffs


                                      EGGNATZ, LOPATIN & PASCUCCI, LLP

Dated: _____     By: _____
                                      Joshua Eggnatz
                                      Attorneys for Plaintiffs


-46-

Dated: _____     By: _____
                                      Plaintiff Wesley Vincent


Dated: _____     By: _____
                                      Plaintiff Noelle Morgante


Dated: _____     By: _____
                                      Plaintiff Daniel Richman


Dated: 12/6/16                        By: _____
                                      Plaintiff Ashley Peluchette


                                      METHOD PRODUCTS, PBC


Dated: _____     By: _____
                                      Paul Yee
                                      Chief Financial Officer


                                      PEOPLE AGAINST DIRTY, PBC


Dated: _____     By: _____
                                      Paul Yee
                                      Chief Financial Officer


                                      THE SULTZER LAW GROUP


Dated: _____     By: _____
                                      Jason P. Sultzer
                                      Attorneys for Plaintiffs


                                      EGGNATZ, LOPATIN & PASCUCCI, LLP


Dated: _____     By: _____
                                      Joshua Eggnatz
                                      Attorneys for Plaintiffs

*Vincent, at al. v. People Against Dirty, PBC, et al.*

## Stipulation of Settlement

## EXHIBIT A
## Claims Form

**IMPORTANT LEGAL MATERIALS**

| CLAIM FORM |
|:---:|

## <u>GENERAL INSTRUCTIONS</u>

**Settlement Class Members who seek payment from the Settlement must complete and return this Claim Form.**  Completed Claim Forms must be mailed to the Settlement Administrator at _____ or can be submitted via the Settlement website, www.MPPSettlement.com.  **Claim Forms must be POSTMARKED OR SUBMITTED ONLINE NO LATER THAN** _____ ___, **2017 at 11:59 pm, eastern time or they <u>will be rejected.</u>**

Before you complete and submit this Claim Form by mail or online, you should read and be familiar with the Notice of Proposed Class Action Settlement (the "Notice") and the Settlement Agreement available at www.MPPSettlement.com.  Defined terms (with initial capitals) used in these General Instructions have the same meaning as set forth in the Notice and Settlement Agreement.  By submitting this Claim Form, you acknowledge that you have read and understand the Notice, and you agree to the Release included as a material term of the Settlement Agreement.

<u>If you fail to submit a timely Claim Form, your claim will be rejected</u> and you will be precluded from any recovery from the Settlement Fund.  If you are a member of the Settlement Class and you do not timely and validly seek exclusion from the Settlement Class, you will be bound by any judgment entered by the Court approving the Settlement even if you do not submit a Claim Form.  To receive the most current information and regular updates, please submit your Claim Form on the settlement website at www. MMPSettlement.com.  On the settlement website, you will also be able to submit your web claim.

SECTION A: Claimant Information

SECTION B:  For Each Product you may choose to fill out sections B1 or B2 (but not both), and you may also choose to fill out section C.  However, you may not include the same purchases in more than one section.

SECTION B1:  Include in Section B1 of this Claim Form the type(s), number of Products purchased and approximate dates of purchase.  You may claim up to four Products in this section.  *If you claim products in this section you may not claim products in Section B2.*  You may also claim additional Products in Section C (with proof of purchase) but you may not include the same purchases in more than one section.

SECTION B2:  Include in Section B2 of this Claims Form the type(s), number of Products purchased, location, approximate dates of purchase, fragrance, satisfaction with the Product, and reason for purchasing the product. You may claim up to eight Products total under this Section.  *If you claim products in this section you may not claim products in Section B1.*  You may also claim additional Products in Section C (with proof of purchase) but you may not include the same purchases in more than one section.

SECTION C:  Include in Section C of this Claim Form purchases of Products you made during the Class Period, along with documentation reasonably demonstrating proof of purchase.  Proof of purchase means a receipt or other documentation reasonably establishing the fact of purchase, such as a loyalty/membership card print-out, or picture of UPC code for each purchased product during the Settlement Class Period in the United States.

SECTION D:  Certification Under Penalty of Perjury.

### Claim Form Reminder Checklist
### Before Submitting this Claim Form, please make sure you:

1.  Complete all fields in Section A of this Claims Form.

2.  Complete Sections B and C to report the products you purchased.  You may choose Section B1 or B2, but not both.  Do not include the same purchases in more than one section.

3.  YOU MUST sign the certification under penalty of perjury in Section D of this Claim Form.

37351755v4

| | |
|---|---|
| **SECTION A.  Claimant Information** | |

Claimant Name: _____   _____   _____
                 First Name                            MI      Last Name

Street Address: _____

Street Address2: _____

City: _____   State: _____   Zip Code: _____

Daytime Phone Number: ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

Evening Phone Number: ( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___

E-mail Address: _____

| |
|---|
| **SECTION B.  No Proof of Purchase** |

Complete this section if you do not have a Proof of Purchase.  You may complete Section B1 or B2 but not both. You may also complete Section C, but do not include the same purchases in more than one section.

| |
|---|
| **Section B1** |

The actual benefit you will receive will depend upon, among other things, how many Settlement Class Members submit a timely and complete claim form.  You may receive $1.00 per unit, or more or less, depending upon how many claims are actually submitted for up to four units.

| |
|---|
| **Purchase Information** |

1.   Please provide information regarding your purchase of the product:

| Approx. Date Purchased (Month & Year) | Identify Which Product You Purchased |
|---|---|
| | |
| | |
| | |
| | |

37351755v4

**Section B2**

The actual benefit you will receive will depend upon, among other things, how many Settlement Class Members submit a timely and complete claim form.  You may receive $1.00 per unit, or more or less depending upon how many claims are actually submitted up to eight units.  You may complete Section B1 or B2 but not both.  You may also complete Section C, but do not include the same purchases in more than one section.

1.   Please provide information regarding your purchase of the product:

| Approx. Date Purchased (Month & Year) | Retailer | Identify Which Product You Purchased | Fragrance | Satisfaction (1 -5, 5 being extremely satisfied) |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

2.   Please identify the reason(s) you purchased the product (check all that apply):

| | | |
|---|---|---|
| Fragrance: | YES ❏ | NO ❏ |
| Price: | YES ❏ | NO ❏ |
| Quality: | YES ❏ | NO ❏ |
| Ingredients: | YES ❏ | NO ❏ |
| Bottle Design: | YES ❏ | NO ❏ |
| Other: | YES ❏ | NO ❏ |

## SECTION C.  Proof of Purchase

Complete this entire Claim Form and attach proof of purchase for the Products.  You may receive $1.00 per unit, or more or less depending upon how many claims are actually submitted, without limitation.   Proof of purchase means a receipt or other documentation reasonably establishing proof of purchase for the Products purchased during the Settlement Class Period in the United States.  You may complete Section B1 or B2, but do not include the same purchases in more than one section.

1.   Total number of Products purchased during the Class Period for which I am attaching documentation:

2.   Total number of proof of purchase documents attached to this form:

37351755v4

**SECTION D.  Certification Under Penalty of Perjury and Submission to Jurisdiction**

By signing below, you are submitting to the jurisdiction of the U.S. District Court for the Southern District of New York.


I hereby certify under penalty of perjury that:

1.  I have read the Settlement Agreement and agree to its terms, including the Release;

2.  The information provided in this Claim Form is accurate and complete to the best of my knowledge, information and belief;

3.  The additional information provided to the Settlement Administrator to support my claim is an original or a complete and true copy of the original document;

4.  I am a member of the Settlement Class and did not request to be excluded from the Settlement Class;

5.  I have not entered into a settlement for any of the claims set forth in this Claim Form;

6.  I am neither (a) a Person who purchased or acquired the Product for resale; (b) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; (c) a government entity; or (d) a judge to whom this Action is assigned or any member of the judge's immediate family;

7.  I have not submitted any other claim for the same purchases and have not authorized any other person or entity to do so, and know of no other person or entity having done so on my behalf; and

8.  No other person in my Household has submitted a Claim under this Settlement.

9.  I understand that by submitting this claim form, I am deemed to have given a complete release of all settled claims.

10. I understand that claims will be audited for veracity, accuracy and fraud and that invalid or illegible claims forms can be rejected.


Signature: _____     Dated: _____

37351755v4

*Vincent, at al. v. People Against Dirty, PBC, et al.*

**Stipulation of Settlement**

**EXHIBIT B**
**Long Form Notice**

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

# If you purchased certain Method Products, PBC ("MPP") Products
# Between August 1, 2010 and [90 days following Notice]
# You May be Eligible to Receive a Cash Payment from a Class Action Settlement.

### *A Federal Court authorized this notice.  This is not a solicitation from a lawyer.*

- A proposed nationwide Settlement has been reached in a class action lawsuit involving certain METHOD and ECOVER branded products.  The Settlement resolves litigation over whether the Defendant allegedly violated state and federal laws regarding the labeling, marketing, and advertising of certain METHOD and ECOVER branded products.

- You may be eligible to participate in the proposed Settlement, if it is finally approved, if you purchased certain METHOD or ECOVER branded products between August 1, 2010 and [90 days following Notice].

- The Settlement will provide cash payments to those who qualify.  You must file a Claim Form to get a payment from the Settlement.

- Your legal rights are affected whether you act, or don't act.  **Read this notice carefully**.

## YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT

| | |
|---|---|
| **SUBMIT A CLAIM FORM BY XXXXX 2017** | This is the only way to get a payment. |
| **EXCLUDE YOURSELF BY XXXXX 2017** | Get no payment from the Settlement.  This is the only option that allows you to ever be a part of any other lawsuit against the Defendant about the legal claims in this case. |
| **OBJECT BY XXXXX 2017** | Write to the Court about why you think the settlement is unfair, inadequate, or unreasonable. |
| **GO TO A HEARING XXXXX 2017** | Ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | Get no payment.  Give up rights to ever sue the Defendant about the legal claims in this case. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.  The deadlines may be moved, canceled, or otherwise modified, so please check the Settlement Website www.MPPSettlement.com regularly for updates and further details.

- The Court in charge of this case still has to decide whether to approve the Settlement.  Payments will be made if the Court approves the Settlement and after any appeals are resolved.  Please be patient.

# WHAT THIS NOTICE CONTAINS:

**BASIC INFORMATION**
1.     Why is there a notice?
2.     What is this lawsuit about?
3.     Why is this a class action?
4.     Why is there a Settlement?

**WHO IS IN THE SETTLEMENT?**
5.     How do I know if I am in the Settlement?
6.     Which Products are included in the Settlement?
7.     What if I am still not sure if I am included in the Settlement?

**SETTLEMENT BENEFITS**
8.     What does the Settlement provide?
9.     What can I get from the Settlement?
10.    What am I giving up to stay in the Class?

**HOW TO GET A PAYMENT**
11.    How can I get a payment?
12.    When will I get my payment?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**
13.    How do I get out of the Settlement?
14.    If I don't exclude myself, can I sue the Defendant for the same thing later?
15.    If I exclude myself, can I still get a payment?

**OBJECTING TO THE SETTLEMENT**
16.    How can I tell the Court if I do not like the Settlement?
17.    What is the difference between objecting and excluding?

**THE LAWYERS REPRESENTING YOU**
18.    Do I have a lawyer in this case?
19.    How will the lawyers be paid?

**THE COURT'S FAIRNESS HEARING**
20.    When and where will the Court decide whether to approve the Settlement?
21.    Do I have to come to the hearing?
22.    May I speak at the hearing?

**IF YOU DO NOTHING**
23.    What happens if I do nothing at all?

**GETTING MORE INFORMATION**
24.    How do I get more information?

# BASIC INFORMATION

**1.**   **Why is there a notice?**

You have a right to know about a proposed Settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the Settlement.

The Court in charge of this case is the United States District Court for the Southern District of New York (the "Court"), and the case is called *Vincent, et al. v. People Against Dirty, PBC & Method Products, PBC,* Case No. 7:16-cv-06936. The individuals who sued are called the Plaintiffs, and the companies they sued, People Against Dirty, PBC and Method Products, PBC ("Method"), are called the Defendants.

**2.**   **What is this lawsuit about?**

The lawsuit alleges that the Defendants violated certain laws in labeling, marketing, and advertising of certain METHOD and ECOVER branded products. The Defendants deny any and all wrongdoing of any kind whatsoever, and deny any liability to Plaintiffs and to the Settlement Class.

**3.**   **Why is this a class action?**

In a class action, one or more people, called "Class Representatives," sue on behalf of people who have similar claims. All these people are in a "class" or "class members," except for those who exclude themselves from the class.  United States District Court Judge Nelson Stephen Roman in the United States District Court for the Southern District of New York is in charge of this class action.

**4.**   **Why is there a Settlement?**

The Defendants are not admitting that they did anything wrong and both sides want to avoid the cost of further litigation. The Court has not decided in favor of the Plaintiffs or the Defendants.  The Class Representatives and their attorneys think the Settlement is best for everyone who is affected.  The Settlement provides the opportunity for Settlement Class Members to receive Settlement benefits.

# WHO IS IN THE SETTLEMENT?

**5.**   **How do I know if I am in the Settlement?**

The Settlement Class includes all persons and entities who, from August 1, 2010 to [90 days following Notice], both resided in the United States and purchased in the United States any of the METHOD and ECOVER branded products for use and not for resale. Excluded from the Settlement Class are: (a) Defendants' board members or executive-level officers, including its attorneys; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Settlement Class in accordance with the procedures approved by the Court.

**6.**   **Which Products are included in the Settlement?**

The eligible METHOD and ECOVER branded  products in the Settlement include but are  not limited to personal care products, dishwashing products, laundry products, and household products.  For a full list of eligible METHOD and ECOVER branded products in the Settlement, please visit the Settlement Website, www.MPPSettlement.com.

**7.**   **What if I am still not sure if I am included in the Settlement?**

If you are not sure whether you are a Settlement Class Member, or have any other questions about the Settlement Agreement, you should visit the Settlement Website, www.MPPSettlement.com, or call the toll-free number, [insert toll-free number].

## SETTLEMENT BENEFITS

**8.**   **What does the Settlement provide?**

The Settlement provides for the establishment of a Settlement Fund with a value of $2,800,000.00 to pay (1) claims of eligible Settlement Class Members; (2) the costs of Class Notice and administration; (3) Attorneys' Fees and Expenses awarded by the Court; and (4) any Service Award made by the Court to Plaintiffs. Settlement Class Members who timely submit valid Claim Forms are entitled to receive a cash payment from the Settlement Fund.  The actual amount recovered by each Settlement Class Member will not be determined until after the Claim Period has ended and all Claims have been calculated.

**9.**   **What can I get from the Settlement?**

If you submit a valid Claim Form by the deadline, you can get a payment from the Settlement Fund.  If, after subtracting from the Settlement Fund the Service Awards for the Class Representatives, Attorneys' Fees and Expenses, and the costs of Class Notice and administration, the funds remaining in the Settlement Fund are insufficient to pay all of the Approved Claims, then Class Member payments will be reduced proportionately.

If, after the payment of all valid Claims, Notice and Administration costs, Attorneys' Fees and Expenses, and Service Awards, value remains in the Settlement Fund, it shall increase Class Member payments proportionately up to 400% of the Eligible Settlement Class Member's Initial Claim Amount.

**10.**   **What am I giving up to stay in the Class?**

Unless you exclude yourself from the Settlement, you cannot sue the Defendants, continue to sue, or be part of any other lawsuit against the Defendants about the legal issues in this case.  It also means that all of the decisions by the Court will bind you.  The Release is described more fully in the Settlement Agreement and describes exactly the legal claims that you give up if you stay in the Settlement Class.  The Settlement Agreement is available at the Settlement Website, www.MPPSettlement.com.

# HOW TO GET A PAYMENT

**11.**   **How can I get a payment?**

To be eligible to receive a payment from the Settlement, you must complete and submit a timely Claim Form. You can complete and submit your Claim Form online at the Settlement Website, www. MPPSettlement.com. The Claim Form can be downloaded from the Settlement Website, as well.  You can request a Claim Form be sent to you by sending a written request to the Settlement Administrator by mail or email, or by calling toll-free.

**MAIL**:   MPP Class Action
Settlement Administrator
1801 Market Street, Suite 660
Philadelphia, PA 19103

**EMAIL**: info@MPPSettlement.com

**PHONE**: [insert toll-free number]

Please read the instructions carefully, fill out the Claim Form, and mail it postmarked no later than [90 days following Notice] to: MPP Class Action, Settlement Administrator, 1801 Market Street, Suite 660, Philadelphia, PA 19103, or submit your Claim Form online at the Settlement Website, www. MPPSettlement.com, by [90 days following Notice].

If you do not submit a valid Claim Form by the deadline, you will not receive a payment.

**12.**   **When will I get my payment?**

Payments will be mailed to Settlement Class Members who send in valid and timely Claim Forms after the Court grants "final approval" to the Settlement and after any and all appeals are resolved.  If the Court approves the Settlement after a hearing on XXXX, 2017, there may be appeals.  It's always uncertain whether these appeals can be resolved, and

resolving them can take time.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from the Settlement Fund, and you want to keep the right to sue or continue to sue the Defendant on your own about the legal issues in this case, then you must take steps to get out.  This is called excluding yourself—or it is sometimes referred to as "opting out" of the Settlement Class.

**13.  How do I get out of the Settlement?**

To exclude yourself (or "Opt-Out") from the Settlement, you must complete and mail by U.S. Mail to the Settlement Administrator a written request that includes the following:

- Your name and address;
- The name of the case: *Vincent, et al. v. People Against Dirty, PBC, et al.*, *7:16-cv-06936* (S.D.N.Y.);
- A statement that you want to be excluded from this Settlement; and
- Your signature.

You must mail your exclusion request, postmarked no later than XXXX, 2017 to:

MPP Class Action
Settlement Administrator
Attn: Exclusion Requests
1801 Market Street, Suite 660
Philadelphia, PA 19103

If you don't include the required information or submit your request for exclusion on time, you will remain a Settlement Class Member and will not be able to sue the Defendants about the claims in this lawsuit.

**14.  If I don't exclude myself, can I sue the Defendants for the same thing later?**

No.  Unless you exclude yourself, you give up any right to sue the Defendants for the claims that this Settlement resolves.  If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately.  You must exclude yourself from this Settlement Class to continue your own lawsuit.

**15.  If I exclude myself, can I still get a payment?**

No.  You will not get any money from the Settlement if you exclude yourself.  If you exclude yourself from the Settlement, do not send in a Claim Form asking for benefits.

## OBJECTING TO THE SETTLEMENT

**16.  How can I tell the Court if I do not like the Settlement?**

If you are a Class Member, you can object to the Settlement or to Class Counsel's request for Attorneys' Fees and Expenses.  To object, you must send a letter that includes the following:

- Your name, address, telephone number, and, if available, email address;
- The name, address, email address, and telephone number of your lawyer, if you have one, including any former or current counsel who may be entitled to compensation for any reason related to the objection;
- The name of the case: Objection to Class Settlement in  *Vincent, et al. v. People Against Dirty, PBC, et al.*, *7:16-cv-06936* (S.D.N.Y.);
- The reasons you object to the Settlement, accompanied by any legal support for your objection;
- A statement of whether you intend to appear at the Fairness Hearing, either with or without counsel;
- A statement of your membership in the Settlement Class, including all information required by the Claim

Form;

- A detailed list of any other objections submitted by you or your counsel, to any class actions submitted in any court, whether state or otherwise, in the United States in the previous five (5) years, or a statement that you have not objected to any class action settlement in any court in the United States in the previous five (5) years; and

- Your signature and, if you have one, your lawyer's signature.

Your objection, along with any supporting material you wish to submit, must be filed with the Court, with a copy delivered to Class Counsel and Defendant's Counsel no later than XXXXX, 2017 at the following addresses:

| Court | Class Counsel |
|---|---|
| The United States District Court for the Southern District of New York The Hon. Charles L. Brieant Jr. Federal Building and United States Courthouse 300 Quarropas Street White Plains, NY 10601 | Adam Gonnelli Sultzer Law Group 85 Civic Center Plaza Suite 104, Poughkeepsie, NY, 12601 |
| **Defense Counsel** | **Class Counsel** |
| Trenton Norris Arnold & Porter LLP 10th Floor Three Embarcadero Center San Francisco, CA 94111-4024 | Joshua H. Eggnatz Eggnatz, Lopatin & Pascucci, LLP 5400 S. University Drive Suite 417 Davie, FL 33328 |

17. **What is the difference between objecting and excluding?**

Objecting is simply telling the Court that you don't like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is telling the Court that you don't want to be part of the Settlement. If you exclude yourself from the Settlement, you have no basis to object to the Settlement because it no longer affects you.

## THE LAWYERS REPRESENTING YOU

18. **Do I have a lawyer in this case?**

Yes. The Court has appointed lawyers and firms as "Class Counsel," meaning that they were appointed to represent all Class Members: Adam Gonnelli of The Sultzer Law Group and Joshua H. Eggnatz of Eggnatz, Lopatin & Pascucci, LLP.

You will not be charged for these lawyers, they will be paid out of the Settlement Fund. If you want to be represented by your own lawyer, you may hire one at your own expense.

19. **How will the lawyers be paid?**

Class Counsel intends to file a motion on or before XXXX, 2017 seeking $933,333.00 in Attorneys' Fees and Expenses. The fees and expenses awarded by the Court will be paid from the Settlement Fund. The Court will determine the amount of fees and expenses to award. Class Counsel will also request that $2,500.00 be paid from the Settlement Fund to each of the named Plaintiffs who helped the lawyers on behalf of the whole Class.

## THE COURT'S FAIRNESS HEARING

20. **When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing on XXXX, 2017 at 2:00PM at the United States District Court for the Southern District of New York, before the Honorable Nelson S. Roman, United States District Judge, in Courtroom 218, in the

Hon. Charles L. Brieant Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601.

The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www. MPPSettlement.com for updates.  At the Fairness Hearing, the Court will consider whether the Settlement Agreement is fair, reasonable, and adequate.  The Court will also consider how much to pay Class Counsel and the Class Representatives.  If there are objections, the Court will consider them at this time.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long these decisions will take.

**21.**    **Do I have to come to the hearing?**

No.  Class Counsel will answer any questions that the Court may have.  But, you may come at your own expense.  If you send an objection, you don't have to come to Court to talk about it.  As long as you mailed your written objection on time to the proper addresses, the Court will consider it.  You may also pay your own lawyer to attend, but it's not necessary.

**22.**    **May I speak at the hearing?**

Yes.  You may ask the Court for permission to speak at the Fairness Hearing.  To do so, you must send a letter saying that it is your "Notice of Intent to Appear."  In your letter, you must include the following:

- Your name, address, telephone number, and, if available, email address;
- The name, address, email address, and telephone number of any lawyer(s) who will be appearing on your behalf at the Fairness Hearing;
- The name of the case: *Vincent, et al. v. People Against Dirty, PBC, et al.*, *7:16-cv-06936* (S.D.N.Y.); and
- Your signature and, if you have one, your lawyer's signature.

Your Notice of Intent to Appear must be filed with the Court no later than XXXXX, 2017.

# IF YOU DO NOTHING

**23.**    **What happens if I do nothing at all?**

If you do nothing, you will not get a payment from the Settlement.  Unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants about the legal issues in this case, ever again.

# GETTING MORE INFORMATION

**24.**    **How do I get more information?**

This notice summarizes the proposed Settlement.  More details are in the Settlement Agreement.  You can review a complete copy of Settlement Agreement and other information at the Settlement Website, www.MPPSettlement.com. If you have additional questions or want to request a Claim Form, you can visit the Settlement Website, www.MPPSettlement.com. You can also write to the Settlement Administrator by mail or email, or call toll-free.

**MAIL**:    MPP Class Action
Settlement Administrator
1801 Market Street, Suite 660
Philadelphia, PA 19103

**EMAIL**: info@MPPSettlement.com

**PHONE**: [insert toll-free number]

Updates will be posted at www.MPPSettlement.com as information about the Settlement process becomes available.

**PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE CONCERNING THIS CASE.**

*Vincent, at al. v. People Against Dirty, PBC, et al.*

## Stipulation of Settlement

## EXHIBIT C
## Notice Plan

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| Wesley Vincent, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>People Against Dirty, PBC,<br><br>     Defendant. | Case No. 7:16-cv-06936<br><br>**DECLARATION OF STEVEN WEISBROT, ESQ. ON ADEQUACY OF NOTICE PROGRAM** |

## <u>DECLARATION OF STEVEN WEISBROT, ESQ.</u>

STEVEN WEISBROT, ESQ., of full age, hereby declares under penalty of perjury as follows:

1. I am Executive Vice President of Notice & Strategy at the class action notice and Settlement Administration firm Angeion Group, LLC ("Angeion").  I am fully familiar with the facts contained herein based upon my personal knowledge.

2. I have been responsible in whole or in part for the design and implementation of more than one hundred class action administration plans and have taught numerous Accredited Continuing Legal Education courses on the Ethics of Legal Notification in Class Action Settlements, using Digital Media in Class Action Notice Programs, as well as Class Action Claims Administration, generally. Additionally, I am the author of frequent articles on Class Action Notice, Digital Media, Class Action Claims Administration and Notice Design in publications such as *Bloomberg, BNA Class Action Litigation Report*, Law360, the ABA Class Action and Derivative Section Newsletter and private law firm publications.

3. Prior to joining Angeion's executive team, I was employed as Director of Class Action services at Kurtzman Carson Consultants ("KCC"), a nationally recognized class action notice and settlement administrator. Prior to my notice and claims administration experience, I was employed

in private law practice and I am currently an attorney in good standing in the State of New Jersey and the Commonwealth of Pennsylvania.

4.      My notice work comprises a wide range of class actions that includes product defect, false advertising, employment, antitrust, tobacco, banking, firearm, insurance, and bankruptcy cases. Likewise, I have been instrumental in infusing digital and social media, as well as big data and advanced targeting into class action notice programs. For example, the Honorable Sarah Vance stated in her December 31, 2014 Order in ***In Re: Pool Products Distribution Market Antitrust Litigation MDL* No. 2328 (E.D. La.):**

*To make up for the lack of individual notice to the remainder of the class, the parties propose a print and web-based plan for publicizing notice. The Court welcomes the inclusion of web-based forms of communication in the plan….The Court finds that the proposed method of notice satisfies the requirements of Rule 23(c)(2)(B) and due process.*

*The direct emailing of notice to those potential class members for whom Hayward and Zodiac have a valid email address, along with publication of notice in print and on the web, is reasonably calculated to apprise class members of the settlement.*

As detailed below, courts have repeatedly recognized my work in the design of class action notice programs:

(a)      For example, on May 12, 2016 in his Order granting preliminary approval of the settlement in ***In Re Whirlpool Corp. Front Loading Washer Products Liability Litigation* (MDL No. 2001) (N.D. Ohio),** The Honorable Christopher A. Boyko stated:

*The Court, having reviewed the proposed Summary Notices, the proposed FAQ, the proposed Publication Notice, the proposed Claim Form, and the proposed plan for distributing and disseminating each of them, finds and concludes that the proposed plan for distributing and disseminating each of them will provide the best notice practicable under the circumstances and satisfies all requirements of federal and state laws and due process.*

(b)  ***Sateriale, et al. v R.J. Reynolds Tobacco Co.,* Case No.  CV 09 08394 CAS (C.D. Cal.)**

Honorable Christina A. Snyder (May 3, 2016)  *The Court finds that the Notice provided to the Settlement Class pursuant to the Settlement Agreement and the Preliminary Approval Order has been successful, was the best notice practicable under the circumstances and (1) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action, their right to object to the Settlement, and their right to appear at the Final Approval Hearing; (2) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (3) met all applicable requirements of the Federal Rules of Civil Procedure, Due Process, and the rules of the Court.*

(c) *Ferrera et al. v. Snyder's-Lance, Inc.*, **Case No. 0:13-cv-62496 (S.D. Fla.)**

*Honorable Joan A. Lenard (February 12, 2016) The Court approves, as to form and content, the Long-Form Notice and Short- Form Publication Notice attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits 1 and 2 to the Stipulation of Settlement. The Court also approves the procedure for disseminating notice of the proposed settlement to the Settlement Class and the Claim Form, as set forth in the Notice and Media Plan attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits G. The Court finds that the notice to be given constitutes the best notice practicable under the circumstances, and constitutes valid, due, and sufficient notice to the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution.*

5.      By way of background, Angeion Group is a class action notice and claims administration company formed by an experienced team of executives with more than 60 combined years of experience implementing claims administration and notice solutions for class action settlements and judgments. With executives that have had extensive tenures at five other nationally recognized claims administration companies, collectively, the management team at Angeion has overseen more than 2,000 class action settlements and distributed over $10 billion to class members.

6.      This declaration will describe the notice program that we suggest using in this matter, including the considerations that informed the development of the plan and why it will provide Due Process of Law to the Class.

## SUMMARY OF NOTICE PROGRAM

7.      The suggested notice program combines state-of-the-art targeted internet banner ad notice and traditional print publication to deliver notice to the Class.

8.      The notice program is designed to deliver an approximate 70.58% reach with an average frequency of 2.96 times each.

## CLASS DEFINITION

9.      The "Settlement Class" means all persons and entities that, during the Class Period, both resided in the United States and purchased in the United States any of the Products for use and not for resale. Excluded from the Settlement Class are: (a) Defendants' board members or executive-level officers, including its attorneys; (b) governmental entities; (c) the Court, the Court's

immediate family, and the Court's staff; and (d) any person that timely and properly excludes himself or herself from the Settlement Class in accordance with the procedures approved by the Court.

**MEDIA NOTICE TARGET AUDIENCE**

10.     In order to develop the media plan for the notice program, the Settlement Class was profiled using GfK MRI 2015 Doublebase data[1].  Gfk MRI data is used by advertising agencies and other communications professionals to understand the socio-economic characteristics, interests and practices of a target group and aids in the proper selection of media to reach that target. It is also instrumental in allowing the Court to review the estimated net reach and average frequency of a particular program and is precisely the type of "accepted methodology" that the Checklist cautions should be used in class action notice programs. Here, Method products are a measured entity in MRI.

11.     Utilizing syndicated data like MRI aids in understanding the socio-economic characteristics, interests and practices of a target group which guides the proper selection of media to reach that target. Here, the target audience has the following characteristics:

- Audience is 59.5% female and 40.5% male
- Between the ages of 18-54 with a median age of 41
- Majority are married (58.1%)
- 51.6% have a child/children under the age of 17 living in the household
- Higher educated with 50.9% having a college degree
- 55.1% live in households with total income above $75K
- 65.7% are employed, with most working full time (53.7%)

---

[1] GfK MRI is a leading supplier of publication readership and product usage data for the communications industry. GfK MRI offers complete demographic, lifestyle, product usage and exposure to all forms of advertising media. As the leading U.S. source of multimedia audience research, GfK MRI provides information to magazines, television and radio networks and stations, internet sites, other media, leading national advertisers, and over 450 advertising agencies – including 90 of the top 100 in the U.S. MRI's national syndicated data is widely used by companies as the basis for the majority of the media and marketing plans that are written for advertised brands in the U.S.

12.     To identify the best vehicles to deliver messaging to the target audience, Angeion also reviewed the media quintiles, which measure the degree to which an audience uses media relative to the general population. Here it shows our target audience spend an above average amount of time (17 hours per week) on the internet compared to the general population. Additionally, the frequency with which the target audience reads magazines is consistent with that of the general population.

13.     In light of this data, Angeion recommends using a combination of traditional print publication and internet banner advertisements to reach the target audience, which will effectively generate the reach required to notify potential members of the Settlement Class of their rights and options in the Settlement.

## INTERNET BANNER NOTICE

14.     The notice program utilizes a programmatic approach to purchasing internet media advertisements to target potential members of the Settlement Class with tailored communications. Purchasing display and mobile inventory programmatically provides the highest reach for internet publication, allows for multiple targeting layers, and causes banner advertisements to be systematically shown to persons most likely to be members of the Settlement Class.

15.     The internet campaign will implement multiple targeting layers to ensure that notice is delivered to the persons most likely to be members of the Settlement Class, inclusive of search targeting, demographic targeting, category contextual targeting, keyword contextual targeting, site retargeting, and purchase data targeting. This enables Angeion to utilize, for example, search terms that an individual has entered into web browsers (like Google), to deliver banner ads to individuals most likely to be members of the Settlement Class. Search terms, relevant to Method, products such as hand soaps, cleaners and all-natural products, will also be incorporated into the campaign parameters to drive relevant traffic. The digital media plan will further target users who are

currently browsing or have recently browsed content in categories such as all-natural products, which will also help qualify impressions to ensure messaging is served to the most relevant audience. A focus will be placed on purchase data targeting Method specifically. The purpose of such targeting is to ensure that likely members of the Settlement Class are exposed to the notice documents while simultaneously minimizing the chance that notice is misdirected to individuals who are unlikely to be members of the Settlement Class.

16.     The internet banner notice portion of the notice program will be implemented using a 4-week desktop and mobile campaign, utilizing standard Interactive Advertising Bureau ("IAB") sizes (160x600, 300x250, 728x90, 300x600, 320x50 and 300x50). A 3x frequency cap will be imposed to maximize reach. The banner notice is designed to result in serving approximately 17,871,000 impressions.

## PRINT PUBLICATION

17.     Angeion will cause a true and correct copy of the publication notice to be published in a one-half page black and white ad in *People*, *Marie Clair* or a magazine with similar demographic distribution.

## RESPONSE MECHANISMS

18.     The notice program will implement the creation of a case website, where members of the Settlement Class can view general information about this class action, review relevant Court documents and view important dates and deadlines pertinent to the Settlement. The website will also have a "Contact Us" page whereby members of the Settlement Class can send an email with any additional questions to a dedicated email address.

19.     A toll-free hotline devoted to this case will be implemented to further apprise members of the Settlement Class of the rights and options in the Settlement. The toll-free hotline will utilize an interactive voice response ("IVR") system to provide responses to frequently asked questions

and provide important information regarding the Settlement. This hotline will be accessible 24 hours a day, 7 days a week.

## REACH AND FREQUENCY

20.     The notice program is designed to deliver a 70.58% reach with an average frequency of 2.96 times each. The 70.58% reach does not include the informational website and toll-free hotline, which are not calculable in reach percentage, but will nonetheless aid in informing members of the Settlement Class of their rights and options under the Settlement.

## CONCLUSION

21.     The notice program outlined above includes direct notice to members of the Settlement Class and an integrated notice effort incorporating state of the art internet banner notice utilizing multiple targeting layers and traditional print publication.  The notice program is designed to reach 70.58% of the Class on average 2.96 times each.

22.     Courts systematically rely upon reach and frequency evidence in reviewing class action notice programs for adequacy.  The reach percentage and the number of exposure opportunities here, meet or exceed those approved in other similar class actions.

23.     It is my opinion that the Notice Program provides class members Due Process of Law and is the best notice that is practicable under the circumstances and is fully compliant with Rule 23 of the Federal Rules of Civil Procedure.

I hereby declare under penalty of perjury that the foregoing is true and correct.

_____
STEVEN WEISBROT

Dated: December 15, 2016

*Vincent, at al. v. People Against Dirty, PBC, et al.*

**Stipulation of Settlement**

**EXHIBIT D**
**Short Form Summary Notice**

**If you purchased certain Method Products, PBC ("MPP") Products, you may be eligible to receive a cash payment from a class action Settlement.**

If you purchased certain METHOD and ECOVER branded products, you may be eligible to receive a payment from a Settlement. There is a class action Settlement involving METHOD and ECOVER branded products. The Action alleged that MPP violated state and federal laws regarding the labeling, marketing, and advertising of certain METHOD and ECOVER branded products. MPP denies any and all wrongdoing of any kind whatsoever and denies any liability to Plaintiffs and to the Settlement Class. The Court has not decided who is right. Both sides have agreed to settle the dispute and provide an opportunity for payments and other benefits to Settlement Class Members.

<u>**WHO IS INCLUDED IN THE SETTLEMENT?**</u>
All persons and entities who, from August 1, 2010 to [90 days following Notice], both resided in the United States and purchased in the United States any of the METHOD or ECOVER branded products for use and not for resale are included in the Settlement Class. More information about the METHOD and ECOVER branded products involved in the Settlement is available at the Settlement Website, www. MPP Settlement.com, or by calling 1-855-732-6084.

<u>**WHAT DOES THE SETTLEMENT PROVIDE?**</u>
The Settlement provides a Settlement Amount of $2,800,000.00 to pay (1) Claims of eligible Settlement Class Members; (2) the costs of Class Notice and administration; (3) Attorneys' Fees and Expenses; and (4) any Service Award made by the Court to Plaintiffs. Settlement Class Members who timely submit valid Claim Forms are entitled to receive a cash payment from the Settlement.  The actual amount recovered by each Settlement Class Member will not be determined until after the Claim Period has ended and all claims have been calculated.

<u>**WHAT ARE MY RIGHTS?**</u>
**1.      Participate in the Settlement by Submitting a Claim**. If you wish to participate in the Settlement and be eligible to receive benefits under the Settlement, you MUST fill out and submit a Claim Form by **XXXXX, 2017**. You can obtain a Claim Form by (1) Visiting the Settlement Website, www. MPPSettlement.com, where you can file your claim online or print a Claim Form to submit by mail; (2) Mailing a written request for a Claim Form to: MPP Class Action, Settlement Administrator, 1801 Market Street, Suite 660, Philadelphia, PA 19103; (3) Emailing the Settlement Administrator at info@MPPSettlement.com; or (4) Calling Toll-Free 1-855-732-6084. If you do not timely submit a valid Claim Form and do not exclude yourself from the Settlement, you will be bound by the Settlement but will not receive any benefits of the Settlement.

**2.      You Can Object to the Settlement**.  If you do not agree with the Settlement or any part of it, you may submit a written objection to the Court. The deadline for submitting an objection is **XXXXXXX, 2017**.

**3.      You Can "Opt Out" of the Settlement**.  If you don't want to be legally bound by the Settlement, you must exclude yourself by **XXXXXXX, 2017**, or you won't be able to sue, or continue to sue, MPP about the legal claims in this case. If you exclude yourself, you cannot get money from this Settlement. The detailed notice, available at www. MPPSettlement.com, explains

how to exclude yourself or object. If you do nothing you will be bound by the Court's decisions. The Court will hold a hearing on **XXXXXXX, 2017** to consider whether to approve the Settlement, a request for Attorneys' Fees and Expenses up to $933,333.00, and Service Awards for the Plaintiffs totaling $10,000, from the Settlement Amount. You or your own lawyer may appear and speak at the hearing at your own expense.

**FOR MORE INFORMATION: Call Toll-Free 1-855-732-6084 or visit** www. MPPSettlement.com

*Vincent, at al. v. People Against Dirty, PBC, et al.*

**Stipulation of Settlement**

**EXHIBIT E**
**Product List**

**Exhibit E:  Product List**

All Fragrances and Sizes (including refills) of the Following Method and Ecover Branded
Products:

method Laundry Detergent
method Fabric Softener
method Dryer Sheets
method All Purpose Cleaner Spray
method All Purpose Cleaning Wipes
method Automated Dish Tabs
method Bathroom Cleaner
method Tub + Tile Cleaner
method Shower Cleaner
method Toilet Bowl Cleaner
method Dilutable Cleaners
method Cream Scrub
method Dish Soap
method Dish Foam
method Glass+Surface Cleaner
method Glass Cleaner
method Wood Oil Soap
method Wood Polish Spray
method Wood Cleaner
method Floor Cleaner
method Hand Wash
method Gel Hand Wash
method Foaming Hand Wash
method Nourishing Hand Wash
method Kitchen Hand Wash
method Moisturizing Hand Wash
method Hand + Dish Wash
method Hand Sanitizer
method Body Wash
method Foaming Body Wash
method Marine Naturals Body Wash
method Moisturizing Body Wash
method Gel Body Wash
method Body Bar Soap
method Baby Lotion
method Baby Diaper Cream
method Baby Hair + Body Wash
method Baby Body Wash
method Baby Bubble Bath
method Baby 3-in-1 Shampoo

method Specialty Surface Cleaners and Wipes (Granite, Stainless Steel, Leather + Wood)
Ecover Rinse Aid
Ecover Automated Dish Tabs
Ecover Automated Dish Powder
Ecover Dish Soap
Ecover Floor Soap
Ecover Floor Cleaner
Ecover Hand Soap
Ecover Stain Remover
Ecover Fabric Softener
Ecover Laundry Detergent (Powder + Liquid)
Ecover Delicate Laundry Detergent
Ecover Non-Chlorine Bleach
Ecover Bathroom Cleaner
Ecover Toilet Cleaner
Ecover Cream Cleaner
Ecover Glass + Surface Cleaner
Ecover All Purpose Cleaner

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

Wesley Vincent, individually and on behalf of
all others similarly situated,

                    Plaintiffs,

    v.

People Against Dirty, PBC,

                 Defendant.

Case No. 7:16-cv-06936

**DECLARATION OF STEVEN
WEISBROT, ESQ. ON ADEQUACY OF
NOTICE PROGRAM**

## <u>DECLARATION OF STEVEN WEISBROT, ESQ.</u>

STEVEN WEISBROT, ESQ., of full age, hereby declares under penalty of perjury as follows:

1.    I am Executive Vice President of Notice & Strategy at the class action notice and Settlement Administration firm Angeion Group, LLC ("Angeion"). I am fully familiar with the facts contained herein based upon my personal knowledge.

2.    I have been responsible in whole or in part for the design and implementation of more than one hundred class action administration plans and have taught numerous Accredited Continuing Legal Education courses on the Ethics of Legal Notification in Class Action Settlements, using Digital Media in Class Action Notice Programs, as well as Class Action Claims Administration, generally. Additionally, I am the author of frequent articles on Class Action Notice, Digital Media, Class Action Claims Administration and Notice Design in publications such as *Bloomberg, BNA Class Action Litigation Report*, Law360, the ABA Class Action and Derivative Section Newsletter and private law firm publications.

3.    Prior to joining Angeion's executive team, I was employed as Director of Class Action services at Kurtzman Carson Consultants ("KCC"), a nationally recognized class action notice and settlement administrator. Prior to my notice and claims administration experience, I was employed

in private law practice and I am currently an attorney in good standing in the State of New Jersey and the Commonwealth of Pennsylvania.

4.      My notice work comprises a wide range of class actions that includes product defect, false advertising, employment, antitrust, tobacco, banking, firearm, insurance, and bankruptcy cases. Likewise, I have been instrumental in infusing digital and social media, as well as big data and advanced targeting into class action notice programs. For example, the Honorable Sarah Vance stated in her December 31, 2014 Order in *In Re: Pool Products Distribution Market Antitrust Litigation MDL No. 2328 (E.D. La.):*

*To make up for the lack of individual notice to the remainder of the class, the parties propose a print and web-based plan for publicizing notice. The Court welcomes the inclusion of web-based forms of communication in the plan....The Court finds that the proposed method of notice satisfies the requirements of Rule 23(c)(2)(B) and due process.*

*The direct emailing of notice to those potential class members for whom Hayward and Zodiac have a valid email address, along with publication of notice in print and on the web, is reasonably calculated to apprise class members of the settlement.*

As detailed below, courts have repeatedly recognized my work in the design of class action notice programs:

(a)      For example, on May 12, 2016 in his Order granting preliminary approval of the settlement in *In Re Whirlpool Corp. Front Loading Washer Products Liability Litigation* **(MDL No. 2001) (N.D. Ohio),** The Honorable Christopher A. Boyko stated:

*The Court, having reviewed the proposed Summary Notices, the proposed FAQ, the proposed Publication Notice, the proposed Claim Form, and the proposed plan for distributing and disseminating each of them, finds and concludes that the proposed plan for distributing and disseminating each of them will provide the best notice practicable under the circumstances and satisfies all requirements of federal and state laws and due process.*

(b)  *Sateriale, et al. v R.J. Reynolds Tobacco Co.,* **Case No.  CV 09 08394 CAS (C.D. Cal.)**

Honorable Christina A. Snyder (May 3, 2016)  *The Court finds that the Notice provided to the Settlement Class pursuant to the Settlement Agreement and the Preliminary Approval Order has been successful, was the best notice practicable under the circumstances and (1) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action, their right to object to the Settlement, and their right to appear at the Final Approval Hearing; (2) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (3) met all applicable requirements of the Federal Rules of Civil Procedure, Due Process, and the rules of the Court.*

(c) *Ferrera et al. v. Snyder's-Lance, Inc.*, **Case No. 0:13-cv-62496 (S.D. Fla.)**

Honorable Joan A. Lenard *(February 12, 2016) The Court approves, as to form and content, the Long-Form Notice and Short- Form Publication Notice attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits 1 and 2 to the Stipulation of Settlement. The Court also approves the procedure for disseminating notice of the proposed settlement to the Settlement Class and the Claim Form, as set forth in the Notice and Media Plan attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits G. The Court finds that the notice to be given constitutes the best notice practicable under the circumstances, and constitutes valid, due, and sufficient notice to the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution.*

5.      By way of background, Angeion Group is a class action notice and claims administration company formed by an experienced team of executives with more than 60 combined years of experience implementing claims administration and notice solutions for class action settlements and judgments. With executives that have had extensive tenures at five other nationally recognized claims administration companies, collectively, the management team at Angeion has overseen more than 2,000 class action settlements and distributed over $10 billion to class members.

6.      This declaration will describe the notice program that we suggest using in this matter, including the considerations that informed the development of the plan and why it will provide Due Process of Law to the Class.

## SUMMARY OF NOTICE PROGRAM

7.      The suggested notice program combines state-of-the-art targeted internet banner ad notice and traditional print publication to deliver notice to the Class.

8.      The notice program is designed to deliver an approximate 70.58% reach with an average frequency of 2.96 times each.

## CLASS DEFINITION

9.      The "Settlement Class" means all persons and entities that, during the Class Period, both resided in the United States and purchased in the United States any of the Products for use and not for resale. Excluded from the Settlement Class are: (a) Defendants' board members or executive-level officers, including its attorneys; (b) governmental entities; (c) the Court, the Court's

immediate family, and the Court's staff; and (d) any person that timely and properly excludes himself or herself from the Settlement Class in accordance with the procedures approved by the Court.

## MEDIA NOTICE TARGET AUDIENCE

10.     In order to develop the media plan for the notice program, the Settlement Class was profiled using GfK MRI 2015 Doublebase data[1]. Gfk MRI data is used by advertising agencies and other communications professionals to understand the socio-economic characteristics, interests and practices of a target group and aids in the proper selection of media to reach that target. It is also instrumental in allowing the Court to review the estimated net reach and average frequency of a particular program and is precisely the type of "accepted methodology" that the Checklist cautions should be used in class action notice programs. Here, Method products are a measured entity in MRI.

11.     Utilizing syndicated data like MRI aids in understanding the socio-economic characteristics, interests and practices of a target group which guides the proper selection of media to reach that target. Here, the target audience has the following characteristics:

- Audience is 59.5% female and 40.5% male
- Between the ages of 18-54 with a median age of 41
- Majority are married (58.1%)
- 51.6% have a child/children under the age of 17 living in the household
- Higher educated with 50.9% having a college degree
- 55.1% live in households with total income above $75K
- 65.7% are employed, with most working full time (53.7%)

---

[1] GfK MRI is a leading supplier of publication readership and product usage data for the communications industry. GfK MRI offers complete demographic, lifestyle, product usage and exposure to all forms of advertising media. As the leading U.S. source of multimedia audience research, GfK MRI provides information to magazines, television and radio networks and stations, internet sites, other media, leading national advertisers, and over 450 advertising agencies – including 90 of the top 100 in the U.S. MRI's national syndicated data is widely used by companies as the basis for the majority of the media and marketing plans that are written for advertised brands in the U.S.

12.    To identify the best vehicles to deliver messaging to the target audience, Angeion also reviewed the media quintiles, which measure the degree to which an audience uses media relative to the general population. Here it shows our target audience spend an above average amount of time (17 hours per week) on the internet compared to the general population. Additionally, the frequency with which the target audience reads magazines is consistent with that of the general population.

13.    In light of this data, Angeion recommends using a combination of traditional print publication and internet banner advertisements to reach the target audience, which will effectively generate the reach required to notify potential members of the Settlement Class of their rights and options in the Settlement.

## INTERNET BANNER NOTICE

14.    The notice program utilizes a programmatic approach to purchasing internet media advertisements to target potential members of the Settlement Class with tailored communications. Purchasing display and mobile inventory programmatically provides the highest reach for internet publication, allows for multiple targeting layers, and causes banner advertisements to be systematically shown to persons most likely to be members of the Settlement Class.

15.    The internet campaign will implement multiple targeting layers to ensure that notice is delivered to the persons most likely to be members of the Settlement Class, inclusive of search targeting, demographic targeting, category contextual targeting, keyword contextual targeting, site retargeting, and purchase data targeting. This enables Angeion to utilize, for example, search terms that an individual has entered into web browsers (like Google), to deliver banner ads to individuals most likely to be members of the Settlement Class. Search terms, relevant to Method, products such as hand soaps, cleaners and all-natural products, will also be incorporated into the campaign parameters to drive relevant traffic. The digital media plan will further target users who are

currently browsing or have recently browsed content in categories such as all-natural products, which will also help qualify impressions to ensure messaging is served to the most relevant audience. A focus will be placed on purchase data targeting Method specifically. The purpose of such targeting is to ensure that likely members of the Settlement Class are exposed to the notice documents while simultaneously minimizing the chance that notice is misdirected to individuals who are unlikely to be members of the Settlement Class.

16.     The internet banner notice portion of the notice program will be implemented using a 4-week desktop and mobile campaign, utilizing standard Interactive Advertising Bureau ("IAB") sizes (160x600, 300x250, 728x90, 300x600, 320x50 and 300x50). A 3x frequency cap will be imposed to maximize reach. The banner notice is designed to result in serving approximately 17,871,000 impressions.

## PRINT PUBLICATION

17.     Angeion will cause a true and correct copy of the publication notice to be published in a one-half page black and white ad in *People*, *Marie Clair* or a magazine with similar demographic distribution.

## RESPONSE MECHANISMS

18.     The notice program will implement the creation of a case website, where members of the Settlement Class can view general information about this class action, review relevant Court documents and view important dates and deadlines pertinent to the Settlement. The website will also have a "Contact Us" page whereby members of the Settlement Class can send an email with any additional questions to a dedicated email address.

19.     A toll-free hotline devoted to this case will be implemented to further apprise members of the Settlement Class of the rights and options in the Settlement. The toll-free hotline will utilize an interactive voice response ("IVR") system to provide responses to frequently asked questions

and provide important information regarding the Settlement. This hotline will be accessible 24 hours a day, 7 days a week.

## REACH AND FREQUENCY

20. The notice program is designed to deliver a 70.58% reach with an average frequency of 2.96 times each. The 70.58% reach does not include the informational website and toll-free hotline, which are not calculable in reach percentage, but will nonetheless aid in informing members of the Settlement Class of their rights and options under the Settlement.

## CONCLUSION

21. The notice program outlined above includes direct notice to members of the Settlement Class and an integrated notice effort incorporating state of the art internet banner notice utilizing multiple targeting layers and traditional print publication.  The notice program is designed to reach 70.58% of the Class on average 2.96 times each.

22. Courts systematically rely upon reach and frequency evidence in reviewing class action notice programs for adequacy.  The reach percentage and the number of exposure opportunities here, meet or exceed those approved in other similar class actions.

23. It is my opinion that the Notice Program provides class members Due Process of Law and is the best notice that is practicable under the circumstances and is fully compliant with Rule 23 of the Federal Rules of Civil Procedure.

  I hereby declare under penalty of perjury that the foregoing is true and correct.

STEVEN WEISBROT

Dated: December 15, 2016