**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WESLEY VINCENT, NOELLE
MORGANTE, DANIEL RICHMAN, AND
ASHLEY PELUCHETTE individually on
behalf of himself and on behalf of all others
similarly situated and John Does (1-100) on
behalf of themselves and all others similarly
situated,

   *Plaintiffs,*

*vs.*

PEOPLE AGAINST DIRTY, PBC. and
METHOD PRODUCTS, PBC.

   *Defendants.*

:
:
:
:
:
:
:
:
:
:
:

Case No.: 7:16-cv-06936-NSR

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**MOTION FOR FINAL APPROVAL OF SETTLEMENT**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................iii-vi

I.  INTRODUCTION....................................................................................1

    A. THE RESPONSE TO NOTICE...........................................................1

    B. BACKGROUND OF THE LITIGATION..............................................2

    C. THE TERMS OF THE SETTLEMENT.................................................7

II. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL........................................................9

    A. Legal Standard.....................................................................9

    B. The Proposed Settlement is Procedurally Fair......................................9

    C. The Proposed Settlement is Substantively Fair.................................11

        1. The Complexity, Expense, and Likely Duration of the Litigation...........12

        2. The Reaction of the Settlement Class...........................................13

        3. The Stage of the Proceedings and the Amount of Discovery Completed...15

        4. The Risks of Establishing Liability and Damages............................15

        5. The Risks of Maintaining Class Action Status Through Trial...............17

        6. The Ability of Defendant to Withstand a Greater Judgment.................18

        7. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and in Light of All the Attendant Risks of Litigation...18

III. THE COURT SHOULD GRANT FINAL CERTIFICATION TO THE SETTLEMENT CLASS...............................................................................20

    A. Legal Standard...................................................................20

    B. The Settlement Class Satisfies Federal Rule of Civil Procedure 23(a).......20

    C. The Settlement Class Meets the Requirements of Federal Rule of Civil Procedure 23(b)(3)...............................................................23

IV. THE CLASS NOTICE SATISIFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS...........................................................................25

V.  CONCLUSION....................................................................................26

CERTIFICATE OF SERVICE............................................................28

## TABLE OF AUTHORITIES

**CASES**

*Ackerman v. Coca-Cola Co.,*
    2013 U.S. Dist. LEXIS 184232 at *71 (E.D.N.Y. July 17, 2013)................................20

*Amchem Prods., Inc.,*
    521 U.S. at 615...........................................................................................23

*Bravo v. Palm West Corp.,*
    2015 U.S. Dist. LEXIS 135123 at *9 (S.D.N.Y. Sept. 30, 2015)................................24

*Brazil v. Dole Packaged Foods, LLC,*
    2016 U.S. App. LEXIS 17733 (9th Cir. Cal. 2016)..........................................16, 18

*Charron v. Wiener,*
    731 F.3d 241, 247 (2d Cir. 2013).........................................................9, 22

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448, (2d Cir. 1974).........................................9, 11, 12, 13, 15, 18

*Consolidated Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473, 483 (2d Cir. 1995)..............................................................21

*Davis v. J.P. Morgan Chase & Co.,*
    775 F. Supp. 2d 601, 609 (W.D.N.Y. 2011)....................................................24

*DeLeon v. Wells Fargo Bank, N.A.,*
    2015 U.S. Dist. LEXIS 65261 (S.D.N.Y. May 7, 2015)........................................14

*Dupler v. Costco Wholesale Corp.,*
    705 F. Supp. 2d 231 (E.D.N.Y. 2010)..........................................................12

*Fleisher v. Phoenix Life Ins. Co.,*
    No. 11-CV-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015).....................11, 19

*Gen. Tel. Co. of the Southwest v. Falcon,*
    457 U.S. 147, 160 (1982)......................................................................18

*Goldemberg v. Johnson & Johnson Consumer Cos.,*
    2016 U.S. Dist. LEXIS 137780 (S.D.N.Y. Oct. 4, 2016)........................................12

*Greenwood v. Method Prods.,*
    No. 16-L-157................................................................................6

*Greenwood v. People Against Dirty Mfg.,*
    No. 16-L-477 (St. Clair County, IL, filed Sept. 9, 2016).......................................6

*Hughes v. Ester C Co.,*
    317 F.R.D. 333, 356 (E.D.N.Y. 2016)..................................................19, 20

*In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.,*
    2015 U.S. Dist. LEXIS 133484 at *22 (S.D.N.Y. Sept. 30, 2015).................................20

*In re Hi-Crush Partners L.P. Sec. Litig.,*
    No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .....11, 13, 14, 15, 16, 17

*In re Initial Pub. Offering Sec. Litig.,*
    226 F.R.D. 186, 195 n.51 (S.D.N.Y. 2005).........................................24

*In re Sinus Buster Prods. Consumer Litig.,*
    No. 12 -CV-2429, 2014 U.S. Dist. LEXIS 158415 *25 (E.D.N.Y. Nov. 10, 2014)............18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
    986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013).........................................15

*In re Sony SXRD Rear Projection TV Class Action Litig.,*
    2008 U.S. Dist. LEXIS 36093 at *18 (S.D.N.Y. May 1, 2008)...............................13

*Johnson v. Brennan,*
    2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011)..................................15

*Keith Daughtery v. Method Products, PBC,*
    No. 1:16-cv-1226............................................................6

*Labrado v. Method Products, PBC,*
    CGC-16-554143 (San Francisco, CA Superior Ct.)......................................5, 6

*Manley v. Midan Rest. Inc.,*
    2016 U.S. Dist. LEXIS 43571 at* 11 (S.D.N.Y. Mar. 30, 2016)..........12, 13, 15, 22, 23, 25

*Marisol A.,*
    126 F.3d at 378............................................................22

*Matheson v. T-Bone Rest. LLC.,*
    2011 U.S. Dist. LEXIS 143773 (S.D.N.Y. Dec. 13, 2011)..................................15

*McReynolds v. Richards-Cantave,*
    588 F.3d 790, 803-04 (2d Cir. 2009)..................................................10, 11

*Meredith Corp. v. SESAC, LLC,*
    87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015)..............................12, 18, 20, 21, 25

*Mills v. Capital One, N.A.*,
　2015 U.S. Dist. LEXIS 133530, 14 Civ. 1937, at *6 (S.D.N.Y. Sept. 30, 2015)..............14

*Morris v. Affinity Health Plan, Inc.*,
　859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012)......................................................10

*Munton v. Method Product,*
　*PBC*, 3:16-cv-1011 (Sept. 6, 2016)..............................................................6

*Raniere v. Citigroup Inc.*,
　310 F.R.D. 211, (S.D.N.Y. 2015).............................................................10, 13

*Reyes v. Altamarea Group, LLC*,
　2011 U.S. Dist. LEXIS 115982 at *3 (S.D.N.Y. June 3, 2011)..................................10

*Richman v. Method Products, PBC and People Against Dirty, PBC*,
　Case No. 16-cv-5167 (N.D. Cal.).................................................................5

*Ries v. Ariz. Bevs. USA LLC*,
　2013 U.S. Dist. LEXIS 46013 (N.D. Cal. Mar. 28, 2013)......................................16

*Robidoux v. Celani*,
　987 F.2d 931, 936 (2d Cir. 1993)..........................................................21, 22

*Shapiro*,
　LEXIS 37872....................................................................................16

*Sykes v. Mel S. Harris & Assocs. LLC*,
　780 F.3d 70, 85 (2d Cir. 2015)................................................................21

*Tart v. Lions Gate Entm't Corp.*,
　2015 U.S. Dist. LEXIS 139266 at *10-11 (S.D.N.Y. Oct. 13, 2015)............................24

*Tyson Foods, Inc. v. Bouaphakeo*,
　136 S. Ct. 1036, 1046 (2016)..................................................................23

*Vargas v. Capital One Fin. Advisors*,
　559 Fed. Appx. 22, 2014 U.S. App. LEXIS 4689 (2d Cir. N.Y. 2014)...........................25

*Viafara v. MCIZ Corp.*,
　No. 12 Civ 7452, 2014 U.S. Dist. LEXIS 60695 *21 (S.D.N.Y. Apr. 30, 2014).........16, 18

*Wal-Mart Stores, Inc. v. Dukes*,
　564 U.S. 338, 350 (U.S. 2011).................................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
　396 F.3d 96 (2d Cir. 2000).....................................................................9

*Wilson vs. Method Products, PBC*,
   No. 2016-00038054 (Cal. Super. Ct. Oct. 27, 2016)...............................................6

## I.    INTRODUCTION

On January 9, 2017, this Court granted Plaintiffs' motion for preliminary approval of their proposed class action settlement. The Court also preliminarily certified the proposed class of purchasers of Defendant's household and cleaning products and authorized the publication of notice to the class.

The arguments in favor of final approval are similar to those Plaintiffs offered in support of preliminary approval, with the important difference that the submissions in this motion are informed by the actual response of the class.

Plaintiffs are pleased to report that the response to the settlement has been overwhelmingly positive. Now, Plaintiffs ask this Court to grant final approval to the proposed settlement and certify the proposed class for settlement purposes.[1]

## A.    THE RESPONSE TO NOTICE

The settlement establishes a common fund of $2.8 million. Consumers who are unable to provide proof of purchase are entitled to receive $1.00 per product up to eight products, and consumers are entitled to receive $1.00 per product for an unlimited number of products for each proof of purchase. The $1.00 recovery represents a substantial percentage of the average retail prices of the Products which is $4.62 for "METHOD" Products, and $6.47 for "ECOVER" Products.[2]

Direct notice to specific customers was not possible in this case because there is no database of purchasers of METHOD and ECOVER products. As approved by this Court, notice

---

1.    Plaintiffs have submitted their motion for attorneys' fees, expenses, and service awards separately. If the Court grants the relief sought in this final approval motion, Plaintiffs request that the Court consider their fees and expenses motion.

2.    Based on sales data provided by Defendants, as well as third party Nielsen data, the Products range in price from $1.78 to $12.99.

was sent out using paid ads on websites frequented by the demographic which purchases Method's Products, as well through targeted "keyword" searches. This part of the notice campaign resulted in 18,583,355 impressions and achieved a 72.5% reach with an average exposure frequency of 2.98 times each. The final reach *exceeded* the previously-targeted 70.58%. With respect to print, on February 6, 2017, Plaintiffs also had a half-page ad published in *People* magazine, which has a circulation of over three million. The claims administrator also maintained a dedicated website with information and documents from the litigation, and a toll-free helpline to receive copies of the notice or ask for additional information. Consumers were able to submit claims online, which made it easy to do so.[3]

The response of the class has been overwhelmingly positive. As of March 7, 2017, 41,133 consumers have submitted claims for 216,003 Products, none have opted out, and none have objected. Given that direct notice was not possible in this case, this is a very good response rate.

## B.    BACKGROUND OF THE LITIGATION

On October 27, 2015, plaintiff Daniel Richman, through Eggnatz, Lopatin & Pascucci, LLP ("ELP"), served Method with a notice letter pursuant to California's Consumers Legal Remedies Act, CAL. CIV. CODE 1750, *et seq.*, concerning Method's deceptive manufacturing, marketing, labeling and advertising by representing that certain varieties of its cleaning products and soaps are "Natural", "Naturally Derived", "hypo-allergenic,", "non-toxic,", "plant-derived," "plant-based," "mineral-based," "bio-based," and other similar statements. *See* Declaration of Joshua H. Eggnatz In Support of Plaintiffs' Motion For Final Approval (the "Eggnatz FA Decl.")

---

3.     The results of the notice campaign are reported in the Declaration of Steven Weisbrot, Esq., the Executive Vice President of Notice and Strategy at the claims administrator, Angeion Group, LLC, submitted with this motion.

¶ 8.

Similarly, on May 26, 2016, the Sultzer Law Group ("Sultzer") (Sultzer and ELP collectively are referred to as "Class Counsel"), counsel for Plaintiffs Wesley Vincent and Noelle Morgante, sent a separate pre-suit notice letter to Method. *See* Declaration of Jason P. Sultzer In Support of Plaintiffs' Motion for Final Approval of Settlement and Final Certification of Settlement Class ("Sultzer FA Decl.") ¶ 7.

Before serving the respective notice letters, the firms spoke with and interviewed purchasers of the Products about their expectations and understanding of the meaning of the Method's labeling. Eggnatz FA Decl. ¶ 10; Sultzer FA Decl. ¶ 5. The firms also conducted thorough investigations of the claims, ingredients, manufacturing process, and the regulatory framework surrounding the personal care products at issue. Eggnatz FA Decl. ¶¶ 11-12. Specifically, the firms examined the different ingredients and chemicals in the Method's Products from publicly-available sources. Eggnatz FA Decl. ¶¶ 11-12; Sultzer FA Decl. ¶¶ 3-4.

Class Counsel also conducted a pricing survey and damages analysis, conducted an analysis to determine the price premium of the Products consisting of an evaluation of various data points, including but not limited to, the MSRP of the Products, the MSRP of comparable products, third party Nielsen data of the Products' sales throughout the class period from various retailers, as well conducting field research of the actual retail prices of the Products and Method's competitor's comparable competing products in retail stores. Eggnatz FA Decl. ¶ 13

Class Counsel also conducted laboratory tests to identify the ingredients in the Products. Tests included high performance liquid chromatography with both bioluminence detection and diode array detection. Sultzer FA Decl. ¶ 6.

In addition, the firms thoroughly analyzed the legal landscape to determine if, and in what

manner, to approach remedying Method's alleged misleading labeling practices, including multiple state consumer protection laws, the recent legal precedents in food and product labeling litigation and FDA regulations. Eggnatz FA Decl. ¶ 11.

On March 30, 2016, ELP and Method executed a Tolling Agreement, whereby the parties agreed to continue to explore serious and informed settlement discussions, and to preserve the status quo by tolling the running of any statute of limitations, before initiating litigation. *Id.* ¶ 14.

In various letters and correspondences, beginning on April 29, 2016, Defendants' Counsel provided Class Counsel with information regarding the basis for Defendants' labeling of the products identified in the draft complaints as "natural" or "naturally derived." *Id.* ¶ 15. Throughout the following months, Defendants' Counsel also produced to Class Counsel, pursuant to a confidentiality agreement, sales and distribution information regarding the products identified in the draft complaints. Eggnatz FA Decl. ¶ 15; Sultzer FA Decl. ¶ 8.

On June 8, 2016, ELP attended an all-day mediation session in Miami, Florida with the assistance of Rodney Max, of Upchurch, Watson, White & Max. Eggnatz FA Decl. ¶ 16

Although a settlement was not reached at the in-person Mediation, the parties agreed that negotiations should proceed and that the Mediation would continue telephonically. *Id.* ¶ 17.

On August 11, 2016, Sultzer, Defendants' Counsel, and Defendants' interim General Counsel held an in-person meeting at the office of Defendants' Counsel in San Francisco, where Method is headquartered. Sultzer FA Decl. ¶ 9. At that meeting, the Parties agreed upon a framework for resolution of the matter. Over the next several weeks, the Parties exchanged drafts of the term sheet and refined that framework into the basic outline of a settlement providing for both monetary and injunctive relief for Plaintiffs and the putative class, and a release for Defendants. *Id.* ¶ 10.

Over the course of the settlement negotiations, Defendants' Counsel provided Class Counsel with certain additional sales and marketing information, which Plaintiffs required prior to agreeing in principle to enter the settlement set forth in this Class Settlement Agreement. Eggnatz FA Decl. ¶ 20. This information included sales data showing the number and type of products purchased nationally by consumers, average purchase price, net sales information, third-party Nielsen data, as well as marketing information regarding the reasons why consumers purchase Defendants' products.

On September 2, 2016, the Complaint in the above-titled action was filed on behalf of Plaintiff, Wesley Vincent [DE No. 1]. Also at that time, Sultzer and Counsel for Defendants' informed the Court that the framework of a settlement had been reached. [DE No. 5]

On September 6, 2016, Method filed an Answer to the Complaint. [DE No. 7].

On September 7, 2016, ELP, on behalf of Plaintiffs, Daniel Richman and Ashley Peluchette, filed a Class Action Complaint in the Northern District of California, also based on Method's use of the terms "Natural" and/or "Naturally Derived" on the labeling and packaging of the Products. *Richman v. Method Products, PBC and People Against Dirty, PBC*, Case No. 16-cv-5167 (N.D. Cal.).

On September 27, 2016, a First Amended Complaint was filed in the above-titled action, which added Plaintiff Noelle Morgante, and named Method Products, PBC as a co-Defendant [DE No. 17].

ELP and Sultzer, after agreeing to work together and sharing their lab results, damages analysis and views on liability and class certification, continued to negotiate the terms of the Settlement with Defendants. Eggnatz FA Decl. ¶ 28; Sultzer FA Decl. ¶ 12.

On September 8, 2016, an unrelated case, *Labrado v. Method Products, PBC*, CGC-16-

554143 (San Francisco, CA Superior Ct.), alleging substantially the same claims as have been asserted in this action on behalf of a California class, was filed in San Francisco Superior Court. On October 7, 2016, another unrelated similar case styled *Keith Daughtery v. Method Products, PBC*, No. 1:16-cv-1226, alleging substantially the same claims as have been asserted in this action, was filed in the Northern District of New York by separate counsel.

On October 13, 2016, ELP and Sultzer filed a Second Amended Complaint, consolidating Plaintiffs Daniel Richman's and Ashley Peluchette's claims with the *Vincent* action. [DE No. 28] The Second Amended Complaint asserts claims on behalf of a nationwide class of consumers, including individual subclasses of the states of California, Florida, and New York, regarding Defendants' use of the terms "Natural", "Naturally Derived", "hypo-allergenic,", "non-toxic,", "plant-derived," "plant-based," "mineral-based," "bio-based," and similar statements on the Products, when, in fact, those Products contain unnatural ingredients that are artificial, synthetic, and/or highly processed.

And on October 27, 2016, yet another unrelated case, *Wilson vs. Method Products, PBC*, No. 2016-00038054 (Cal. Super. Ct. Oct. 27, 2016), on behalf of a California class was filed in San Diego County.[4]

On October 31, 2016, Method filed their Answer to the Second Amended Complaint [DE No. 32].

Throughout October and November, the parties continued to negotiate a comprehensive

---

[4] Other cases have also been filed, but have been jointly stayed pending the resolution of this settlement. *See., e.g., Greenwood v. Method Prods.*, No. 16-L-157 (St. Clair County, IL, filed March 22, 2016); *Munton v. Method Product, PBC*, 3:16-cv-1011 (Sept. 6, 2016). A third case was filed against a subsidiary of the Defendants, but has been voluntarily dismissed. *See Greenwood v. People Against Dirty Mfg.*, No. 16-L-477 (St. Clair County, IL, filed Sept. 9, 2016).

settlement. These negotiations were lengthy, detailed and covered both monetary and injunctive relief. Eggnatz FA Decl. ¶ 32; Sultzer FA Decl. ¶ 12. On December 12, 2016 the parties signed the Settlement Agreement.

Plaintiffs' objectives in filing the Actions were to remedy the allegedly deceptive representations in Defendants' marketing and labeling of the Products and to compensate Settlement Class members damaged by the misrepresentations. This proposed settlement, if approved, will achieve both objectives.

## C. THE TERMS OF THE SETTLEMENT

The Settlement Agreement provides for significant injunctive and monetary relief.

With respect to monetary relief, the Settlement Agreement provides that Defendants will establish a Common Fund in the amount of $2,800,000 to pay (i) timely, valid, and approved Claims; (ii) all costs of notice and claims administration; (iii) judicially approved Service Awards; (iv) judicially approved Attorneys' Fees and Expenses; and (v) any necessary taxes and tax expenses. (§ 4.1).

Settlement Class Members with proof of purchase will be entitled to reimbursement of $1.00 cash per Product purchased during the Class Period, without limit. (§ 4.2(j)(i)). Settlement Class Members without proof of purchase will be entitled to reimbursement of $1.00 for up to 8 Products purchased by providing the approximate date, retailer, and location of the purchase(s), and providing additional information, such as the fragrance and satisfaction with the product. For those Class Members without proof and who only provide the approximate dates and locations of purchase may obtain reimbursement of up to $1.00 per Product, for up to 4 Products. (§ 4.2(j)(ii)-(ii)). If there is a Residual Fund after the payment of all valid claims, then Settlement Class Members' relief will be increased on a *pro rata* basis up to a maximum of four hundred percent

(400%) of the Eligible Settlement Class Member's Initial Claim Amount. (§ 4.4(a)(i)).

If there are excess funds after payment of Settlement Class Members' cash claims, any excess funds will be distributed to consumers via $1 coupons on coupon websites. (§ 4.4(a)(ii)). Funds from any uncashed checks or if the coupon component is economically infeasible, the parties will seek the Court's permission to donate remaining funds to The Sierra Club, Earth Echo International, and The Conservation Alliance. *Id.*

With respect to injunctive relief, the Settlement provides that Defendants will not use the terms "natural" or "naturally-derived" on the labels of Defendants' METHOD and ECOVER branded Products, unless Defendants:

a) list the ingredients on the Product labels in accordance with generally accepted industry standards, including INCI, IL and other applicable legislation and regulations;

b) provide ingredient information including (1) origin (plant-derived or synthetic) and (2) function on Method's Website or, at Method's option, on the Product label;

c) restrict the use of the term "natural" to refer to fragrance ingredients that meet the ISO 9235 standard, as it may be amended from time to time. In such event, the label shall clearly disclose that the term "natural" only refers to the qualifying fragrance, such as "natural rosemary fragrance";

d) use the term "naturally derived" to refer to an 'ingredient' or 'formula/product' as follows:

a. An ingredient that is made from (1) renewable plant-based materials, (2) abundant minerals, and/or (3) water, and that may be modified to provide functionality. The modification may involve synthesizing with sources other than plant and/or mineral sources.

b. A formula or product whose functional ingredients, *e.g.*, those that provide the cleaning action, are natural or naturally derived as set forth above in this Agreement.

e) state the definitions of "natural" and "naturally derived" prominently on Method's Website, *e.g.*, through a link and/or a hover-over effect where the terms are used; and

f) To the extent that Defendants continue to use ingredients that are alleged to be skin irritants (including but not limited to Mehtylisothiasolinone ("MIT") and Benzisothiazolinone ("BIT")), Method shall include a disclosure on Method's Website that the terms "hypoallergenic," "non-toxic" or similar statements on the packaging or advertising do not mean that a product or ingredient will not cause any allergic reaction or irritation in any person, and that a small percentage of individuals may have some form of allergic reaction or irritation to certain ingredients or products; (§ 4.5).

This relief compensates consumers who have been damaged by misrepresentations in the past, and greatly reduces the chances of future consumers suffering the same harm.

## II. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL

### A. Legal Standard

Under Federal Rule of Civil Procedure 23(e), "[a] court may approve a class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2000). Courts evaluating a class action settlements analyze both procedural fairness and substantive fairness. *Id.* To determine procedural fairness, courts examine the negotiating process leading to settlement, "to ensure that the settlement resulted from an arm's- length, good faith negotiation between experienced and skilled litigators." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013). To determine substantive fairness, courts in the Second Circuit use the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

As Plaintiffs show below, the Settlement is procedurally and substantively fair, satisfies the *Grinnell* factors, and warrants final approval.

### B. The Proposed Settlement Is Procedurally Fair

The U.S. Court of Appeals for the Second Circuit has "recognized a presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement [is] reached

9

in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009); *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 217 (S.D.N.Y. 2015) ("A proposed settlement is procedurally fair when it is reached through arm's length negotiations between experienced, capable counsel and after meaningful discovery.") (quotation omitted); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion," since "[t]he settlement was reached after Plaintiffs had conducted a thorough investigation and evaluated the claims, and after arm's-length negotiations between the parties," including with an experienced class action mediator).

First, the negotiations in this case were conducted at arms' length and were characterized by false starts, terminations of discussions, and the involvement of multiple parties with, at times, competing agendas. *See* Sultzer FA Decl. ¶¶ 8-13 and Eggnatz FA Decl. ¶¶ 8-32. Settlement discussions took place in person, in mediation, by email and telephonically over eight months, both with and without the assistance with the highly-respected mediator Rodney Max, of Upchurch, Watson, White & Max. Eggnatz FA Decl. ¶ 16. *See Reyes v. Altamarea Group, LLC*, 2011 U.S. Dist. LEXIS 115982 at *3 (S.D.N.Y. June 3, 2011) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive.").

Second, the discussions were undertaken by counsel who are well versed in complex litigation and, more specifically, in cases involving misrepresentations concerning the term "natural" as applied to consumer products. *See* Eggnatz FA Decl. ¶¶ 5, 47; Sultzer FA Decl. ¶ 18.

Third, Plaintiffs and their counsel conducted a thorough investigation and evaluation of the claims and defenses prior to filing the Actions and continued to analyze the claims throughout the pendency of the cases. (*See, e.g.*, Eggnatz FA Decl. ¶¶ 11-13.) Class Counsel conducted

significant informal discovery, including obtaining sales data showing the number and type of products purchased nationally by consumers, average purchase price, net sales information, third-party Nielsen data, as well as marketing information regarding the reasons why consumers purchase Defendants' products. Eggnatz FA Decl. ¶¶ 11-13; Sultzer FA Decl. ¶ 8. Counsel also performed lab tests to determine the real ingredients in the Products. Sultzer FA Decl. ¶ 6. Through this investigation, discovery, and ongoing analysis, and through litigation of Plaintiffs' claims before this Court and in the Northern District of California, Class Counsel obtained an understanding of the strengths and weaknesses of the Actions.

For the foregoing reasons, the Settlement Agreement is procedurally fair.

## C. The Proposed Settlement Is Substantively Fair

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. *Grinnell*, 495 F.2d at 448. The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement . . . in light of the best possible recovery; (9) the range of reasonableness of the settlement . . . to a possible recovery in light of all the attendant risks of litigation.

*McReynolds*, 588 F.3d at 804. "In applying these factors, 'not every factor must weigh in favor of the settlement, but rather the court should consider the totality of these factors in light of the particular circumstances.'" *Fleisher v. Phoenix Life Ins. Co.*, 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9, 2015), at *5; *accord In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 U.S. Dist. LEXIS 177175 (S.D.N.Y. Dec. 19, 2014).

Evaluation of the proposed Settlement under the *Grinnell* factors supports final approval.

### 1. **The Complexity, Expense, and Likely Duration of the Litigation**

"The greater the 'complexity, expense and likely duration of the litigation,' the stronger the basis for approving a settlement." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) (citing *Grinnell*). Consumer class action lawsuits by their very nature are complex, expensive, and lengthy. *See, e.g., Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010); *see also Manley*, 2016 U.S. Dist. LEXIS 43571 at \*9 ("Most class actions are inherently complex [.]"). Should the Court decline to approve the proposed settlement and litigation were to resume, it would be costly, complex, and time-consuming.

First, contested class certification (and possibly subsequent decertification) motions would include battles over which law or laws should be applied to the claims of class members; which misrepresentations were material; the mechanism by which damages stemming from an unwarranted price premium could be calculated on a classwide basis; and whether individual purchasing decisions were relevant and/or would predominate over class wide issues. Class issues involving damages would likely generate expert discovery and *Daubert* motions as well. Although plaintiffs are confident in their ultimate success in certifying a class based on this case's similarities to another matter before this Court, *Goldemberg v. Johnson & Johnson Consumer Cos.*, 2016 U.S. Dist. LEXIS 137780 (S.D.N.Y. Oct. 4, 2016) (certifying class of consumers who purchased products labeled "Active Naturals"), Defendants would likely seek an interlocutory appeal of any favorable ruling and challenge it with a decertification motion at a later stage.

Second, in addition to the expected discovery concerning the manufacturing of the products and the sources and formulation of the ingredients, there would likely be lengthy and expensive expert discovery and testimony about the meaning of the terms "natural", "naturally-derived", "hypo-allergenic,", "non-toxic,", "plant-derived," "plant-based," "mineral-based,"

"bio-based," and similar statements to a reasonable consumer. These issues would generate *Daubert* motion practice as well.

Third, Method would likely move for summary judgment. If the Court denied the motion, a fact-intensive trial would be necessary to resolve Plaintiffs' and the Settlement Class Members' claims. A trial would be lengthy and complex and would consume tremendous time and resources for the Parties and the Court. Any final judgment would likely be appealed, further extending the litigation. These litigation efforts would be costly to all Parties and would require significant judicial oversight.

Although Plaintiffs believe they would ultimately prevail, each step towards trial would be subject to Defendants' vigorous opposition and "litigation of this matter . . . through trial would be complex, costly and long." *Manley*, 2016 U.S. Dist. LEXIS 43571 at *9 (citation omitted). "Not only would Plaintiffs spend substantial sums in litigating this case through trial and appeals, it could be years before class members saw any recovery, if at all." *In re Sony SXRD Rear Projection TV Class Action Litig.*, 2008 U.S. Dist. LEXIS 36093 at *18 (S.D.N.Y. May 1, 2008). The Settlement, on the other hand, makes injunctive and monetary relief available to the Settlement Class Members in a prompt and efficient manner, making it particularly valuable. *Hi-Crush Partners*, 2014 LEXIS 177175 at *6 ("[T]he Settlement offers the opportunity to provide definite recompense to the Class now—making the instant Settlement a particularly valuable 'bird in the hand.'").

Accordingly, the first *Grinnell* factor favors final approval.

### 2. **The Reaction of the Settlement Class**

"It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Raniere*, 310 F.R.D. at 211.

Courts have recognized that a favorable reaction by the settlement class members strongly supports final approval of the settlement. *DeLeon v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 65261 (S.D.N.Y. May 7, 2015) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness."); *Hi-Crush Partners*, LEXIS 177175, at *6 ("The overwhelmingly positive reaction of the Settlement Class evidences the Class' approval.").

The deadline for objecting to or opting out of the Settlement is March 28, 2017. At this time, no Settlement Class Members have objected or opted out. (Weisbrot Decl. ¶ 12.) The response to date suggests strong support for the Settlement.

In addition, 41,133 consumers have already responded to notice by submitting claims. Plaintiffs' will provide the Court with supplemental claims data at the conclusion of the claim deadline. Plaintiffs' Counsel and the claims administrator utilized standard IAB sized banner-style notices that was specifically targeted to reach the demographics most likely to purchase Method Products and made it easy and fast to submit claims. (Weisbrot Decl. ¶ 6) Combining the internet banner-style notice campaign with traditional print media, the notice program delivered a 72.5% reach with an average exposure frequency of 2.98 times each. The final reach *exceeded* the previously-targeted 70.58%. The informational settlement website and toll-free telephone line, while not reflected in calculable reach figures, have further apprised potential Settlement Class Members of the rights and options in the Settlement. *Id.*

The reaction of the Class, the only new, and perhaps most important, information about the settlement since preliminary approval, weighs strongly in favor of the Settlement. *See, e.g., Mills v. Capital One, N.A.*, 2015 U.S. Dist. LEXIS 133530, 14 Civ. 1937, at *6 (S.D.N.Y. Sept. 30, 2015) (granting final certification in absence of facts contrary to preliminary certification

decision).

### 3. The Stage of the Proceedings and the Amount of Discovery Completed

The third *Grinnell* factor—the stage of the proceedings and the amount of discovery completed—considers "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . . and whether the Court has sufficient information to evaluate such a settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013) (citations omitted).

Here, "discovery has advanced sufficiently to allow the parties to resolve the case responsibly." *Manley*, 2016 U.S. Dist. LEXIS 43571 at *9. Class Counsel have conducted significant informal discovery related to Plaintiffs' claims, including laboratory testing, review of sales and marketing data, and pricing analysis. *See* Eggnatz FA Decl. ¶¶ 8-22; Sultzer FA Decl. ¶¶ 3-6;8.

Consequently, Plaintiffs had sufficient information to evaluate the claims of the class. *See Matheson v. T-Bone Rest. LLC.*, 2011 U.S. Dist. LEXIS 143773 (S.D.N.Y. Dec. 13, 2011) (granting final approval in case where discovery consisted of informal information exchange); *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) (finding that parties were "well-equipped to evaluate the strengths and weaknesses of the case" and granting final approval where parties engaged in informal discovery and no depositions were taken).

The amount of discovery conducted allowed the Parties to assess thoroughly the merits, risks, and value of the case. Consequently, this factor favors final approval.

### 4. The Risks of Establishing Liability and Damages

"In analyzing the risk to plaintiffs in establishing liability, the Court does not 'need to decide the merits of the case or resolve unsettled legal questions.'" *Hi-Crush Partners*, 2014

15

LEXIS 177175, at *8. "Rather, the Court is only required to weigh the likelihood of success on the merits against the relief provided by the Settlement." *Id.* "In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *Id.*

"It has long been recognized that complex class actions are difficult to litigate." *Shapiro*, LEXIS 37872, at *10. "Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Viafara*, LEXIS 60695 at *7 (citation omitted). "The legal and factual issues involved [in complex class actions] are always numerous and uncertain in outcome." *Shapiro*, LEXIS 37872, at *10. Furthermore, "[p]roof of damages in complex class actions is always complex and difficult and often subject to expert testimony." *Id.* at *11.

Most fundamentally, while Plaintiffs believe a reasonable consumer would be misled by the "natural", "naturally-derived", and similar misrepresentations at issue, a jury might not agree. Resolution of the question of whether "natural" representations deceive reasonable consumers, for example, is far from certain. *See, e.g.*, *Ries v. Ariz. Bevs. USA LLC*, 2013 U.S. Dist. LEXIS 46013 (N.D. Cal. Mar. 28, 2013) (granting summary judgment in favor of defendant in case involving "natural" beverage labeling); *but see Brazil v. Dole Packaged Foods, LLC*, 2016 U.S. App. LEXIS 17733 (9th Cir. Cal. 2016) (reversing grant of summary judgment for defendant on claim that "All Natural Fruit" representation was likely to deceive reasonable consumers).

Class Counsel are experienced and realistic and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. (Decl. Sultzer ¶ 31.) The proposed Settlement alleviates these uncertainties, as it "will provide tangible, certain and substantial relief to the proposed class now, 'without subjecting them to the risks, complexity, duration, and expense of continuing litigation.'"

*Hi-Crush Partners*, LEXIS 177175, at *9.

In addition, with respect to the calculations of damages, attributing a given price premium to a single component of the label is a complicated process. In this Court's opinion in *Goldemberg* the Court denied the defendants' *Daubert* motion and held that the plaintiffs' methodology for their price premium calculation was capable of matching the plaintiffs' liability case to their damages case for class certification purposes. *Id.* at *40-41. Plaintiffs are confident that they could make a similar showing here. However, whether the methodology would survive further challenge on the merits is an open question, especially given the fluctuating retail prices throughout the Class Period.

Plaintiffs recognize that, as with any litigation, uncertainties exist. That is especially true here since Defendants continue to deny Plaintiffs' allegations, and should this matter proceed, they will vigorously defend themselves on both class certification and on the merits.

For these reasons, although Plaintiffs are confident in the merits of their case, the risks of establishing liability and damages support final approval.

### 5. <u>The Risks of Maintaining Class Action Status Through Trial</u>

This case settled before a ruling on class certification, and the current motion for class certification is for settlement purposes only. (§ 3.1). In addition to the challenges inherent in certifying a potential national class, the issues concerning which misrepresentations were at issue and which law applied to them could defeat certification. Plaintiffs would also be required to proffer a suitable mechanism for calculating damages in the form a classwide price premium. While Plaintiffs believe they could prevail on both issues, this proposed settlement eliminates that risk.

Furthermore, even if the Court were to certify a litigation class, the certification would not

be set in stone. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."). *See also Brazil v. Dole Packaged Foods, LLC*, 2016 U.S. App. LEXIS 17733 (9th Cir. 2016) (decertifying Rule 23(b)(3) class in consumer fraud case).

Given these risks, this factor weighs in favor of final approval.

### 6. The Ability of Defendant to Withstand a Greater Judgment

"Courts have recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement." *In re Sinus Buster Prods. Consumer Litig.*, No. 12 -CV-2429, 2014 U.S. Dist. LEXIS 158415 *25 (E.D.N.Y. Nov. 10, 2014) (citations omitted). Here, there is no evidence that Method could not withstand a greater judgment. However, its ability to do so, "standing alone, does not suggest that the settlement is unfair." *Viafara v. MCIZ Corp.*, No. 12 Civ 7452, 2014 U.S. Dist. LEXIS 60695 *21 (S.D.N.Y. Apr. 30, 2014) (citation omitted).

Thus, this factor is neutral and does not preclude the Court from granting final approval.

### 7. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and in Light of All the Attendant Risks of Litigation

Determining the reasonableness of a settlement is not susceptible to a simple formula. *Raniere*, 310 F.R.D. at 219 ("The determination of whether a given settlement amount is reasonable in light of the best possible recovery does not involve the use of a mathematical equation yielding a particularized sum."). Rather, the Court "need only find that the settlement falls within a 'range of reasonableness.'" *Meredith Corp.*, 87 F. Supp. 3d at 666. "That range must recognize 'the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent' in litigation." *Id.* "Moreover, the settlement amount must be judged 'not in comparison with the possible recovery in the best of all possible worlds, but rather

in light of the strengths and weaknesses of plaintiffs' case.'" *Fleisher*, 2015 LEXIS 121574 at

*10. "The overall value of the settlement comprises monetary as well as non- monetary relief."

*Id.*

The central complaint in the Actions is that Defendants are deceiving consumers by labeling the METHOD and ECOVER Products as "natural", "naturally derived", and with similar misrepresentations. The cash compensation to which eligible Settlement Class members will be entitled in the event the Court approves the Settlement goes a significant way toward compensating them for the damages they incurred due to Defendants' allegedly deceptive representations. In addition, the injunctive relief greatly reduces the chance of future consumers suffering the same harm.

As discussed above, while Plaintiffs believe their claims are strong, continuation of this litigation poses significant risks. Not only might ongoing litigation not result in an increased benefit to the Settlement Class, it would lead to substantial additional expenditure by both Parties and would drain scarce judicial resources. Taking into account the risks and benefits Plaintiffs have outlined above, the Settlement falls within the "range of reasonableness."

Indeed, the Settlement's substantial and immediate relief compares favorably to the relief that Plaintiffs would seek—but that would not be guaranteed—were the case to proceed to trial. The recovery of a $1.00 price premium attributable to the "natural" misrepresentations on products that are priced between from $1.78 to $12.99 is well within even the most aggressive interpretation of a "range of reasonableness." Further, Plaintiffs' ability to obtain a permanent injunction in the litigation context is not certain, as courts within the Second Circuit have recently held that plaintiffs lack standing to seek injunctive relief where they are aware of the misrepresentations at issue. *See, e.g., Hughes v. Ester C Co.*, 317 F.R.D. 333, 356 (E.D.N.Y.

19

2016); *In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.*, 2015 U.S. Dist. LEXIS 133484 at *22 (S.D.N.Y. Sept. 30, 2015) (denying certification of Rule 23(b)(2) class); *but see Ackerman v. Coca-Cola Co.*, 2013 U.S. Dist. LEXIS 184232 at *71 (E.D.N.Y. July 17, 2013) (holding plaintiffs had standing to seek injunctive relief). For all of these reasons, the Settlement is within the "range of reasonableness."

In short, the *Grinnell* factors strongly favor final approval.

## III.    THE COURT SHOULD GRANT FINAL CERTIFICATION TO THE SETTLEMENT CLASS

### A. Legal Standard

The benefits of the proposed Settlement can be realized only through final certification of the Settlement Class for settlement purposes pursuant to Rule 23. *See Meredith Corp.*, 87 F. Supp. 3d at 659 ("Certification of a settlement class 'has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants.'").

As Plaintiffs discuss in their preliminary approval brief at 18–23, [ECF No. 43], the Settlement Class satisfies all prerequisites of Rule 23(a) and (b)(3). Under the Settlement Agreement, the Parties seek certification of a nationwide Settlement Class defined as follows:

> All persons and entities that, during the Class Period, both resided in the United States and purchased in the United States any of the Products for use and not for resale. Excluded from the Settlement Class are: (a) Defendants' board members or executive-level officers, including its attorneys; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court's staff; and (d) any person that timely and properly excludes himself or herself from the Settlement Class in accordance with the procedures approved by the Court.

### B. The Settlement Class Satisfies Federal Rule of Civil Procedure 23(a)

"Under Federal Rule of Civil Procedure 23(a), plaintiffs must meet the four requirements

of numerosity, commonality, typicality, and adequacy of representation." *Meredith Corp.*, 87 F. Supp. 3d at 659; *see* FED. R. CIV. P. 23(a)(1)–(4). The Settlement Class meets each requirement.

**Numerosity:** The proposed Settlement Class is sufficiently numerous to satisfy Rule 23(a)(1), since there is no dispute that many thousands of people nationwide purchased the Products. Indeed, over 41,000 consumers have already submitted claims. *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.").

**Commonality:** Under Rule 23(a)(2)'s commonality requirement, what matters is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (U.S. 2011). The Second Circuit has construed this instruction liberally, holding that plaintiffs need only show that their injuries stemmed from defendants' "unitary course of conduct." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 85 (2d Cir. 2015).

Here, the commonality requirement is met because the answer to several fundamental questions will resolve issues that are central to claims of all class members. These questions include: (i) whether Defendant's representations are likely to deceive reasonable consumers; (ii) whether Defendant's representations are material to reasonable consumers; (iii) the proper measure of a price premium based on the representations; and (iv) whether injunctive relief should be granted. Thus, commonality is satisfied.

**Typicality:** "Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d

Cir. 1993). The typicality requirement "ensures that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Manley v. Midan Rest. Inc.*, 2016 U.S. Dist. LEXIS 43571 at* 11 (S.D.N.Y. Mar. 30, 2016).

Here, Plaintiffs' claims are typical of the Settlement Class Members' claims because they arise from the same factual and legal circumstances that form the bases of the Settlement Class Members' claims. Specifically, the named Plaintiffs and the Settlement Class Members all claim the marketing of the Products is false and misleading and deceives reasonable consumers. Accordingly, typicality is satisfied.

**Adequacy of Representation:** "Adequate representation is a twofold requirement: class counsel must be qualified and able to conduct the proposed litigation, and the class representatives must not have interests antagonistic to those of the other class members." *Manley*, LEXIS 43571, at *4. Under Rule 23(a)(4), Plaintiffs must show that the proposed class representatives will "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Plaintiffs must demonstrate that: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A.*, 126 F.3d at 378.

To satisfy the first requirement, Plaintiffs must show that "the members of the class possess the same interests" and that "no fundamental conflicts exist" between a class' representative and its members. *Charron*, 731 F.3d at 249. Here, Plaintiffs possess the same interests as the proposed Settlement Class members because Plaintiffs and the Settlement Class members were all injured in the same manner based on the same allegedly misleading statements.

With respect to the second requirement, Class Counsel are qualified, experienced, and

generally able to conduct the litigation. Class Counsel have invested considerable time and resources into the prosecution of this case. *See* Eggnatz FA Decl. ¶¶ 44-48; Sultzer FA Decl. ¶¶ 15-18. They have qualified as lead counsel in other class actions and have a proven track record of successful prosecution of significant class actions. *Id.* Plaintiffs have satisfied the adequacy requirement.

### C. The Settlement Class Meets the Requirements of Federal Rule of Civil Procedure 23(b)(3).

"To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members; and a class action must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Amchem Prods., Inc.*, 521 U.S. at 615.

**Predominance:** The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016) "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Manley*, 2016 U.S. Dist. LEXIS at *5.

Here, in the context of a proposed settlement, predominance is easily satisfied. The questions of whether Defendants' representations are likely to deceive reasonable consumers and whether the representations are material to reasonable consumers are common, objective questions for which the same evidence would suffice for each consumer if the case were to proceed to trial. *See Tyson Foods, Inc.*, 136 S. Ct. at 1045. These common questions are more substantial than any individualized issues that may exist, meeting Rule 23(b)(3)'s predominance

requirement. *See Manley* at *5.

With respect to the questions of potential variations in state law, or among the misrepresentations themselves, that might plague the predominance question in the litigation context, those differences go to the "manageability" component of predominance. And manageability under Rule 23(b)(3)(D) is "not relevant for class action settlements. *Tart v. Lions Gate Entm't Corp.*, 2015 U.S. Dist. LEXIS 139266 at *10-11 (S.D.N.Y. Oct. 13, 2015); *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 609 (W.D.N.Y. 2011) ("[S]tate-law distinctions impact trial manageability…"). *See also In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 195 n.51 (S.D.N.Y. 2005) ("[A]lthough litigants frequently conceive of 'predominance' and 'manageability' as separate requirements of Rule 23(b)(3), they are not…manageability is a *factor* in the court's required findings of predominance and superiority, rather than a separate element of the class certification inquiry." and stating that removal of the manageability issue "alleviates the predominance defect"). Accordingly, the predominance requirement is satisfied.

**Superiority:** Class certification "is superior to other methods available for a fair and efficient adjudication of the controversy" where "the class device will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims." *Bravo v. Palm West Corp.,* 2015 U.S. Dist. LEXIS 135123 at *9 (S.D.N.Y. Sept. 30, 2015).

A class action is not only the superior method for resolving the claims of Plaintiffs and the Class, it is the only method. Individual damages would obviously be too small to warrant litigation. *Meredith Corp.*, 87 F. Supp. 3d at 661 (finding superiority met where "the price-tag

for an individual [plaintiff] to bring this suit would have almost certainly dwarfed even the highest realistically imaginable recovery for that [plaintiff]").

For the preceding reasons, the Settlement Class satisfies Rule 23(a) and (b)(3), and the Court should grant final certification to the proposed Settlement Class.

## IV.    THE CLASS NOTICE SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

The results so far indicate that not only did the notice program satisfy Rule 23 and the requirements of due process, but it was effective in generating a favorable response rate. *See* Weisbrot Decl. ¶ 11.

The class notice must include: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who request exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." FED. R. CIV. P. 23(c)(2)(B). Plaintiff's notice included all these elements and more.

Further, a notice of a 23(b)(3) settlement must be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R.Civ. P. 23(c)(2)(B). "When a class settlement is proposed, the court 'must direct to class members the best notice that is practicable under the circumstances.'" *Vargas v. Capital One Fin. Advisors*, 559 Fed. Appx. 22, 2014 U.S. App. LEXIS 4689 (2d Cir. N.Y. 2014) (summary order) (citing FED. R. CIV. P. 23(c)(2)(B), (e)(1)).

In a case like this, where records of purchasers are not available, Plaintiffs' broad-reaching notice program targeted to the relevant demographic is the best notice practicable. Plaintiffs undertook a vigorous notice program including banner ads, keyword search ads, that

resulted in 18,538,355 impressions and print publications in *People* magazine with a circulation of over 3 million.

The notice program, thus far, has also resulted in robust participation from consumers. As of March 13, 2017, 41,133 consumers have submitted claims for 216,003 Products.

Accordingly, the notice program was the best practicable under the circumstances and satisfies due process and Rule 23.

## V.     CONCLUSION

For the reasons stated above, the proposed settlement should receive final approval, and the class should be certified.

Dated:  March 13, 2017

**THE SULTZER LAW GROUP P.C.**

Jason P. Sultzer /s/

By: _____
       Jason P. Sultzer, Esq.
       85 Civic Center Plaza, Suite 104
       Poughkeepsie, NY 12601
       Tel: (845) 483-7100
       Fax: (888) 749-7747
       sultzerj@thesultzerlawgroup.com


       Benjamin M. Lopatin, Esq. (SBN 281730)
       *Pro Hac Vice*
       **EGGNATZ, LOPATIN & PASCUCCI, LLP**
       2201 Market Street, Suite H
       San Francisco, California 94114
       Telephone: (415) 324-8620
       Facsimile: (415) 520-2262
       Email: *BLopatin@ELPLawyers.com*

Joshua H. Eggnatz, Esq.
(Fla. Bar No.: 0067926)
*Pro Hac Vice*
**EGGNATZ, LOPATIN & PASCUCCI, LLP**
5400 S. University Drive
Ste. 417
Davie, Florida 33328
Tel: (954) 889-3359
Fax: (954) 889-5913
Email: *jeggnatz@elplawyers.com*

*Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

On March 13, 2017 I caused the foregoing documents to be served on all counsel of record via e-filing.:

Dated: March 13, 2017

/s/ Jason P. Sultzer

By:_____
    Jason Sultzer